1  SEYFARTH SHAW LLP
   David D. Kadue (SBN 113578)
2  Dean A. Martoccia (SBN 193185)
   2029 Century Park East, Suite 3300
3  Los Angeles, California 90067-3063
   Telephone: (310) 277-7200
4  Facsimile: (310) 201-5219
   Email: dkadue@seyfarth.com
5  Email: dmartoccia@seyfarth.com

6  Attorneys for Defendant,
   LEE PUBLICATIONS, INC.
7  dba NORTH COUNTY TIMES

8                  UNITED STATES DISTRICT COURT

9               SOUTHERN DISTRICT OF CALIFORNIA

10

11 YVONNE DALTON, DIAN GARZA,          )  Case No.: 08-CV-1072 BTM NLS
   ARMINDA GUZMAN, SHARON HUGHEN,      )
12 ETELVINA SALGADO, HECTOR MIGUEL     )  Assigned to Hon. Barry Ted Moskowitz
   SALGADO, and REFUGIO SANCHEZ,       )  Dept. 15
13 individually and on behalf of all others similarly )
   situated,                          )
                                      )  NOTICE OF MOTION TO DISMISS OR
14                                     )  STRIKE PLAINTIFFS' FIRST
                  Plaintiffs,          )  AMENDED COMPLAINT
15                                     )
              vs.                      )  Date:   November 14, 2008
16                                     )  Time:   11:00 a.m.
   LEE PUBLICATIONS, INC., a Delaware  )
17 Corporation, dba NORTH COUNTY TIMES,)
   and DOES 1 through 50,              )  NO ORAL ARGUMENT UNLESS
18                                     )  REQUESTED BY THE COURT
                  Defendants.          )
19 _____  )

20      **TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

21      **PLEASE TAKE NOTICE** that on November 14, 2008, at 11:00 a.m., in Department 15

22 of the above-entitled Court, Defendant, Lee Publications, Inc., pursuant to Rule 12(f) and

23 12(b)(6) of the Federal Rules of Civil Procedure, moves to dismiss or strike the following class

24 allegations, claims for relief, and other irrelevant or improper matter in the First Amended

25 Complaint:

26      (1)    Plaintiffs' allegations defining the class period as "including the four years prior

27 to the filing of this action" (First Amended Complaint ¶ 20), because Plaintiffs' penalty

28 ─────────────────────────────────────────────
        **MOTION TO DISMISS OR STRIKE FIRST AMENDED COMPLAINT**
                                           08-CV-1072 BTM NLS

LA1 6721617.4

1   subclasses cannot be broader than the subclasses of those contractors in place within the one-year

2   or three-year statute of limitations that applies to each penalty claim,

3         (2)     Plaintiffs' class allegations pertaining to the First Cause of Action (Failure to Pay

4   Overtime Wages), Second Cause of Action (Failure to Provide Meal Periods), and Third Cause

5   of Action (Failure to Provide Meal Periods), because the class allegations as to overtime, meal

6   and rest breaks are overbroad and inherently raise predominating individual issues, and

7         (3)     Plaintiffs' allegations relating to reimbursement of automobile expenses (First

8   Amended Complaint ¶ 42) contained within the Fourth Cause of Action (Failure To Reimburse

9   Employee Expenses), because these expenses, as a matter of law, are not recoverable.

10        This motion is based on this notice of motion, the accompanying memorandum of points

11   and authorities, all pleadings and documents on file herein, and on such other and further oral

12   and documentary evidence as may be presented at or before the hearing on the motion.

13

14   DATED: September 9, 2008

                       SEYFARTH SHAW LLP

15

16                          By

17                            David D. Kadue
                         Attorneys for Defendant
                         LEE PUBLICATIONS, INC.

18

19

20

21

22

23

24

25

26

27                            2

28   **MOTION TO DISMISS OR STRIKE FIRST AMENDED COMPLAINT**
                         08-CV-1072 BTM NLS

**CERTIFICATE OF SERVICE**

STATE OF CALIFORNIA )
Ss )
COUNTY OF LOS ANGELES )

     I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is Seyfarth Shaw LLP, 2029 Century Park East, Suite 3300, Los Angeles, California 90067-3063.  On the date stated below, I served the within documents:

**NOTICE OF MOTION TO DISMISS OR STRIKE;**
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

☐   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☐   by placing the document(s) listed above, together with an unsigned copy of this declaration, in a sealed Federal Express envelope with postage paid on account and deposited with Federal Express at Los Angeles, California, addressed as set forth below.

☒   by transmitting the document(s) listed above, electronically, via the e-mail addresses set forth below.

| | |
|---|---|
| Curtis Keith Greer, Esq. | Marcy E. Kaye, Esq. |
| Julie A. Lowell, Esq. | 11770 Bernardo Plaza Court |
| LAW OFFICES OF GREER & ASSOC., A.P.C. | Suite 305 |
| 16787 Bernardo Center Drive, Ste. 14 | San Diego, CA  92128 |
| San Diego, CA  92128 | Phone:  858.485.1569 |
| Phone: 858.613.6677 | |

     I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than on day after the date of deposit for mailing in affidavit.

     I declare that I am employed in the office of a member of the bar of this court whose direction the service was made.

     Executed on September 9, 2008, at Los Angeles, California.

                          _____
                                Fern Jenkins

3

**PROOF OF SERVICE**
08-CV-1072 BTM NLS

LA1 6721617.4

1  SEYFARTH SHAW LLP
   David D. Kadue (SBN 113578)
2  Dean A. Martoccia (SBN 193185)
   Erik B. von Zeipel (SBN 223956)
3  2029 Century Park East, Suite 3300
   Los Angeles, California  90067-3063
4  Telephone:  (310) 277-7200
   Facsimile:  (310) 201-5219
5  dkadue@seyfarth.com
   dmartoccia@seyfarth.com
6
   Attorneys for Defendant,
7  LEE PUBLICATIONS, INC.
   dba NORTH COUNTY TIMES
8
                    UNITED STATES DISTRICT COURT
9
                  SOUTHERN DISTRICT OF CALIFORNIA
10

11  YVONNE DALTON, DIAN GARZA,            )   Case No. 08-CV-1072 BTM NLS
    ARMINDA GUZMAN, SHARON HUGHEN,        )
12  ETELVINA SALGADO, HECTOR MIGUEL       )   Hon. Barry Ted Moskowitz
    SALGADO, and REFUGIO SANCHEZ,         )   Dept. 15
13  individually and on behalf of all others similarly )
    situated,                            )
14                                        )   **MEMORANDUM OF POINTS AND**
                                          )   **AUTHORITIES IN SUPPORT OF**
                Plaintiffs,               )   **MOTION TO DISMISS OR STRIKE**
15                                        )   **FIRST AMENDED COMPLAINT**
                                          )   **[FRCP 12(b)(6), 12(f)]**
16        vs.                             )
                                          )   Date:        November 14, 2008
17  LEE PUBLICATIONS, INC., a Delaware    )   Time:        11:00 a.m.
    Corporation, dba NORTH COUNTY TIMES,  )
18  and DOES 1 through 50,                )
                                          )   **NO ORAL ARGUMENT UNLESS**
                Defendants.               )   **REQUESTED BY THE COURT**
19                                        )

20

21

22

23

24

25

26

27

28                                        MEMO SUPPORTING MOTION TO DISMISS OR STRIKE
                                          FIRST AMENDED COMPLAINT
                                          Case No. 08-CV-1072 BTM NLS
    LA1 6721614.4

# TABLE OF CONTENTS

Page

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................1

RELEVANT FACTS ..........................................................................................................1

LEGAL ARGUMENT.........................................................................................................2

I.    The class definition conflicts with applicable statutes of limitation.......................2

   A.    A one-year statute of limitations governs penalty claims such as
         those under Sections 226, 1174.5, and 1197.1.............................................2

   B.    A three-year statute governs the Section 203 claim.....................................3

   C.    The class definition should be stricken, with leave to amend......................3

II.   Class allegations should be stricken as to overtime, meal, and rest claims............4

   A.    The proposed class inherently raises predominating individual issues. ......4

   B.    Plaintiffs fail to allege facts to show who, if anyone, suffered any
         injury with respect to overtime or meal and rest breaks. .............................7

   C.    Plaintiffs fail to allege facts showing class members have common
         overtime, meal, and rest claims....................................................................9

III.  The expense-reimbursement claim fails to state a claim for which relief
      can be granted. ........................................................................................................9

   A.    Plaintiffs' interpretation conflicts with that of the IWC. ...........................10

   B.    Plaintiffs cannot rely on Wage Orders to supply a right to
         reimbursement............................................................................................15

CONCLUSION.................................................................................................................18

1

**INTRODUCTION AND SUMMARY OF ARGUMENT**

2      Plaintiffs are individuals who have contracted with Defendant to deliver the *North*

3  *County Times* newspaper.  Plaintiffs sued Defendant on April 18, 2008, claiming that newspaper

4  carriers contracting to deliver the *North County Times* have been misclassified as independent

5  contractors.  They further contend that Defendant, as their alleged employer, has unlawfully

6  denied meal and rest breaks, seventh-day overtime pay, and wages due upon termination, and is

7  liable for various penalties for a class period extending back to April 18, 2004 (four years before

8  the lawsuit began).  All of this alleged liability stems, of course, from an alleged employer-

9  employee relationship.

10      As argued below, certain of these claims are unsustainable as a matter of law:

11
- Plaintiffs cannot collect penalties for individuals affected by the one-year or three-year statute of limitations that applies to each penalty claim.

12
13
- The class-wide claims of overtime, meal- and rest-break violations fail to identify an ascertainable class.

14
- Plaintiffs cannot maintain their Section 2802 claim for unreimbursed routine employee expenses (i.e., automobile mileage expenses), as Section 2802 does not apply to those expenses. [1]

15

16

**RELEVANT FACTS**

17      The Defendant operates the *North County Times* newspaper (First Amended Complaint

18  ("1AC") ¶ 9).  Defendant has classified the Plaintiffs—carriers who have contracted to deliver

19  that newspaper—as independent contractors (1AC ¶ 18).  Plaintiffs claim they really have always

20  been employees (1AC ¶ 17).  As such, they seek the following relief relevant to this motion.

