# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YVONNE DALTON, et al.,<br><br>          Plaintiffs,<br> v.<br>LEE PUBLICATIONS, INC., et al.,<br><br>          Defendants. | Case No. 08cv1072 BTM (NLS)<br><br>**ORDER RE CROSS-MOTIONS FOR CLASS CERTIFICATION** |

Plaintiffs have filed a Motion for Class Certification [Doc. 42], and Defendant Lee Publications, Inc. has filed a Motion to Deny Class Certification [Doc. 35]. For the following reasons, the Court **GRANTS** Plaintiffs' motion, **DENIES** Defendant's motion, and **CERTIFIES** the class.

## I. BACKGROUND

Lee Publications, doing business as North County Times ("NCT"), operates the *North County Times*, a newspaper of general circulation in the San Diego area. Plaintiffs are current and former home-delivery newspaper carriers for NCT.[1] Their central claim is that

---

[1] The First Amended Complaint defines the class as "[a]ll persons presently and formerly engaged as newspaper home delivery carriers by LEE PUBLICATIONS, INC. and for the North County Times newspaper in the State of California during the period from and

Defendant violated several provisions of the California Labor Code by classifying them as independent contractors instead of employees. As a result of this alleged misclassification, they allegedly suffered damages in the form of unpaid regular and overtime wages, unpaid rest breaks and meal periods, improper deductions from their paychecks, and expenses incurred in discharging their duties, among other things.

**A.     Newspaper Carriers' Tasks**

Plaintiffs deliver the *North County Times* to the homes of subscribers. Each morning, the newspaper carriers arrive at one of several distribution centers in San Diego County. The carriers arrive at different times. Although they generally arrive between 1:00 a.m. and 4:00 a.m., some arrive earlier or later. The arrival time varies depending on the day of the week.

Upon arrival, the carriers are responsible for assembling the newspapers. Some assemble the papers at the distribution center—those that use the distribution center pay a rental fee—and others assemble the papers elsewhere. Assembling the newspapers may involve folding or inserting the following: newspaper inserts, sections, pre-prints, samples, supplements and other products at NCT's direction. The carriers pay for their own rubber bands and plastic bags used to assemble the papers. Some carriers buy the rubber bands and bags from Defendant, and others purchase them elsewhere. The carriers also pay for their own gas and automobile expenses they incur delivering the newspapers.

The carriers are contractually obligated to deliver the assembled newspapers by 6:00 a.m. each weekday and 7:00 a.m. on Saturday and Sunday.

**B.     The Contract**

Each class member has signed a contract with NCT. Since March 2006, the contracts have been price-per-piece agreements, which obligate NCT to pay carriers a price per paper

---

including April 18, 2004, through and including the date of trial set for this action, and who, as a condition of such engagement, signed a written agreement for the home delivery of newspapers, which categorized them as independent contractors and not employees."

delivered. NCT collects payments from the subscribers. Before March 2006, the contracts were buy-sell agreements, under which carriers bought newspapers wholesale and sold them retail. In all other material respects the two types of agreements are similar.

The contracts contain provisions regarding the carriers' primary duties, rate of pay, liabilities, penalties, and expense reimbursement, among other things. All the contracts state that the carrier "is an independent contractor, is not an employee or agent of the Company, and is not subject to the Company's direction or control." And either party may terminate the contract without cause with thirty-days notice, or for cause without notice. The Court examines the contracts in more detail below.

## II. DISCUSSION

A plaintiff seeking class certification bears the burden of establishing that each of the four requirements of Federal Rule of Civil Procedure 23(a), and at least one requirement of Rule 23(b), have been met. *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1176 (9th Cir. 2007). The Court first addresses whether Plaintiffs have satisfied the elements of 23(a).

**A.     Rule 23(a)**

The requirements of Rule 23(a) are that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). These requirements are known as numerosity, commonality, typicality, and adequacy.

    1.    Numerosity

Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, Plaintiffs estimate there are 800 class members. Defendant does not dispute this element, and the Court holds that the class

satisfies the numerosity requirement.