21      First, they seek to collect penalties under Section 203 (waiting-time penalties, 1AC ¶ 65),

22  Section 226 (wage-itemization penalties, 1AC ¶ 57), Section 1174.5 (record-keeping penalties,

23  1AC ¶ 60), and Section 1197.1 (minimum-wage penalties, 1AC ¶ 30).  These claims are subject

24  to limitations periods of one year (for claims under Sections 226, 1174.5, and 1197.1) or three

25  years (for claims under Section 203), not the four-year period stated in the class definition.

26

27  ────────────
[1] Undesignated Section references are to the California Labor Code.

28
MEMO SUPPORTING MOTION TO DISMISS OR STRIKE
FIRST AMENDED COMPLAINT
Case No. 08-CV-1072 BTM NLS

LA1 6721614.4

1    Second, Plaintiffs seek Section 226.7 payments for missed meal and rest breaks (1AC ¶¶

2    34, 38), while failing to say how any class-wide policy has denied any class member a meal or

3    rest break.

4    Third, Plaintiffs seek reimbursement for routine employee expenses (e.g., automobile

5    expenses) under Section 2802 (1AC ¶ 42), in the absence of any statutory entitlement to such

6    reimbursement.

7                              **LEGAL ARGUMENT**

8    **I.    The class definition conflicts with applicable statutes of limitation.**

9    Plaintiffs allege a class consisting of all persons who contracted to provide home

10   newspaper delivery of the *North County Times* since April 18, 2004 (four years prior to the filing

11   of this action).  1AC ¶ 20.  This class definition must be stricken to the extent it conflicts with

12   the applicable statutes of limitation, with leave for Plaintiffs to amend to conform their pleading

13   to the applicable statutes of limitations.

14          **A.    A one-year statute of limitations governs penalty claims such as those
                     under Sections 226, 1174.5, and 1197.1.**
15
16   Plaintiffs claim penalties for alleged violations of Section 226 (Sixth Cause of Action—

17   Failure to Provide Itemized Wage Statements), Section 1174 (Seventh Cause of Action—Failure

     to Keep Accurate Payroll Records), and Section 1197.1 (First Cause of Action—Failure to Pay
18
     Wages).  Because the relevant limitations period for each such penalty claim is one year,[2] those
19
     claims are time-barred as to any Plaintiff whose contract with Defendant ended before April 18,
20
     2007, and as to any conduct preceding that date.
21

22

23

24   _____

     [2] CCP § 340(a); *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1108 (2007)
25   (Legislature "was aware it could, if so desired, trigger a one-year statute of limitations by
     labeling a remedy a penalty"); *McCoy v. Superior Court*, 157 Cal. App. 4th 225, 229, 233 (2007)
26   (Labor Code "penalty" triggers a one-year limitations period, unless statute expressly says
     otherwise).
27
                                              2
28                              MEMO SUPPORTING MOTION TO DISMISS OR STRIKE
                                       FIRST AMENDED COMPLAINT
                                       Case No. 08-CV-1072 BTM NL

LA1 6721614.4

1

**B.    A three-year statute governs the Section 203 claim.**

2      Plaintiffs claim Section 203 waiting-time penalties (Eighth Cause of Action—Waiting

3 Time Penalties).  Because this claim has a three-year statute of limitations,[3] it is time-barred as to

4 any Plaintiff whose contract with Defendant ended before April 18, 2005.

5      Section 203 penalties cannot be recovered for the four-year limitations period generally

6 made available by the UCL.[4]  That is because restitution is the UCL's only private monetary

7 remedy,[5] and the penal nature of Section 203 payments precludes their characterization as

8 restitution.[6]  Restitution applies only to a vested property right.[7]

9      Plaintiffs might suppose that Section 203 penalties resemble vested property because they

10 arise immediately upon the failure to pay termination wages.  But any such theory would be

11 flawed, because a Section 203 penalty would be available *only if* the failure to pay wages were

12 "willful."  The requirement of a willfulness finding makes any Section 203 entitlement

13 contingent, not vested.  Willfulness is obviously at issue here as the parties dispute whether

14 Plaintiffs are employees and thus whether Section 203 applies at all.  Section 203 penalties

15 therefore are not a vested property right subject to restitutionary recovery.[8]

16

**C.    The class definition should be stricken, with leave to amend.**

17      Plaintiffs should be granted leave to amend their complaint to allege penalty subclasses

18 that conform to the correct statutes of limitations.

19

---

20 [3] *Murphy*, 40 Cal. 4th at 1108; CCP § 338(a).

21 [4] The UCL's four-year limitations period, B&P Code § 17208, therefore does not apply.

[5] *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003).

22 [6] *Montecino v. Spherion Corp.*, 427 F. Supp. 2d 965, 968 (C.D. Cal. 2006); *Tomlinson v.*
   *Indymac Bank*, 359 F. Supp. 2d 891, 895 (C.D. Cal. 2005) (Section 203 recovery "clearly is not
23 restitutionary, and thus cannot be recovered under the UCL"; "if it is not payment for work done
   it is not fairly characterized as restitution").

24 [7] *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 178 (2000).

25 [8] *Cortez* itself involved a claim for unpaid overtime wages **and** a claim for 203 penalties, *id.* at
   170, and held only that recovery for "payment of wages unlawfully withheld" is a restitutionary
26 remedy. *Id.* at 177. *See also McCoy*, 157 Cal. App. 4th at 230-33 (distinguishing suit for unpaid
   wages from suit for penalty stemming from failure to pay wages).

27
                                                    3

28                                    MEMO SUPPORTING MOTION TO DISMISS OR STRIKE
                                      FIRST AMENDED COMPLAINT
                                      Case No. 08-CV-1072 BTM NL

## II.    Class allegations should be stricken as to overtime, meal, and rest claims.

The proposed class definition— everyone who, since April 18, 2004, has engaged as a newspaper home delivery carrier *North County Times* pursuant to an independent contractor agreement, 1AC ¶ 20—is legally defective as to the claims for unpaid overtime (1AC ¶ 29), denied meal breaks (1AC ¶ 32), and denied rest breaks (1AC ¶ 36).

Rule 23(a) of the Federal Rules of Civil Procedure requires that any class that a plaintiff seeking class certification must meet these minimal requirements:  (1) the class must be so numerous that joinder of all members is impractical, (2) there must be questions of law or fact common to the class, (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class, and (4) the representative parties must fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

The Plaintiffs' proposed class definition flounders on the shoals of the commonality requirement of Rule 23(a)(2), for three independent but related reasons:

(A) The proposed class inherently raises predominating individual issues.

(B) These claims fail to meet Rule 8(a)(2) pleading requirements by failing to allege sufficient facts to raise a right to relief beyond mere speculation.

(C) Plaintiffs fail to allege any facts to show that the proposed class members share common entitlement to meal and rest periods.

### A.    The proposed class inherently raises predominating individual issues.

#### 1.    The overtime meal and rest classes are all overbroad.

While Plaintiffs would represent all newspaper carriers contracting to provide delivery of the *North County Times*, they do not allege that each contractor personally provided delivery services (1) for seven consecutive days (a predicate for any seventh-day overtime claim),[9] (2) in

---

[9] Wage Order § 3(A)(1)(a), 8 Cal. Code Regs. § 11050 (overtime is owed for work performed during the seventh consecutive day of a workweek).

4

LA1 6721614.4

1   excess of five hours a day (a predicate for any meal-break claim),[10] or (3) for three and one-half

2   hours a day (a predicate for any rest-break claim).[11]  As such, the proposed class is overbroad

3   requiring individualized inquiries as to which class members are entitled to relief.

4          Class certification should be denied when the proposed class definition is overbroad and

5   where, as here, the plaintiffs offer no means by which to distinguish those class members who

6   have claims from those who do not.[12]

7          Here, Plaintiffs identify a class of carriers who have contracted to deliver the *North*

8   *County Times*, but the proposed class on its face is overbroad.  The deficient proposed class

9   definition fails because it would require individualized determinations as to which carriers share

10  a commonality of issues and which do not.

> **2.    The meal and rest claims especially are inherently
> unsuitable to class treatment.**

          Recent authority highlights the point that a proper analysis of meal and rest claims

reveals the predominance of individual over common issues, except in the rare case (not alleged

here) that the alleged employer has a class-wide policy forbidding meal and rest breaks.  A

leading example is the California Court of Appeal's decision in *Brinker Restaurant Corp. v.*

*Superior Court*,[13] which vacated class certification of meal and rest claims and instructed the

trial court to decertify the claims with prejudice.  *Brinker* holds that California employers need

---

[10] Lab. Code § 512 (employer employing employee for "work period of more than five hours per day" must provide employee with a meal period of not less than 30 minutes).

[11] Wage Order § 12(A), 8 Cal. Code Regs. § 11050 (employers must authorize and permit a 10-minute rest break for every four hours of work or major fraction thereof, but need not authorize break for work period of less than three and one-half hours).

[12] *Akkerman v. Mecta Corp., Inc.*, 152 Cal. App. 4th 1094, 1100-01 (2007) (upholding denial of class certification where proposed class was so broad it included individuals to whom no liability would be owed and who would receive a "windfall award" if the lawsuit succeeded); *Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th 908, 923-24 (2001) (upholding denial of class certification as to tort claims for construction defects, given need for each class member to specify home damage resulting from the defects); *Simer v. Rios*, 661 F.2d 655, 659, 664 (7th Cir. 1981) (refusing to certify class of persons "discouraged" from applying for governmental assistance).

[13] 165 Cal. App. 4th 25 (2008).