### 2. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality focuses on the relationship of common facts and legal issues among class members." *Dukes*, 509 F.3d at 1177. Rule 23(a)(2) is permissive, and "[a]ll questions of fact and law need not be common to satisfy the rule." *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "[O]ne significant issue common to the class may be sufficient to warrant certification." *Id.*

Here, Defendant does not appear to seriously dispute that Plaintiffs have satisfied the commonality requirement. Indeed, its papers scarcely address the issue.[2] But even if Defendant argued against finding commonality, the Court would disagree. There is "one significant issue common to the class" sufficient to warrant certification. *Id.* And that issue is the one central to this case: whether Defendant improperly characterized Plaintiffs as independent contractors instead of employees. All class members had similar contracts with Defendant, all had similar duties, and all had similar pay structures. *See Murillo v. Pac. Gas & Elec. Co.*, No. 08cv1974, 2010 WL 797009, at * 6 (E.D. Cal. March 5, 2010) (commonality requirement met in overtime wages case where class members subject to the same method of overtime calculation, had similar pay structures, and had substantially similar job duties). These common facts and issues are sufficient to satisfy the permissive commonality requirement.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defense of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical if they are reasonably coextensive

---

[2] Defendant does dispute the Rule 23(b)(3) predominance requirement, which is a more rigorous standard than the permissive commonality requirement. The Court will address this element below.

with those of absent class members; they need not be substantially identical." *Dukes*, 509 F.3d at 1184 (quoting *Hanlon*, 150 F.3d at 1020). "Some degree of individuality is to be expected in all cases, but that specificity does not necessarily defeat typicality." *Id.* (citing *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

Here, the claims of the named plaintiffs are sufficiently typical because they are reasonably coextensive with those of the absent class members. *See Dukes*, 509 F.3d at 1184. The named plaintiffs are part of the class Plaintiffs seek to certify. They performed nearly identical work as the class members. They were all classified as independent contractors, not employees. They have allegedly suffered damages similar to the class members in the form of unpaid wages and improper deductions and expenses, among other things. The named plaintiffs' claims are therefore typical of the class and satisfy the permissive typicality requirement.

Defendant argues the named plaintiffs are not typical in four ways: (1) several named plaintiffs never read their contract, while most others did; (2) named plaintiffs did not negotiate the terms of their contract, while other class members did; (3) several named plaintiffs claim they were subject to direction from Defendant, while other carriers claim they were never supervised; and (4) several named plaintiffs claim they never took a rest break, while others carriers did.

None of these distinctions defeat typicality. Most of Defendant's arguments merely state that "several" of the named plaintiffs differ from other class members. By implication, therefore, the remaining named plaintiffs do not differ from the other class members. But more importantly, these are minor variations and have little bearing on the degree of Defendant's control over the carriers. Typicality is a permissive standard, and only requires that the named plaintiffs claims' are "reasonably coextensive" with those of the class. *Dukes*, 509 F.3d at 1184. It does not focus on "the specific facts from which [the claim] arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Defendant's arguments against typicality are therefore unconvincing.

### 4. Adequacy

Rule 23(a)(4) permits certification of a class only if the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This factor requires "(1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel. *Dukes*, 509 F.3d at 1185 (citing *Hanlon*, 150 F.3d at 1020). Only one of the named plaintiffs must be an adequate representative, *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 n.2 (9th Cir. 2001), and any conflicts must be serious and irreconcilable in order to defeat certification. *Breeden v. Benchmark Lending Group. Inc.*, 229 F.R.D. 623, 629 (N.D. Cal. 2005) (citing *Sosna v. Iowa*, 419 U.S. 393, 403 (1975).

The Court finds that Plaintiffs' counsel are experienced in employment and class action law, and are qualified and competent to serve as class counsel. Defendant does not challenge that finding. Defendant does, however, raise potential conflicts between the class and named plaintiffs. Defendant argues that because several of the class members prefer the freedom of being an independent contractor, those named plaintiffs who are no longer employed by Defendant are not adequate representatives. But merely because some class members do not want to pursue these claims does not mean the class should not be certified. *See Smith v. Cardinal Logistics Management Corp.*, No. 07-2104, 2008 WL 4156364, at *7 (N.D. Cal. September 5, 2008) (certifying class in case involving independent contractor versus employee classification, and not permitting "three current drivers to frustrate the attempt by others to assert rights under California labor law solely because these three are satisfied with their current jobs"). If the Court adopted a rule denying certification because some class members were against pursuing the claims, then certification would likely be impossible for a large number of class action suits. There will always be some class members who are satisfied with the status quo, especially in employment cases. However, classes are routinely certified in the employment context. *E.g., id.* at *1; *Phelps v. 3PD, Inc.*, 261 F.R.D. 548 (D. Or. 2009) (certifying class in suit

involving independent contractor versus employee distinction); *Breeden*, 229 F.R.D. 623 (certifying class only for purpose of determining whether class members were exempt employees).