MEMO SUPPORTING MOTION TO DISMISS OR STRIKE
FIRST AMENDED COMPLAINT
Case No. 08-CV-1072 BTM NL

LA1 6721614.4

1    only make meal and rest breaks available, and need not ensure or guarantee that the breaks

2    actually be taken.[14] Because the specific reason for a skipped meal or rest break could vary—

3    was it individual choice or a manager's command?—*Brinker* held that individual issues

4    necessarily predominate.

5          The relevant question under *Brinker* is whether the alleged employer has a policy

6    affirmatively *denying* breaks. *Brinker* holds that "while employers cannot impede, discourage or

7    dissuade employees from taking meal periods, they need only provide them and not ensure they

8    are taken."[15] *Brinker* thus overturned certification of a meal claim where plaintiffs had failed to

9    show the existence of an employer "class-wide policy that prohibited meal breaks."[16]

10         Similarly, as to rest breaks, *Brinker* concludes that the question of whether employees

11   were forced to forgo rest breaks or voluntarily chose not to take them is a highly individualized

12   inquiry that would result in thousands of mini-trials to determine as to each employee if a

13   particular manager prohibited a full, timely break or if the employee waived it or voluntarily cut

14   it short.[17]

15         Federal district courts have followed *Brinker* in denying certification of meal and rest

16   claims. In *Gabriella v. Wells Fargo Financial, Inc.*,[18] Judge Illston of the Northern District of

17   California denied class certification on meal and rest claims: "because defendants' liability turns

18   on whether meal and rest periods were made available and the reasons why breaks were missed,

19

20   _____

21   [14] Although the plaintiffs in *Brinker* conceded that rest breaks could be waived, they argued that
     meal breaks could not. *Brinker*, 165 Cal. App. 4th at 55-56, rejected this argument, citing *Brown*
22   *v. Federal Express Corp.*, 249 F.R.D. 580, 585 (C.D. Cal. 2008) (meal claim not amenable to
     class treatment as court would be "mired in over 5000 mini-trials" to see if such meal breaks
     were provided) and *White v. Starbucks Corp.*, 497 F. Supp. 2d 1080 (N.D. Cal. 2007).

23   [15] 165 Cal. App. 4th at 31.

24   [16] *Id.* at 59.

25   [17] *Id.* at 48 ("trier of fact cannot determine on a class-wide basis whether members of the
     proposed class ... missed rest breaks as a result of a supervisor's coercion or the employee's
26   uncoerced choice to waive such breaks and continue working").

27   [18] No. C 06-4334 SI (N.D. Cal. August 4, 2008) (copy attached as Exhibit A).

                                              6

28                                MEMO SUPPORTING MOTION TO DISMISS OR STRIKE
                                  FIRST AMENDED COMPLAINT
                                  Case No. 08-CV-1072 BTM NL

LA1 6721614.4

1  individual issues predominate. . . .  Plaintiffs do not allege that class-wide policies or practices

2  caused meal members to miss meal and rest periods . . . ."[19]

3      Likewise, in *Kimoto v. McDonald's Corps.*,[20] Judge Gutierrez of the Central District of

4  California denied class certification of meal and rest claims, concluding that the plaintiffs had

5  failed to show a "company-wide policy of not authorizing meal or rest periods"[21] and that

6  "individualized issues predominate because liability cannot be established without individual

7  trials for each class member."[22]

8      Although these decisions came on motions under Rule 23, not Rule 12, this Court has the

9  authority on a Rule 12(f) motion to strike allegations from a pleading that are "immaterial" or

10  "impertinent." Fed. R. Civ. P. 12(f).  As detailed above, Plaintiffs' overtime, meal, and rest

11  claims are immaterial and impertinent because, as a matter of law, they are inherently unsuitable

12  to class treatment as individual issues necessarily predominate.

13      **B.    Plaintiffs fail to allege facts to show who, if anyone, suffered any
             injury with respect to overtime or meal and rest breaks.**

14

15      The overtime, meal, and rest claims flunk pleading requirements by failing to allege facts

16  to support the claim that class members suffered injury.  Indeed, Plaintiffs fatally fail to allege a

17  *single* fact to show that they themselves suffered any injury with respect to overtime or with

    respect to meal and rest breaks.
18

19      Rule 8(a)(2) requires "a short and plain statement of claim *showing* that the pleader is

20  entitled to relief." (Emphasis added.) In *Bell Atlantic Corp. v. Twombly*,[23] the Supreme Court

21  clarified this obligation:  it is not enough merely to create a suspicion of a legally cognizable

22

23  _____

24  [19] *Id.* at 5.

    [20] CV 06-3032 PSG (FMOx) (C.D. Cal. August 19, 2008) (copy attached as Exhibit B).
25  [21] *Id.* at 9.

26  [22] *Id.* at 10.

27  [23] 550 U.S. __, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

                                        7
28                          MEMO SUPPORTING MOTION TO DISMISS OR STRIKE
                            FIRST AMENDED COMPLAINT
                            Case No. 08-CV-1072 BTM NL

LA1 6721614.4

1    right of action;[24] the plaintiff must allege "enough facts" to "nudge[] [the] claim[s] across the

2    line from conceivable to probable."[25]

3          *Twombly* applies beyond its antitrust context.  The Second Circuit applied *Twombly* to

4    dismiss a civil rights "policy and practice" claim arising out of an alleged illegal detainment.[26]

5    Stressing that *Twombly* applies beyond its antitrust context, the court held that *Twombly*'s

6    "plausibility standard" obliges a plaintiff to "amplify a claim with some factual allegations in

7    those contexts where such amplification is needed to render the claim *plausible*."[27]  The Second

8    Circuit then applied *Twombly* to determine whether the civil rights plaintiff had adequately stated

9    a claim.[28]  *Twombly*'s plausibility standard thus applies where, as here, a plaintiff vaguely alleges

10   a "pattern or practice."  To make a claim plausible, plaintiffs must specify supporting facts.

11         In a class claim, "the complaint should indicate who [the class-members] are and allege

12   facts that would entitle them to relief."[29]  Without factual allegations that establish their own

13   injuries and those of the putative class, there is no basis to believe Plaintiffs' class allegations are

14   "plausible on their face."[30]

15         Under Rule 8(a), as illuminated by *Twombly*, Plaintiffs must plead facts to support their

16   claim that class members were entitled to overtime and meal and rest breaks.  Here, Plaintiffs do

17   nothing more than plead legal conclusions that simply recite the elements of overtime and meal

18   and rest claims.  Plaintiffs fail to offer any facts to make their theories "plausible."  They even

19   fail to allege facts to support that any named Plaintiff was denied seventh-day overtime pay or a

20   _____

21   [24] 127 S. Ct. at 1965.

     [25] *Id.* at 1974.

22   [26] *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007).

23   [27] *Id.* at 157-58 (emphasis in original).

     [28] *Id.* at 155-58.

24
     [29] *See Zhong v. August August Corp.*, 2007 WL 2142371, at *4 (S.D.N.Y. July 23, 2007)
25   (applying *Twombly* to dismiss FLSA collective action where plaintiff's failure to generally name
     similarly situated employees left no "factual basis from which the Court can determine whether
26   similarly situated plaintiffs do exist").

27   [30] *Twombly*, 127 S. Ct. at 1970-71.

                                                    8
28   ─────────────────────────────────────────────
                                    MEMO SUPPORTING MOTION TO DISMISS OR STRIKE
                                    FIRST AMENDED COMPLAINT
                                    Case No. 08-CV-1072 BTM NL

LA1 6721614.4

1    meal or rest break.  Moreover, they fail to allege any class-wide policy by which Defendant

2    denied meal or rest breaks.  Their superficial effort runs afoul of Rule 8(a).

3            **C.**    **Plaintiffs fail to allege facts showing class members have common**
                 **overtime, meal, and rest claims.**

4

5          Plaintiffs also fail to allege any facts to show that putative class members share common

6    claims with respect to meal and rest breaks.  There is no specific allegation that all or even most

7    class members work a seventh consecutive workday (a prerequisite to overtime pay), work more

8    than five hours a day (a prerequisite to meal-break entitlement), or work more than three and

9    one-half hours a day (a prerequisite to rest-break entitlement).  This failure to specify facts to

10   show liability requires dismissal of or striking the related class claims.

11   **III.**    **The expense-reimbursement claim fails to state a claim for which relief**
       **can be granted.**

12         Plaintiffs allege that Defendant has unlawfully failed to reimburse them for automobile

13   expenses incurred during their alleged employment as newspaper carriers (1AC ¶ 42).  Plaintiffs

14   cite Section 2802(a):  "**An employer shall indemnify his or her employee for all necessary**

15   **expenditures or losses incurred by the employee in direct consequence of the discharge of**

16   **his or her duties**, or of his or her obedience to the directions of the employer, even though

17   unlawful, unless the employee, at the time of obeying the directions, believed them to be

18   unlawful."  (Relevant language emphasized.)

19         While some courts have uncritically assumed that this provision requires reimbursement

20   of routine employee expenses such as automobile mileage expenses, an objective analysis of the

21   law reveals that an employer has no statutory duty (as opposed to a contractual duty) to

22   reimburse for such expenses.

23         The Section 2802 duty to "indemnify" relates to an employee's loss caused by the acts of

24   third parties, including such things as (1)  a lawsuit against the employee for conduct within the

25   scope of the employee's employment and (2) other losses caused by third parties.  The Industrial

26   Welfare Commission ("IWC")—the administrative agency charged with rulemaking under

27                                             9

28               MEMO SUPPORTING MOTION TO DISMISS OR STRIKE
                               FIRST AMENDED COMPLAINT
                             Case No. 08-CV-1072 BTM NL

1   Section 2802 (and thus whose construction is entitled to deference)—does not construe Section

2   2802 to provide broad rights for reimbursement of any routine work-related expense incurred by

3   an employee.  Similarly, cases addressing car expenses properly do so as a matter of agreement

4   between the parties, not a statutory right.

5         Further, the limited right to reimbursement established by the IWC's Wage Orders

6   applies only to uniforms, tools, and equipment, not to automobiles.