Here, several of the named plaintiffs are still employed by Defendant, and only one adequate representative is needed. Thus, those named plaintiffs who are still employed by Defendant may represent those class members who are likewise still employed. Furthermore, any class members currently employed may opt out of the class if they wish. The Court therefore finds that the named plaintiffs satisfy the Rule 23(a)(4).

For these reasons, the Court finds that Plaintiffs have satisfied all four Rule 23(a) requirements. The Court now turns to the Rule 23(b) requirements.

**B.    Rule 23(b)**

A plaintiff must satisfy only one of three criteria under Rule 23(b) in order to certify a class. Plaintiffs rely on Rule 23(b)(2) and (3). The Court finds that Plaintiffs do not satisfy Rule 23(b)(2) but do satisfy Rule 23(b)(3).

1.    <u>Rule 23(b)(2) — Acts or Omissions That Apply Generally to the Whole Class</u>

Plaintiff argues that the class should be certified under Rule 23(b)(2). Under this rule, a class action is proper when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). "To fall within this rule, a defendant's conduct must be generally applicable to the class, meaning the defendant has adopted a pattern or policy that is likely to be the same as to all class members." *Domino's Pizza*, 238 F.R.D. at 250 (citing *Baby Neal v. Casey*, 43 F.3d 48, 52, 63-64 (3d Cir.1994)). Moreover, certification under this rule is not appropriate where the "relief requested relates 'exclusively or predominantly to money damages.'" *Nelsen v. King County*, 895 F.2d 1248, 1255 (quoting *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 929 (9th Cir. 1982). In other words, the "claim for monetary damages must be secondary to the primary claim for injunctive or declaratory relief." *Moski v. Gleich*, 318 F.3d

937, 947 (9th Cir. 2003) (citing *Probe v. State Teacher's Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986). In determining whether injunctive relief is the primary claim, a court focuses on the plaintiffs' intent in bringing suit. *Dukes*, 509 F.3d at 1186. The court must be satisfied that "(1) in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits." *Id.* (quoting *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, (2d Cir. 2001).

Here, the majority of the class, as currently defined by Plaintiff, are former carriers. The former carriers, of course, no longer work for Defendant, and the Court cannot grant any injunctive relief on their behalf. *Walsh v. Nev. Dep't of Human Res*, 471 F.3d 1033 (9th Cir. 2006) (recognizing that former employees lack standing to seek injunctive relief because they would not benefit from remedial injunction). So, the majority of the class members can receive money damages only. And with respect to the portion of the class still employed by Defendant, they do seek some injunctive relief. But they also seek money damages. Thus, as the class is currently defined, only a minority of the class members seek injunctive relief, and that minority also seeks money damages. Under these circumstances, the "relief requested relates 'exclusively or predominantly to money damages'" and the Court declines to certify the class under this Rule 23(b)(2). *Nelsen*, 895 F.2d at 1255; *see also Dukes*, 509 F.3d 1168, 1189 (denying certification for entire class of employees and ex-employees under Rule 23(b)(2) because substantial number of class members were ex-employees of defendant and therefore could not receive injunctive relief).

2.   <u>Rule 23(b)(3) — Common Questions Predominate and a Class Action is Superior</u>

Lastly, Plaintiffs seek certification under Rule 23(b)(3). This rule provides that a class action may be certified if

> (3) the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that

> a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>>
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>>
>> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>>
>> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Las Vegas Sands, Inc.*, 244 F.3d at 1162. Thus, the Court analyzes whether there are significant issues in the case that may be resolved with common proof.

All Plaintiffs' claims are premised on the allegation that they are employees of Defendant, not independent contractors. As the Court has said, resolution of their employment status is a central issue in this case. Under California law, there are several criteria courts use to determine whether a worker is an employee or an independent contractor. The Court therefore reviews these criteria to determine which are susceptible to common proof and which are not.

Under California law, the most important aspect of the employee-employer relationship is the "right to control the manner and means of accomplishing the result desired." *Cristler v. Express Messenger Sys., Inc.*, 171 Cal. App. 4th 72, 77 (2009) (citing *Empire Star Mines Co. v. Cal. Employment Comm'n*, 28 Cal. 2d 33, 43–44 (1946), *overruled on other grounds by People v. Sims*, 32 Cal. 3d 468, 479 n.8 (1982)).