7         In short, the expense-reimbursement claim relies on assumptions, not law.  Although

8   employers customarily reimburse routine employee expenses, they do so as a matter of contract,

9   to meet market demands.  They do not do so as matter of statutory demand.

10         Moreover, any construction of Section 2802 to cover routine employee expenses would

11   contradict the IWC's interpretation of the law, decades of case law, and the meaning of the word

12   "indemnify."

13   **A.     Plaintiffs' interpretation conflicts with that of the IWC.**

14         The Wage Orders, promulgated by the IWC under its statutory mandate to monitor the

15   "hours and conditions of labor and employment in the various occupations, trades, and industries

16   in which employees are employed in this state,"[31] provide only a limited right to reimbursement

17   for uniforms, tools, and equipment.  Expressly exempted from the tool-and-equipment

18   requirement are employees who earn more than twice the minimum wage.[32]  The IWC's

19   exemption as to these highly compensated employees cannot be reconciled with Plaintiff's broad

20   interpretation of Section 2802, and reveals that the IWC does not interpret Section 2802 to

21   provide for a broad right of reimbursement.

22

23

---

24   [31] Lab. Code § 1173.

25   [32] Wage Order § 9(B) ("When tools or equipment are required by the employer or are necessary
to the performance of the job, such tools and equipment shall be provided and maintained by the
employer, except that an employee whose wages are at least two (2) times the minimum wage

26   provided herein may be required to provide and maintain hand tools and equipment customarily
required by the trade or craft.").

27

28

MEMO SUPPORTING MOTION TO DISMISS OR STRIKE
FIRST AMENDED COMPLAINT
Case No. 08-CV-1072 BTM NL

LA1 6721614.4

### 1.    The IWC permits employers to require employees to provide tools and equipment without reimbursement.

Section 9(B) of IWC Order No. 4-2001, for example, provides: "When tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft."

If the Plaintiff were interpreting Section 2802 correctly, then the IWC orders would be ultra vires.  There is no principled distinction between (1) an employer who requires employees to provide and maintain tools and equipment, and (2) an employer who requires employees to provide and maintain an automobile.  Put another way, there would be no warrant for the IWC to create a limited reimbursement right for hand tools and equipment—which permits employers to require certain employees to maintain tools and equipment at their own expense—if there were already a generally applicable reimbursement right under Section 2802.  The IWC's Wage Orders thus contradict Plaintiffs' notion that Section 2802 requires an employer to provide and maintain (i.e., by means of expense reimbursement) automobiles to employees who use automobiles on the job.

Thus, if Plaintiffs' view of Section 2802 were correct, the IWC would lack authority to permit employers to impose on more highly compensated employees the obligation to provide and maintain their own tools and equipment.  If the understanding of Section 2802 that is inherent to the IWC rule on tools and equipment is correct, then the Plaintiffs' expansive view of Section 2802 necessarily must be wrong.

### 2.    The IWC interpretation of Section 2802 deserves deference.

The IWC has statutory authority to promulgate wage orders to set the "hours . . . in the various occupations, trades, and industries in which employees are employed in this state" and to

11

MEMO SUPPORTING MOTION TO DISMISS OR STRIKE
FIRST AMENDED COMPLAINT
Case No. 08-CV-1072 BTM NL

LA1 6721614.4

set their "conditions of labor and employment."[33]  Courts " 'accord[] great weight and respect' to

a valid administrative construction of a controlling statute or regulation," including the IWC's

construction on the scope of statutes imposing "conditions of labor and employment."[34]  An

obvious corollary of that deference is that courts must avoid constructions of statutory provisions

that would render duly promulgated administrative regulations ultra vires, unless such

constructions are mandated by considerations that overcome the "great weight and respect" duly

accorded to the construction implicit in the regulations.

      As set forth below, the IWC's interpretation of the limited scope of Section 2802 is not

overcome by such considerations.  Its interpretation comports with decades of case law

interpreting Section 2802 and its predecessor codification (former Civil Code Section 1969), and

with the very meaning of the word "indemnify."

> **3.     Cases construing Section 2802 or its predecessor do not
> require reimbursement for routine employee expenses.**

      No California appellate court has expressly held that Section 2802 requires employers to

indemnify employees for incidental expenses such as mileage.  In fact, the few cases interpreting

the indemnification required by Section 2802 have arisen from situations in which a third party

to the employment relationship caused the losses to the plaintiff.

> **a.     Section 2802 cases have concerned losses caused
> by third parties.**

      Cases interpreting Section 2802 have dealt with two major issues:   (1) whether

employers must indemnify employees for attorney fees the employee has incurred in defending a

third party's suit arising out of the employee's performance of job duties and (2) whether

employers must indemnify employees for the loss of the employee's tools that were stolen from

the employer's premises.  Consistent with the very meaning of "indemnify," these cases address

liabilities to, and losses caused by, third parties to the employment relationship.  Expenses of

---

[33] Lab. Code § 1173.

[34] *Tidewater Marine Western, Inc. v. Bradshaw*, 14 Cal. 4th 557, 568-70 (1996) (quoting
*International Business Machines v. State Bd. of Equalization*, 26 Cal. 3d 923, 931 n.7 (1980)).

12

MEMO SUPPORTING MOTION TO DISMISS OR STRIKE
FIRST AMENDED COMPLAINT
Case No. 08-CV-1072 BTM NL

LA1 6721614.4

1   defending liability claims by third parties are, of course, part of the very liability itself, for

2   purposes of indemnity.

3        No California state appellate court has extended the reach of Section 2802 beyond the

4   above cases to require employers to reimburse employees for routine business expenses.  Rather,

5   those expenses typically have been a matter of contract between the parties to an employment

6   relationship.

7                    b.    **Cases concerning automobile expenses treat
                          them as matter of contract, not indemnity.**

8        Cases specifically addressing automobile-related expenses have analyzed any

9   requirement to reimburse for mileage as a matter of contract.  In *O'Brien v. L.E. White Lumber*

10  *Co.*,[35] O'Brien and his employer agreed to reduce his salary to reflect a downturn in business.

11  Two years later, when the employer sold the business, O'Brien sought reimbursement for

12  automobile expenses incurred in his employment.  The court held that he was not entitled to that

13  reimbursement, because his agreement with his employer did not call for that reimbursement.[36]

14  Conspicuously absent from the court's analysis was any suggestion that Civil Code section 1969,

15  the predecessor codification to Section 2802,[37] might provide for such reimbursement.

16       Similarly, *Automobile, Truck, Tractor & Implement Co. v. Salladay*[38] looked to the

17  parties' agreement, rather than statute, to find a right to reimbursement.  Salladay was hired as a

18  commissioned salesman but the terms of his employment contained no indication that he "was to

19  discharge his duties at any place other than the one indicated in the caption of the letter."[39]  Just

20  like Plaintiffs here, Salladay sought reimbursement for certain expenses "incidental" to the

---

[35] 43 Cal. App. 703 (1919).

[36] *Id.* at 706-07.

[37] Section 2802 was enacted in 1937 based upon former Civil Code section 1969, "without
substantial change."  Chapter 90 of the statutes of 1937.  *See Douglas v. Los Angeles Herald
Examiner*, 50 Cal. App. 3d 449, 457 (1975) (noting no substantial change).

[38] 55 Cal. App. 219 (1921).

[39] *Id.* at 225.

13

LA1 6721614.4

1   services rendered to his employer, including automobile-related expenses. *Salladay* concluded

2   that the employer had to reimburse Salladay's automobile-related expenses, but not because

3   Civil Code section 1969 required any such reimbursement. Rather, *Salladay* focused on whether

4   the parties' agreement required that reimbursement.[40]

5   No California state court that addressed whether an employer must reimburse

6   automobile-related expenses has expressly held that reimbursement is required by Section 2802

7   or its predecessor codification.[41] The case law certainly does not contradict the IWC's

8   interpretation of Section 2802, much less provide any counterweight to the "great weight and

9   respect" that the IWC's interpretation deserves.

10          **4.      "Indemnity" simply entails reimbursement for losses**
                       **caused by third parties or liabilities to third parties**
11

12          The understanding of the IWC, and the limited application of Section 2802 in the case

13   law, comports with Section 2802's language. Section 2802 does not require employers to

14   "reimburse" employees; it requires employers to "indemnify" employees. The distinction is

15   crucial. As noted above, the black-letter meaning of "indemnify" involves holding someone

16   harmless from liabilities incurred to, or caused by, third parties. Civil Code section 2772 defines

17   "indemnity" as "a contract by which one engages to save another from a legal consequence of

18   one of the parties, or of some other person," and the California Supreme Court has construed

19   Section 2772 consistently with the black-letter meaning. In *Somers v. U.S. Fidelity & Guaranty*

20

21

22

23   _____
     [40] *Id.*

24   [41] The Supreme Court has expressly declined to decide the issue. *Gattuso v. Harte-Hanks
     Shoppers, Inc.*, 42 Cal. 4th 554, 560 n.3 (2007). The court in *Estrada v. FedEx Ground*
25   *Packaging Sys., Inc.*, 154 Cal. App. 4th (2007), uncritically assumed that Section 2802 applies.
     A decision "does not stand for a proposition not considered by the court." *Nolan v. City of*
26   *Anaheim*, 33 Cal. 4th 335, 343 (2004).

27                                            14
                        MEMO SUPPORTING MOTION TO DISMISS OR STRIKE
28                      FIRST AMENDED COMPLAINT
                        Case No. 08-CV-1072 BTM NL

LA1 6721614.4

1    *Co.*,[42] the court stated: "in indemnity contracts the engagement is to make good and save another

2    from loss upon some obligation which he has incurred or is about to incur to a third person."[43]

3    **B.    Plaintiffs cannot rely on Wage Orders to supply a right to**
         **reimbursement.**

4

5    Just as Plaintiffs cannot rely upon Section 2802 to supply the alleged broad right to

6    reimbursement for routine expenses, they likewise cannot rely on the Wage Orders, which create

     only a limited right to reimbursement for a limited variety of expenses.