Although control is the primary factor, California courts also consider several secondary factors. "Strong evidence in support of an employment relationship is the right to discharge at will, without cause." *Empire Star Mines*, 28 Cal. 2d at 43. Other secondary factors include (1) whether the one performing services is engaged in a distinct occupation; (2) the kind of occupation and whether, in the locality, the work is usually done under the

direction of the principal or by a specialist without supervision; (3) the skill required; (4) whether the principal or the worker supplies the tools and the place of work; (5) the length of time for which the services are to be performed; (6) the method of payment, by time or by job; (7) whether the work is a part of the regular business of the principal; (8) whether the parties believe they are creating an employer-employee relationship; (9) the hiree's degree of investment in his business and whether the hiree holds himself or herself out to be in business with an independent business license; (10) whether the hiree has employees; (11) the hiree's opportunity for profit or loss depending on his or her managerial skill; and (12) whether the service rendered is an integral part of the alleged employer's business. *JKH Enterprises, Inc. v. Dep't of Indus. Relations*, 142 Cal. App. 4th 1046, 1064 n.14 (2006) (citing *S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 350–55 (1989)).[3]

Virtually all of these secondary factors, including whether Defendant has a right to fire at will without cause, are susceptible to common proof. But there are a few which may not be. Factor (5) focuses on who supplies the tools and place of work. Although it appears some carriers purchased supplies from Defendant and used Defendant's distribution center to assemble their newspapers, the contracts give the carriers the discretion to purchase supplies or assemble elsewhere. Thus, the carriers' right to purchase supplies or assemble elsewhere can be established with common proof, but whether they exercised that right can only be proved individually. The same is true of (11). The carriers had the right to hire helpers or substitutes, but not all of them did. Factors (5) and (11) have some elements of common proof and some of individual proof. But the more important element—the degree of Defendant's control or lack thereof—is subject to common proof based on the uniform contracts.

---

[3] The *Borello* case addressed the existence of an employment relationship in the context of workers' compensation, and explicitly developed this standard in light of the protective function of workers' compensation law. 48 Cal. 3d 341, 353–54. Because the Labor Code sections under which Plaintiffs sue are also designed to protect workers' rights, the Court applies the same standard, as other courts have done. *E.g., Chun-Hoon v. McKee Foods Corp.*, No. C-05-620, 2006 WL 3093764, at *2 (N.D. Cal. Oct. 31, 2006).

Other factors may be less susceptible to common proof. Factor (6), the length of the contract, may vary slightly from carrier to carrier, but it appears most of the contracts were for several months to one year. A difference of months is unlikely to have an effect on resolution of the employment issue. Factor (9), whether the parties believe they are creating an employer-employee relationship, may also vary between carriers. But this subjective factor has low probative value, especially given that every other factor focuses on objective proof. Moreover, a party's mistaken belief about the nature of its employment relationship will not defeat a finding of employment.

The primary factor, the right to control, is also susceptible to common proof. This is because the rights and obligations of the class members and Defendant are set forth in two sets of substantially identical contracts. The contracts set forth the following: (a) the carrier's primary duties, including assembling and delivering the newspapers timely and in good condition; (b) the carrier's obligation to supply a vehicle and equipment; (c) the carrier's pay schedule; (d) the purported understanding of the parties regarding the carrier's independent contractor status; (e) the penalties for excessive complaints, misdeliveries, and subscription cancellations; (f) the requirement to get auto insurance in specific liability amounts; (g) which party bears the risk of loss from non-payment, non-delivery, and other liabilities; (h) the contract is unassignable, but the carrier may hire substitutes or helpers; (i) the carrier will not attend employee meetings and is free to ignore all suggestions offered by the Defendant; (j) the manner and rate of compensation; (k) the carrier must use his or her best effort to increase circulation; (l) the parties must exchange updated information regarding subscriber cancellations and enrollments; (m) the duration of the contract; and (n) termination rights, among other things. There is no evidence before the Court that the parties' rights and obligations were substantially different from those set forth in the contracts.

Thus, the contracts sets forth the contours of Defendant's control over the class. The Court makes no findings yet about the extent of Defendant's control, but only observes that the contracts provide a basis to do so.