7

8    **1.    Wage Orders require reimbursement only for uniforms**
            **and tools and equipment in certain circumstances.**

9    In exercising its rule-making authority, the IWC requires employers to provide tools and

10   equipment necessary to the performance of the job, with the exception that more highly

11   compensated employees (those earning double the minimum wage) can be required to provide

12   and maintain their own set of hand tools and equipment customarily required by their trade or

13   craft.  In addition, the IWC also has required employers to provide and maintain uniforms, when

14   the uniforms are required as a condition of employment.

15   Although the IWC could regulate employment terms and conditions relating to the use of

16   personal vehicles by employees, the IWC has never promulgated any such rule.  Indeed, it is well

17   understood that the use of personal automobiles is an area that the IWC has not sought to

18   regulate.  The California Division of Labor Standards Enforcement has responded to an inquiry

19   whether an automobile used in the course of employment was a "tool" within the meaning of

20   Section 9(B) of IWC Order No. 4-80:  "The Labor Commissioner has determined that neither an

21   automobile nor a truck is considered a tool within the meaning of the section, and an applicant

22   for employment may be required, as a condition of employment, to furnish his/her own

23

24

25   _____

     [42] 191 Cal. 542 (1923).

26   [43] *Id.* at 547.  *Accord Leatherby Ins. Co. v. City of Tustin*, 76 Cal. App. 3d 678, 687 (1977) ("the
     concept of indemnity assumes that the party to be indemnified is somehow liable or obligated to
27   another").

     _____

                                              15
28                        MEMO SUPPORTING MOTION TO DISMISS OR STRIKE
                                   FIRST AMENDED COMPLAINT
                                   Case No. 08-CV-1072 BTM NL

LA1 6721614.4

1  automobile or truck to be used in the course of employment, regardless of the amount of wages

2  paid."[44]

3       The IWC has never brought the use of personal automobiles within the scope of its rule

4  on tools and equipment, nor has the IWC ever promulgated a separate rule on reimbursement for

5  the use of automobiles in employment.  Simply stated, in the eyes of the IWC, reimbursement of

6  employees for their use of personal automobiles remains a term of employment for negotiation

7  by the parties.

8       **2.**     **The DLSE's views are not entitled to any deference.**

9       Notwithstanding its recognition that "an applicant for employment may be required, as a

10 condition of employment, to furnish his/her own automobile or truck to be used in the course of

11 employment," the DLSE has opined (without reasoned analysis) that an employer must

12 reimburse for automobile-related expenses:[45]  "Under Labor Code Section 2802, an employer

13 who requires an employee to furnish his/her own car or truck to be used in the course of

14 employment would be obligated to reimburse the employee for the costs necessarily incurred by

15 the employee in using the car or truck in the course of employment.  The rate of reimbursement

16 can be that agreed to by the employer and employee, or, if there is no such agreement, any

17 reasonable amount."

18      But unlike the IWC (whose regulations the DLSE's "interpretation" contradicts), the

19 DLSE's views deserve zero judicial weight.  In *Tidewater Marine Western v. Bradshaw*,[46] the

20 California Supreme Court reaffirmed the deference owed to an administrative agency that acts in

21 conformity with the Administrative Procedures Act (APA).[47]  The IWC, the court noted, is

22 exempted from APA compliance because the Labor Code imposes specific "detailed

23 comprehensive  procedural protections applicable to IWC rulemaking," which are "analogous to

---

24 [44] DLSE Manual §§ 29.2.3.2 and 29.2.3.3.

25 [45] See *Gattuso*, 42 Cal. 4th at 563-64.

26 [46] 14 Cal. 4th 557 (1996).

27 [47] *Id*. at 568-69.  The APA is codified at Gov't Code § 11346 et seq.

16

28 MEMO SUPPORTING MOTION TO DISMISS OR STRIKE
FIRST AMENDED COMPLAINT
Case No. 08-CV-1072 BTM NL

LA1 6721614.4

1    those in the APA."[48]  Thus, the IWC is subject to a statutory exception to the APA, and the

2    IWC's constructions deserve deference without specific APA compliance.[49]

3           But the court rejected the same conclusion with regard to the DLSE's interpretive efforts:

4    "[t]he DLSE's primary function is enforcement, not rulemaking."[50]  The court thus held that the

5    DLSE must comply with the APA before pronouncing that "rule[s] of general application to

6    guide deputy labor commissioners on the applicability of IWC wage orders" are entitled to

7    deference.[51]  Because the DLSE's interpretive manuals did not comply with the APA, the court

8    held:  "the DLSE's interpretation of the IWC wage orders is void and not entitled to any

9    deference."[52]

10          The DLSE somehow concludes that although automobiles are not "tools" within the

11   meaning of the Wage Orders, employers must reimburse employees for automobile expenses.

12   This unfounded, illogical conclusion deserves no "weight and respect."  The California Supreme

13   Court in *Gattuso* has confirmed this very point:  "Here, as the parties agree, the DLSE's

14   interpretation of section 2802, as applied to automobile expenses, was incorporated into a void

15   regulation.  Accordingly, we review the relevant DLSE policy statements and DLSE advice and

16   opinion letters as evidence of the DLSE's interpretation of sections 2802 and 2804, recognizing

17   that its interpretation is entitled to no deference but also that this court may adopt the DLSE's

18   interpretation if we independently determine that it is correct."[53]

19

20

21

22

---

23   [48] 14 Cal. 4th at 569.

     [49] *Id.*

24   [50] *Id.*

25   [51] *Id.* at 572.

     [52] *Id.* at 577.

26   [53] *Gattuso*, 42 Cal. 4th at 563.

27                                          17

28                        MEMO SUPPORTING MOTION TO DISMISS OR STRIKE
                          FIRST AMENDED COMPLAINT
                          Case No. 08-CV-1072 BTM NL

**CONCLUSION**

Defendant respectfully requests that the Court grant its motion to dismiss or strike and rule that Plaintiffs

- cannot sue on behalf of penalty subclasses extending beyond the one-year or three-year limitations period that applies to each penalty claim,

- cannot maintain class allegations for overtime, meal, and rest claims because they are overbroad, and

- cannot maintain their Section 2802 claim for unreimbursed routine automobile mileage employee expenses.

DATED:  September 9, 2008                    SEYFARTH SHAW LLP


By _____
        David D. Kadue
        Attorneys for Defendant
        LEE PUBLICATIONS, INC.
        DBA NORTH COUNTY TIMES

18

MEMO SUPPORTING MOTION TO DISMISS OR STRIKE
FIRST AMENDED COMPLAINT
Case No. 08-CV-1072 BTM NL

LA1 6721614.4

**EXHIBIT A**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MELISSA GABRIELLA, *et al.*,            No. C 06-4347 SI

     Plaintiffs,            **ORDER DENYING PLAINTIFFS'**
                        **MOTION FOR CLASS CERTIFICATION**
   v.

WELLS FARGO FINANCIAL, INC., *et al.*,

     Defendants.

    On July 25, 2008, the Court heard argument on plaintiffs' motion for class certification. After consideration of the parties' arguments and papers, the Court hereby DENIES plaintiffs' motion.

**BACKGROUND**

    Plaintiffs' Third Amended Complaint alleges claims for (1) unpaid overtime under the California Labor Code and California Wage Orders; (2) waiting time penalties under the California Labor Code; (3) failure to provide itemized wage statements under the California Labor Code; (4) failure to provide and/or authorize and permit meal and rest periods under the California Labor Code and California Wage Orders; and (5) violations of California Business and Professions Code § 17200. Plaintiffs seek to represent the following class:

> All employees of Defendants who were, are, or will be employed in the State of California as a credit manager, senior credit manager, assistant manager, or loan processor at any time within four years of the filing of this Complaint until the final disposition of this case, who have claims not covered by a valid arbitration agreement, and who were entitled to but who were not paid a premium for a missed meal or rest period, as required under California law.

United States District Court
For the Northern District of California

1   TAC ¶ 18.[1]

2       Plaintiffs allege that class members "routinely were not authorized and permitted and/or

3   provided meal and rest breaks during the Class Period, and not paid premiums required under California

4   law for such missed breaks." *Id.* ¶ 20. The complaint does not allege that defendants have a company

5   policy of not providing meal and rest breaks, and indeed defendants have submitted evidence that Wells

6   Fargo Financial, Inc. ("WFF") has meal and rest period policies. *See* Hender Decl. ¶ 6 ("WFF has a

7   meal period policy requiring all non-exempt California team members to take at least a 30 minute, duty

8   free meal period by the end of their fifth hour of work. Employees working more than 10 hours in any

9   workday must take a second 30 minute duty free meal period within five hours of the end of their last

10  meal period."); *Id.* ¶ 7 ("WFF also has a rest period policy that provides that all non-exempt California

11  team members are entitled to a 15 minute rest period for every four hours worked, or major fraction

12  thereof.").

13      In support of their motion for class certification, plaintiffs reference 15 putative class member

14  declarations that were filed in connection with prior motions. *See* Docket Nos. 70, 190. Some class

15  members state that they were "required" to work through meal breaks, Beaston Decl. ¶ 6, and that their

16  managers did not "permit" them to take rest breaks, Brown Decl. ¶ 3, while others simply state that they

17  did not take meal or rest breaks. *See* Simoulis Decl. ¶ 6 ("I worked through my lunch or ate at my desk

18  approximately four days a week."); Roberts Decl. ¶ 7 ("I very rarely took a rest period."); Gabriela Decl.

19  ¶ 3 ("I would only take a half hour lunch twice per week. The rest of the week I would either skip lunch

20  altogether or just continue working while I ate at my desk. We rarely ever took breaks."). Plaintiffs

21  have also submitted evidence showing that prior to September 2007,[2] WFF never paid any meal or rest

22  period premiums. *See* Gaydos Depo. at 210-14; Hender Depo. at 199-201. Defendants have submitted

23  numerous declarations from class members stating that they were provided with meal and rest breaks.