Moreover, Defendant's supervisors who worked with the carriers can testify regarding

the extent of control they exercised over the class members they worked with. For example, they can testify regarding their training procedures, how they handle complaints, their general interactions with carriers, their degree of control and supervision over the carriers, and their quality control procedures, which allegedly include in-field spot checking.

In short, the class members are all home-delivery newspaper carriers who work, or used to work, for Defendant. They all did the same job. Although there are differences between them, which Defendant lists in detail, whether they are independent contractors or employees is still susceptible to common proof. The Court finds that common questions predominate on this issue. *See Vizcaino v. United States Dist. Ct. for West. Dist. of Wash.*, 173 F.3d 713, 724 (9th Cir. 1999) (Determining whether workers are common-law employees "generally turns on factual variables *within an employer's knowledge*, thus permitting categorical judgments about the 'employee' status of claimants *with similar job descriptions*.") (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 327 (1992); *Phelps v. 3PD, Inc.*, 261 F.R.D. 548, 561 (D. Or. 2009) (certifying class of truck drivers seeking damages arising primarily out of improper classification as independent contractors); *Capital Cities/ABC, Inc. v. Ratcliff*, No. 94cv2448, 1996 WL 507285, at *4 (D. Kan. August 13, 1996) (certifying class of newspaper carriers).

After the parties briefed this motion, Defendant filed a request for judicial notice of a recent decision from the Southern District of New York denying class certification on similar facts. *See Edwards v. Publishers Circulation Fulfillment, Inc.*, No. 09cv4968, 2010 WL 2428083 (S.D.N.Y. June 17, 2010). That decision is not binding authority. Moreover, the court in *Edwards* focused too much on the substantive issue of the defendant's right to control its newspaper deliverers, instead of whether that question could be decided using common proof. *See id.* at *3 ("[T]o prevail on [their] class certification motion . . . they must show, through common proof, that [the defendant] reserved control over the means they used to accomplish those goals.") The Court, as discussed above and based on the record

///

///

1 before it, finds that the question of Defendant's right to control can be resolved using, for the
2 most part, common proof.

3 But whether Plaintiffs are employees is not the only issue in this case. Defendant
4 argues that calculating damages on each of Plaintiffs' causes of action would require
5 individualized proof. Although calculating damages is generally an individualized task, the
6 Court finds that calculating them here would not require so much individualized analysis to
7 defeat certification. That is mainly because Defendant has kept extensive records.

8 Defendant kept the following records on each carrier: (1) their route, (2) their rate per
9 weekly newspaper, (3) their rate per Sunday newspaper, (4) the number of newspapers
10 delivered, (5) their weekly profit, (6) estimated delivery times for daily and Sunday routes,
11 (7) estimated folding times for daily and Sunday newspapers, (8) mileage, and (9) all
12 expenses, fees and charges. With this information, a jury or the Court could calculate
13 damages with reasonable certainty in Plaintiffs' wage, meal break, rest break, expense-
14 compensation, and unlawful withholding of wages claims. The Court therefore agrees with
15 Plaintiffs that the "calculation of the [damages] for each individual [carrier], if necessary, will
16 likely be fairly mechanical." *Phelps*, 261 F.R.D. at 562 (certifying class of truck drivers
17 seeking damages arising primarily out of improper classification as independent contractors).

18 Defendant believes calculating damages on these claims would be difficult.
19 Defendant argues that reimbursement for vehicle and mileage expenses would require a
20 high degree of individualized analysis. But "[t]he amount of damages is invariably an
21 individual question and does not defeat class action treatment." *Blackie v. Barrack*, 524 F.2d
22 891, 905 (9th Cir. 1975). Moreover, Defendant's own mileage estimates and the IRS
23 standard mileage allowance (or some other method) provides a reasonable basis to
24 calculate mileage expenses. *See Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 938–39
25 (9th Cir. 1999) ("The law requires only that some reasonable basis of computation of
26 damages be used, and the damages may be computed even if the result reached is an
27 approximation.") (quoting *GHK Assoc. v. Mayer Group, Inc.*, 224 Cal. App. 3d 856, 873
28 (1990)). Defendant also claims that it should not reimburse Plaintiffs for mileage expenses

which Plaintiffs deducted from their taxes. But that is an issue between Plaintiffs and the IRS, not between Plaintiffs and Defendant. Should Plaintiffs receive compensation for their mileage expenses, they may have to amend their tax returns. That has nothing to do with Defendant.