24

25

26      [1] Plaintiffs state that at this time they do not seek certification under Rule 23 of the overtime
    claim.

27      [2] On September 7, 2007, Wells Fargo instituted an "Automatic California Meal/Rest Period
28  Premium Pay" procedure under which non-exempt employees who record that they did not take a meal
    or rest period are automatically paid meal and rest period premiums in the next paycheck.

**LEGAL STANDARD**

The decision whether to certify a class is committed to the discretion of the district court within the guidelines of Federal Rule of Civil Procedure 23. *See Cummings v. Connell*, 316 F.3d 886, 895 (9th Cir. 2003). A court may certify a class if a plaintiff demonstrates that all of the prerequisites of Rule 23(a) have been met, and that at least one of the requirements of Rule 23(b) have been met. *See* Fed. R. Civ. P. 23; *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). A class may be certified only "if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364 (1982). The burden is on the plaintiff to establish that the Rule 23(a) and Rule 23(b) requirements have been met. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

Rule 23(a) provides four prerequisites that must be satisfied for class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) questions of law or fact exist that are common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a). A plaintiff must also establish that one or more of the grounds for maintaining the suit are met under Rule 23(b), including: (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication. *See* Fed. R. Civ. P. 23(b).

In determining the propriety of a class action, the question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (citing *Miller v. Mackey Int'l, Inc.*, 452 F.2d 424, 427 (5th Cir. 1971)). The Court is obliged to accept as true the substantive allegations made in the complaint. *See In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982); *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975). However, it "need not blindly rely on conclusory allegations which parrot Rule 23 requirements [and] may . . . consider the legal and factual issues presented by plaintiff's complaints." 2 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 7.26 (3d ed. 1992); *see also Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744

United States District Court
For the Northern District of California

1    (5th Cir. 1996).

2

3                                  **DISCUSSION**

4         Plaintiffs contend that the meal and rest period claims present common issues of law and fact

5    because an employer is liable under California law whenever an employee misses a meal or rest period,

6    regardless of the reason the break was not taken.  Plaintiffs argue that because the evidence shows that

7    defendants did not pay meal and rest period premiums for a significant portion of the class period, and

8    because plaintiffs allege (and have submitted evidence showing) that they missed meal and rest periods,

9    the overarching common issue is the adequacy of defendants' meal and rest period policy.

10        Defendants oppose plaintiffs' motion for class certification on numerous grounds.  Principally,

11   defendants argue that plaintiffs are incorrect in their interpretation of California law, and that employers

12   are only required to *provide* meal and rest periods, not to ensure that such breaks are actually taken.

13   Although this question has not been decided by the California Supreme Court, on July 22, 2008, the

14   California Court of Appeal, Fourth Appellate District, issued a decision consistent with defendants'

15   view.  In *Brinker Restaurant Corporation, et al. v. Superior Court of San Diego County (Hohnbaum)*,

16   Court of Appeal No. D049331, the Court of Appeal vacated a class certification order because the

17   plaintiffs' meal and rest period claims were not susceptible to class treatment.  The Court of Appeal held

18   "because the rest and meal breaks need only be 'made available' and not 'ensured,' individual issues

19   predominate and, based upon the evidence presented to the trial court, they are not amenable to class

20   treatment."  Decision at 4.  The *Brinker* plaintiffs had submitted evidence showing that Brinker used

21   a centralized computer system that could generate reports showing class-wide meal and rest period

22   violations, "detailed" declarations from 33 current and former hourly employees, and statistical and

23   survey evidence that allegedly showed that Brinker prevented its employees from taking meal and rest

24   periods.  *Id.* 13-14.  The court summarized the class member declarations as follows:

25            Some stated that they were denied rest breaks but said nothing about whether they were
              denied meal breaks, or what time in their shift meal breaks were taken.  Others stated
26            they were not provided rest or meal breaks.  Some of the declarants stated they were
              given meal breaks, but were required to take them within the first hour of working and
27            were not given another meal break after working five hours.  Some, but not all, stated
              they were required to work when they were clocked out for lunch or after their shift
28            ended.  Some stated they did not "waive" their breaks, but instead were not relieved of

                                            4

1    work duties so they could take their breaks.

2    *Id.* at 14.

3    In the absence of California Supreme Court authority regarding the interpretation of California's

4    meal and rest period requirements, this Court must apply the rule it believes the Supreme Court would

5    adopt. *See Wyler Summit Partnership v. Turner Broadcasting Sys. Inc.*, 135 F.3d 658, 663 (9th Cir.

6    1998). The Court finds the *Brinker* decision to be a good indication of how the California Supreme

7    Court would resolve the issue.[3] Under *Brinker*, because defendants' liability turns on whether meal and

8    rest periods were made available and the reasons why breaks were missed, individual issues

9    predominate. In order to determine defendants' liability, the parties would be required to litigate each

10    instance of an alleged violation. Plaintiffs do not allege that class-wide policies or practices caused class

11    members to miss meal and rest periods, and the class member declarations, as in *Brinker*, describe a

12    variety of circumstances under which class members missed meal and rest periods. Because the Court

13    concludes that certification is inappropriate on this ground, the Court does not address the parties' other

14    arguments regarding certification, defendants' evidentiary objections, or defendants' objections to the

15    proposed class notice.

16

17                                   **CONCLUSION**

18    Accordingly, for the foregoing reasons the Court DENIES plaintiffs' motion for class

19    certification without prejudice to reconsideration if the California Supreme Court interprets California's

20    meal and rest period requirements differently than the *Brinker* court. (Docket No. 269). The Court

21    GRANTS defendants' Request for Judicial Notice. (Docket No. 275).

22    **IT IS SO ORDERED.**

23    Dated: August 4, 2008

                                   SUSAN ILLSTON
24                                   United States District Judge

25

26    [3] Plaintiffs rely heavily on this Court's class certification order in *Otsuka et al. v. Polo Ralph
Lauren Corp.*, C 07-2780 SI, which was issued prior to the Court of Appeal's decision in *Brinker*.
27    While the Court expresses no view on the effect of *Brinker* on *Otsuka*, the Court notes that the *Otsuka*
plaintiffs allege, *inter alia*, that Polo has policies and practices of affirmatively discouraging employees
28    from taking rest breaks through both understaffing and managerial discouragement.

**EXHIBIT B**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### **CORRECTED**
## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 06-3032 PSG (FMOx) | Date | August 19, 2008 |
| Title | Deanna M. Kimoto, et al. v. McDonald's Corps., et al. | | |

Present:   The Honorable Philip S. Gutierrez, United States District Judge

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiff(s):          Attorneys Present for Defendant(s):

Not Present                                 Not Present

**Proceedings:**   **(In Chambers) Order GRANTING Defendant's Motion to Deny Class Certification, deeming MOOT Plaintiff's *Ex Parte* Application for an Order Continuing Hearing on Defendant's Motion to Deny Class Certification and Plaintiff's Motion for Class Certification to be Heard Concurrently, and deeming MOOT Plaintiff's Motion for Class Certification**

Before this Court are Defendant's Motion to Deny Class Certification, Plaintiff's *Ex Parte* Application for an Order Continuing Hearing on Defendant's Motion to Deny Class Certification and Plaintiff's Motion for Class Certification to be Heard Concurrently, and Plaintiff's Motion for Class Certification. On August 18, 2008, the Court heard argument on Defendant's Motion to Deny Class Certification. After consideration of the parties' arguments and papers, the Court hereby GRANTS Defendant's motion, and deems MOOT Plaintiff's *Ex Parte* Application and Motion for Class Certification.

## I.   BACKGROUND

Deanna M. Kimoto ("Plaintiff") commenced this action by filing a class action complaint against McDonald's Corporation ("Defendant" or "McDonald's") and other Doe defendants in state court, alleging claims for compensation for missed meal and rest periods including waiting time penalties (Cal. Labor Code §§ 203, 226.7 and 558, and Wage Order 5-2001); wages due including waiting time penalties (Cal. Labor Code §§ 201-203 and 1194.2, and Wage Order 5-2001); failure to comply with itemized employee wage statement provisions and to maintain records at a centralized location (Cal. Labor Code §§ 226, 558 and 1174); and unfair competition (Cal. Bus. & Prof. Code, §§ 1700 *et seq.*). On May 17, 2006, Defendant removed



24

Case 2:06-cv-03032-PSG-FMO    Document 106    Filed 08/19/2008    Page 2 of 10

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### **CORRECTED**
### CIVIL MINUTES - GENERAL

| Case No. | CV 06-3032 PSG (FMOx) | Date | August 19, 2008 |
|---|---|---|---|
| Title | Deanna M. Kimoto, *et al.* v. McDonald's Corps., *et al.* | | |

the case to federal court.

Defendant McDonald's presently owns and operates approximately 158 restaurants in California (Tossi Dec., ¶ 4.) From November 14, 2005 though February 25, 2006, Plaintiff worked as an hourly, non-exempt crew member at the McDonald's in Clovis, California. (UF, ¶ 1.) The Complaint alleges that during the Class Period, defined as "four years prior to the filing of this action through the trial date . . . ." (Comp. ¶ 3), McDonald's engaged in a concerted practice of not providing Plaintiff and class members their wages in full or meal and rest periods as required by the Wage Orders and Cal. Labor Code §§ 226.7 and 512. (Comp. ¶ 10.) The Complaint alleges that members who performed work during time they were entitled to take meal and rest periods, are entitled to compensation and wages, and in some cases, overtime pay. (Comp. ¶¶ 25-27.) The Complaint further alleges that Defendant's failure to provide lawful meal and rest breaks resulted in inaccurate wage statements provided to employees, in violation of Cal. Labor Code § 226(a). (Comp. ¶ 30.) Plaintiff seeks to represent the following Plaintiff Class:

> All persons who at any time after four (4) years prior to the filing of the action through the date of trial were non-exempt employees of the Defendants in California.