Defendant claims that the class members' use of helpers will complicate damage awards in the overtime-wages claim. Class members will only be entitled to damages under this claim if they worked on seven consecutive work days. But if they used helpers, they may not have actually worked seven consecutive days. The Court finds that this issue is insufficient to defeat certification, and that the parties can use discovery to determine which class members used helpers or substitutes and how often.

Defendant also focuses on Plaintiffs' sixth cause of action regarding Defendant's alleged failure to give Plaintiffs itemized wage statements. In order to receive damages on this claim, Plaintiffs must show they were injured by Defendant's failure to issue itemized wage statements. *See* Cal. Lab. Code § 226(e). Merely filing the "lawsuit, and the difficulty and expense Plaintiffs have encountered in attempting reconstruct time and pay records, is . . . evidence of the injury suffered as a result of [the] wage statements." *Perez v. Safety-Kleen Systems, Inc.*, No. C 05-5338, 2007 WL 1848037, at *9 (N.D. Cal. June 27, 2007) (quoting *Wang v. Chinese Daily News, Inc.*, 435 F. Supp. 2d 1042 (C.D. Cal. 2006)). Damages for this cause of action, therefore, are also subject to common proof.

Lastly, Defendant argues that its outside-salesperson defense will require individualized analysis. Under California regulations, an outside salesperson is defined as someone "who customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services, or use of facilities." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 938 (9th Cir. 2009) (citing California Industrial Wage Commission Wage Order 4–2001, § 2(M)). The claim that home-delivery newspaper carriers are salesman is dubious on its face. They deliver newspapers; they generally do not sell them. Moreover, because of Defendant's estimates and records—including Plaintiffs' time spent folding

newspapers, whether they used Defendant's facilities to do so, and Plaintiff's time spent delivering newspapers—one could easily calculate whether a particular Plaintiff spent "more than half the working time away from the employer's place of business." *Vinole*, 571 F.3d at 938. So even if the carriers could be considered salespeople, determining where they spent their time would not entail so much individual analysis as to defeat certification.

Having found that common issues predominate over individual ones, the Court moves to the second prong of the Rule 23(b)(3) analysis, which requires finding that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023.

The Court finds that a class action is superior to individually adjudicating each claim. As explained above, common issues predominate and it would be far more efficient to resolve the question of employment status on a class-wide, rather than individual, basis. Moreover, it appears the risk of procedural unfairness to class members is very low because Defendant has records on each of its past and current carriers and they will all likely be identified and notified of this action. They may choose to opt out of the class if they wish and pursue their claims individually. Although Defendant is correct that each class members' claim may be large enough to pursue individually, that does not defeat certification, especially in light of the substantial judicial resources conserved by determining common issues in a single adjudication.

For these reasons, the Court finds that Plaintiffs have satisfied the requirements of Rule 23(b)(3).

### III. CONCLUSION

The Court **GRANTS** Plaintiffs' Motion for Class Certification [Doc. 42] and **DENIES** Defendant's Motion to Deny Class Certification [Doc. 35]. The Court adopts Plaintiffs' class definition and **DEFINES** the class as follows:

All persons presently and formerly engaged as newspaper home delivery

carriers by LEE PUBLICATIONS, INC. and for the North County Times newspaper in the State of California during the period from and including April 18, 2004, through and including the date of trial set for this action, and who, as a condition of such engagement, signed a written agreement for the home delivery of newspapers, which categorized them as independent contractors and not employees.

The class claims shall consist of all Plaintiffs' causes of action listed in the Amended Complaint. And the class defenses shall consist of Defendant's outside-salesperson defense. The class definition, claims, or defenses may be modified upon a proper motion by either party or by court order. The named plaintiffs will serve as the class representatives.

The Court finds that Plaintiffs' counsel C. Keith Greer and Mary E. Kaye meet the requirements of Rule 23(g), and have adequately investigated the class's claims, have adequate experience in handling large class actions, know the applicable law, and have sufficient resources to commit to adjudicating this dispute. They will adequately and fairly represent the interests of the class. The Court therefore **APPOINTS** C. Keith Greer and Mary E. Kaye as class counsel.

The parties shall work with Magistrate Judge Nita L. Stormes to give notice to class members under Rule 23(c)(2)(B).

**IT IS SO ORDERED.**

DATED: July 27, 2010

*/s/ Barry Ted Moskowitz*

Honorable Barry Ted Moskowitz
United States District Judge