(Comp. ¶ 11.) The Plaintiff Class contains two subclasses:

> <u>Wage Sub-Class:</u> All Plaintiff Class member who were not fully paid wages as required by the applicable Wage Order(s) of the Industrial Welfare Commission, regulations or statutes.

> <u>Meal and Rest Period Sub-Class:</u> All Plaintiff Class member who were not provided lawful meal and rest periods as required by the applicable Wage Order(s) of the Industrial Welfare Commission, regulations or statutes.

(Comp. ¶ 12.)

On October 17, 2006, the Court stayed the action pending the California Supreme Court's decision in *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal.4th 1094, 56 Cal.Rptr.3d 880

---

CV-90 (06/04)                    CIVIL MINUTES - GENERAL                    Page 2 of 10

**25**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## **CORRECTED**
## CIVIL MINUTES - GENERAL

| Case No. | CV 06-3032 PSG (FMOx) | Date | August 19, 2008 |
|---|---|---|---|

| Title | Deanna M. Kimoto, *et al.* v. McDonald's Corps., *et al.* |
|---|---|

(2007).[1]  A decision in *Murphy* was issued on April 16, 2007, and on July 5, 2007, the Court vacated the stay.  On July 22, 2008, Defendant moved to deny class certification and set the hearing date for August 18, 2008.  On Thursday, August 14, 2008, the last day to file motions pursuant to the Court's scheduling order, Plaintiff filed a motion to certify the class.  (Dock. No. 86.)  On Friday, August 15, 2008, Plaintiff filed an *ex parte* application asking the Court to continue the Defendant's motion to deny certification and hear both parties' motions concurrently.  (Dock. No. 96.)  These motions are now before the Court.

## II.    LEGAL STANDARD

        The decision whether to certify a class is committed to the discretion of the district court within the guidelines of Federal Rule of Civil Procedure 23.  *See Cummings v. Connell*, 316 F.3d 886, 895 (9th Cir. 2003).  A court may certify a class if a plaintiff has met the four prerequisites of Rule 23(a), and at least one of the alternative requirements of Rule 23(b).  *See* Fed. R. Civ. P. 23; *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  Plaintiff has the burden to establish that the Rule 23(a) and Rule 23(b) requirements have been met.  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

        Rule 23(a) sets forth four prerequisites to class certification: (1) the class is so numerous that joinder of all members individually is "impracticable"; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representative are typical of the claims or defenses of the class; and (4) the class representative will fairly and adequately protect the interests of all members of the class. Fed. R. Civ. P. 23(a).  If all four prerequisites of Rule 23(a) are satisfied, a plaintiff must also establish that one or more of the grounds for maintaining the suit are met under Rule 23(b), including: (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication.  *See* Fed. R. Civ. P. 23(b).

---

        [1]In *Murphy*, the California Supreme Court address the question of whether the "additional hour of pay" remedy for violations of § 226.7 was a penalty or a wage.  *Murphy*, 40 Cal.4th at 1120.  The distinction was important because under California Code of Civil Procedure, a three-year statute of limitations applies to wages, while a one-year statute of limitation applies to penalties.  Cal. Civ. P.§§ 338(a), 240 (a).  The *Murphy* court held that the "additional hour of pay under § 226.7 constitutes a wage or premium pay, and thus is governed by a three-year statute of limitations." *Id.*

**26**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### **CORRECTED**
### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 06-3032 PSG (FMOx) | Date | August 19, 2008 |
| Title | Deanna M. Kimoto, *et al.* v. McDonald's Corps., *et al.* | | |

"[D]istrict courts must conduct a rigorous analysis into whether the prerequisites of Rule 23 are met before certifying a class." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996). In determining the propriety of a class action, the court is bound to take the substantive allegations of the complaint as true. *See In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982); *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975). However, the court must also consider the nature and range of proof necessary to establish those allegations. *Id.* at 901.

## I.   DISCUSSION

Defendant sets forth numerous grounds for denying class certification, including that: (i) Plaintiff cannot satisfy the typicality or adequacy requirements of Rule 23(a) concerning her meal and rest period claims; (ii) Plaintiff cannot satisfy the commonality and superiority requirements of Rule 23(b)(3) concerning her meal, rest period, wage statement and overtime claims; (iii) Plaintiff lacks standing to pursue her wage statement claims; and (iv) Plaintiff is barred from seeking certification because she failed to comply with the 90-day requirement of Local Rule 23-3 or Rule 23's requirement that the plaintiff seek certification at an "early practicable time." Fed. R. Civ. P. 23(c)(1)(A).

### A.   Timing of Certification Motion

As an initial matter, the Court addresses the timing of Plaintiff's motion for class certification. Under Rule 23(c)(1)(A), the Court must determine by order whether to certify the action as a class action at "an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1)(A).

Here, the Court set the discovery cutoff date for July 14, 2008. (Dock. No. 43.) However, Plaintiff did not file her motion for certification until one full month later, on August 14, 2008 - the last date to file a motion of any kind in this action. Given that trial is just two months away, the Court does not find this to be "an early practicable time" under Rule 23(c)(1)(A). Although Plaintiff correctly contends that the Court's scheduling order *permitted* this late filing of her motion, nothing in any of the Court's orders authorized Plaintiff to bypass her obligation under Rule 23(c)(1)(A). Furthermore, the Court notes that back in October 2007, the parties filed a Joint Request for Clarification proposing August 4, 2008 as the class certification hearing date. (Dock. No. 51.) The Court denied the joint request, thus indicating that an August 2008 hearing date on a motion for class certification would be inappropriate. By filing her motion at this late date, Plaintiff has ignored both the Court's order and Rule

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## **CORRECTED**
## CIVIL MINUTES - GENERAL

| Case No. | CV 06-3032 PSG (FMOx) | | Date | August 19, 2008 |
|---|---|---|---|---|
| Title | Deanna M. Kimoto, *et al.* v. McDonald's Corps., *et al.* | | | |

23(c)(1)(A). Nevertheless, while Plaintiff's failure to comply with Rule 23(c)(1)(A) in and of itself warrants denying class certification, the Court will proceed to address the merits of the issue.

    B.    <u>Commonality under Rule 23(a)(2) and Rule 23(b)(3)</u>

    Because a central issue disputed by the parties is whether Plaintiff has shown common questions of law or fact sufficient to meet her burden under Rule 23(a)(2) and shown that these common questions predominate over individual questions under Rule 23(b)(3), the Court will address this issue first.[2]

    To fulfill the commonality prerequisite of Rule 23(a)(2), plaintiffs must establish that there are questions of law or fact common to the class as a whole. Fed. R. Civ. P. 23(a)(2). The Ninth Circuit has construed Rule 23(a)(2) permissively. *See Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003). Individual variation among plaintiffs' questions of law and fact does not defeat underlying legal commonality, because "the existence of shared legal issues with divergent factual predicates is sufficient" to satisfy Rule 23. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). However, where as here, a plaintiff seeks class certification under Rule 23(b)(3), the plaintiff must satisfy a more stringent standard by showing that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). To determine if common questions of fact predominate, the court "examine[s] the issues framed by the pleadings and the law applicable to the causes of action alleged." *Hicks v. Kaufman and Broad Home Corp.*, 89 Cal.App.4th 908, 916 (2001).

    Here, the applicable law is set forth in both the California Labor Code and in Wage Orders promulgated by the Industrial Welfare Commission ("IWC"). The IWC is a quasi-legislative body authorized by statute to promulgate orders regulating wages, hours, and conditions of employment for employees throughout California. *Nordquist v. McGraw-Hill Broadcasting Co., Inc.*, 32 Cal.App.4th 555, 562, 38 Cal.Rptr.2d 221 (1995). Pursuant to this authority, the IWC has promulgated seventeen different "wage orders" that apply to various groups of employees. Cal. Code Regs. tit. 8, §§ 11010- 11170. The Ninth Circuit has stated that

---

    [2]In her Opposition to Defendant's motion and in her Motion for Class Certification, Plaintiff only seeks certification pursuant to Rule 23(b)(3), and does not mention the other two grounds for maintaining a class action under Rule 23(b)(1) or (b)(2).

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## **CORRECTED**
## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 06-3032 PSG (FMOx) | Date | August 19, 2008 |
| Title | Deanna M. Kimoto, *et al.* v. McDonald's Corps., *et al.* | | |

IWC wage orders are "quasi-legislative regulations that are to be interpreted in the same manner as statutes." *Watkins v. Ameripride Services,* 375 F.3d 821, 825 (9th Cir. 2004).

Plaintiff bases her meal, rest period and wage claims on Cal. Labor Code §§ 512(a) and 226.7. Section 512 provides:

> An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee.

Cal. Labor Code §§ 512(a).

Section 226.7 provides:

> (a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

> (b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

Cal. Labor Code § 226.7.

Subdivision 12 of Wage Order 5-2001 provides, in relevant part:

> (A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily time is less than three and on-half (3½) hours. Authorized rest period time shall be counted, as hours worked, for which

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CORRECTED**
CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 06-3032 PSG (FMOx) | Date | August 19, 2008 |
| Title | Deanna M. Kimoto, *et al.* v. McDonald's Corps., *et al.* | | |

there shall be no deduction from wages.

(B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided

Cal. Code of Reg., title 8, §11050(12)(A).

To start, the parties dispute their interpretation of the California law. Citing persuasive authority, Defendant contends that the phrase "authorize and permit . . . rest periods" and "provide an employee a rest period" in Wage Order 5-2001 means to *make the period available* if he or she wants to take one, but not to ensure that such rest periods are taken. *See White v. Starbucks Corp.*, 497 F.Supp.2d 1080, 1086 (N.D.Cal. 2007) ("[T]he court agrees that the words 'authorize' and 'permit' only require that the employer make rest periods available"); *Lanzarone v. Guardsmark Holdings. Inc.*, 2006 WL 4393465, *6 (C.D.Cal. 2006) ("Under California law, rest periods need only be authorized and permitted, they need not be enforced or actually taken."); *Brown v. Federal Express Corp.*, 249 F.R.D. 580, 585 (C.D.Cal. 2008) ("It is an employer's obligation to ensure that its employees are free from its control for thirty minutes, not to ensure that the employees do any particular thing during that time.") Plaintiff argues that "Defendant's cited authority for the notion that breaks must be offered but not ensured, is unsupported by the facts of this case." (Opp'n at 18.) The question has not yet been decided by the California Supreme Court.

When interpreting state law, federal courts are bound by decisions of the state's highest court. *In re Kirkland*, 915 F.2d 1236, 1238 (9th Cir. 1990). In the absence of such a decision, a federal court should apply the rule that it believes the state supreme court would adopt if faced with the same issue. *See Arizona Electric Power Cooperative, Inc. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995). For example, in *Starbucks Corp.*, the district court held that the California Supreme Court, if faced with the issue, "would require only that an employer offer meal breaks, without forcing employers actively to ensure that workers are taking these breaks. In short, the employee must show that he was forced to forego his meal breaks as opposed to merely showing that he did not take them regardless of the reason." *Starbucks Corp.*, 497 F.Supp.2d at 1088-89. On July 22, 2008, the California Court of Appeal, Fourth Appellate District, issued a decision consistent with Defendant's view in *Brinker Restaurant Corp. v. Superior Court*,--- Cal.Rptr.3d ----, 2008 WL 2806613 (Cal.App. 4 Dist., July 22, 2008).

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## **CORRECTED**
## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 06-3032 PSG (FMOx) | Date | August 19, 2008 |
| Title | Deanna M. Kimoto, et al. v. McDonald's Corps., et al. | | |

The named plaintiffs in *Brinker*, employees of Brinker Restaurant Corporation which operated restaurants such as Chili's Grill & Bar, Romani's Macaroni Grill and Maggiano's Little Italy, asserted three types of wage and hour violations - rest break violations, meal period violations, and off-the-clock/time shaving violations. *Id.* at *2-3. The trial court certified the class, finding that common alleged issues of meal and rest violations predominated, even though "a determination that [Brinker] need not force employees to take breaks may require some individualized discovery." *Id.* at *9.

The court of appeal disagreed, explaining that in a wage and hour case, in order to determine if common issues of fact predominated, the trial court was required "to determine the elements of the plaintiffs' claims. *Id.* at 10. The trial court, however, did not reach the issue of what law applied to the claims. *Id.* By not resolving the applicable law, a "threshold issue," the trial court abused its discretion. *Id.* The court of appeal further explained that had the court properly determined the applicable law, it would have denied class certification:

> Had the [trial] court properly determined that (1) employees need be afforded only one 10-minute rest break every four hours "or major fraction thereof" (Reg. 11050(12)(A)), (2) rest breaks need be afforded in the middle of that four-hour period only when "practicable," and (3) employers are not required to ensure that employees take the rest breaks properly provided to them in accordance with the provisions of IWC Wage Order No. 5, only individual questions would have remained, and the court in the proper exercise of its legal discretion would have denied class certification with respect to plaintiffs' rest break claims because the trier of fact cannot determine on a class-wide basis whether members of the proposed class of Brinker employees missed rest breaks as a result of a supervisor's coercion or the employee's uncoerced choice to waive such breaks and continue working. Individual questions would also predominate as to whether employees received a full 10-minute rest period, or whether the period was interrupted. *The issue of whether rest periods are prohibited or voluntarily declined is by its nature an individual inquiry.*

*Id.* at *15 (emphasis added). Based on this reasoning, the *Brinker* court vacated the previous class certification order and denied, with prejudice, certification of plaintiffs' rest, meal period and off-the-clock subclasses. *Id.* at *25.

The Court concludes that this recent decision in *Brinker* provides a good indication of

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### **CORRECTED**
### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 06-3032 PSG (FMOx) | Date | August 19, 2008 |
| Title | Deanna M. Kimoto, *et al.* v. McDonald's Corps., *et al.* | | |

how the California Supreme Court would resolve the issue. If the issue were before it, the California Supreme Court would adopt Defendant's construction of the meal and rest period provisions. Having resolved this legal question for purposes of Defendant's motion, it is apparent that Plaintiff has failed to identify any theory of liability that present common questions that predominate.

Plaintiff's theory appears to be that the McDonald's was too busy to give employees a meaningful opportunity to take break. Assessing whether a McDonald's employee was *authorized* by his or her manger to take a rest or meal period would require an individualized, highly fact-specific inquiry to determine whether a divergent method applied in a particular restaurant, by particular managers, to particular shifts, to particular crew members.

Plaintiff nonetheless argues that common questions predominate because she seeks only to represent those employees who, like herself, were subjected to "late" breaks. What matters, contends Plaintiff, is not whether or how the employees were authorized to take breaks, but **when** the breaks were provided. (Opp'n at 17.) To support her claims, Plaintiff has submitted a sampling of time punch meal and rest break data for McDonald's non-exempt California restaurant employees from March 2006 through March 1, 2008 (Lamb Dec., ¶¶ 3-4; Compendium, Ex. 2), and time punch summary reports of various employees. (Compendium, Ex. 3.)

Plaintiff attempts to avoid *Brinker* by redefining the Class. However, even considering Plaintiff's newly defined class, the Court finds that individual questions would still predominate. The Court cannot infer from the summary reports of various employees a company-wide policy of not authorizing meal or rest periods. First, there is no financial incentive for an employee to clock in and out for a ten-minute rest period, since that employee will get paid regardless. Thus, without other evidence, the Court cannot assume that the employees accurately recorded the timing of their breaks. This is especially true in light of Defendant's evidence - declarations by store managers - that often an employee will take a rest period without punching in and out, despite being instructed to do so (Id., Arias Dec., ¶ 20; Allen Dec., ¶ 24; Lee Dec., ¶ 19; Alania Dec., ¶ 12); and that often, employees fail to clock out for meal periods when taken. (Id., Fajardo Dec., ¶ 16; Gutierrez Dec., ¶ 20; Hernandez Dec., ¶ 15.) Second, these time records actually demonstrate the individual nature of the inquiry. Some of the employees clocked out for their full 30 minute meal periods or ten-minute breaks most of the time, and some appear to have clocked out only part of the time. Moreover, Defendant has submitted evidence showing that authorizations to take rest periods and meal breaks vary from manager to manager, and also vary from store to store. (Defendant's Appendix of Evidence, Alania Dec., ¶¶ 12-13; Allen

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CORRECTED**
CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 06-3032 PSG (FMOx) | Date | August 19, 2008 |
| Title | Deanna M. Kimoto, *et al.* v. McDonald's Corps., *et al.* | | |

Dec., ¶¶ 13-14; Gutierrez Dec., ¶ 13; Arias Dec., ¶¶ 10-11,13; Jones Dec., ¶¶ 12-13; Miguel Dec., ¶ 15; Romero Dec., ¶ 8; Lee Dec., ¶ 13; Hernandez Dec., ¶ 12; Garcia Dec., ¶¶ 15-16).

Based on the evidence provided, an employee may have taken a lawful ten-minute break during the first four hour period of a shift, but simply forgot to punch out. On the other hand, the evidence might also show that in a particular case the store manager instructed an employee to help a customer rather than take the ten-minute break. Such an instruction could be viewed as the employer not "providing" a meal break; however, it is an individual question that cannot be resolved class wide. Accordingly, the Court finds that individualized issues predominate because liability cannot be established without individual trials for each class member. Because the Court concludes that certification of the Meal and Rest Period Sub-Class is inappropriate on this ground, the Court does not address the parties' other arguments regarding certification.

Lastly, with respect to Plaintiff's class claims regarding inaccurate wage statements, failure to pay overtime, and unfair competition, these claims are wholly derivative of Plaintiff's meal and rest period claims. Therefore, certification of the Wage Sub-Class fails as well.

IV.   CONCLUSION

Because the Court hearing on Defendant's motion to deny certification went forward on August 18, 2008, Plaintiff's *Ex Parte* Application for an Order Continuing Hearing on Defendant's Motion to Deny Class Certification and Plaintiff's Motion for Class Certification to be Heard Concurrently is MOOT.

For the foregoing reasons, the Court GRANTS Defendant's Motion to Deny Class Certification. Accordingly, Plaintiff's Motion for Class Certification is MOOT.

IT IS SO ORDERED.

Initials of Preparer _____

1

2
**CERTIFICATE OF SERVICE**

3
STATE OF CALIFORNIA            )

4
ss
COUNTY OF LOS ANGELES          )

5
     I am a resident of the State of California, over the age of eighteen years, and not a party

6
to the within action.  My business address is Seyfarth Shaw LLP, 2029 Century Park East, Suite 3300, Los Angeles, California 90067-3063.  On the date stated below, I served the within

7
documents:

8
**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS OR STRIKE**

9

10
☐    by placing the document(s) listed above in a sealed envelope with postage thereon

11
    fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

12
☐    by placing the document(s) listed above, together with an unsigned copy of this

13
    declaration, in a sealed Federal Express envelope with postage paid on account and deposited with Federal Express at Los Angeles, California, addressed as set forth

14
    below.

15
☒    by transmitting the document(s) listed above, electronically, via the e-mail addresses set forth below.

16
Curtis Keith Greer, Esq.                          Marcy E. Kaye, Esq.

17
Julie A. Lowell, Esq.                             11770 Bernardo Plaza Court
LAW OFFICES OF GREER & ASSOC., A.P.C.             Suite 305

18
16787 Bernardo Center Drive, Ste. 14             San Diego, CA  92128
San Diego, CA  92128                             Phone:  858.485.1569

19
Phone: 858.613.6677

20
    I am readily familiar with the firm's practice of collection and processing correspondence

21
for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on

22
motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than on day after the date of deposit for mailing in affidavit.

23
    I declare that I am employed in the office of a member of the bar of this court whose

24
direction the service was made.

25
    Executed on September 9, 2008, at Los Angeles, California.

26

27
                          Fern Jenkins

28

LA1 6721614.4