1   C. Keith Greer, SBN: 135537
    LAW OFFICES OF GREER & ASSOCIATES, A.P.C.
2   16787 Bernardo Center Drive, Suite 12
    San Diego, California 92128
3   Ph: (858) 613-6677
    Fax: (858) 613-6680
4   Email: greerkeith@aol.com

5
    Marcy E. Kaye, SBN: 140795
6   11770 Bernardo Plaza Court, Suite 305
    San Diego, CA 92128
7   Ph: (858)485-1569
    Fax: (858)485-0279
8   Email: modelatty@aol.com

9   Attorneys for Plaintiffs

10                  **UNITED STATES DISTRICT COURT**

11                 **SOUTHERN DISTRICT OF CALIFORNIA**

12

13   YVONNE DALTON, DIAN GARZA,            )   Case No.: 08-CV-1072 BTM NLS
     ARMINDA GUZMAN, SHARON HUGHEN,        )
14   ETELVINA SALGADO, HECTOR MIGUEL       )   Hon. Barry Ted Moskowitz
     SALGADO, and REFUGIO SANCHEZ,         )   Dept: 15
15   individually, on behalf of all others similarly )
     situated and on behalf of the general public,   )
16                                         )   **PLAINTIFFS' MEMORANDUM OF**
                        Plaintiffs,        )   **POINTS AND AUTHORITIES IN**
17                                         )   **OPPOSITION TO DEFENDANT'S**
            v.                             )   **MOTION FOR SUMMARY**
18                                         )   **JUDGMENT OR PARTIAL**
     LEE PUBLICATIONS, INC., a Delaware    )   **SUMMARY JUDGMENT AS TO**
19   Corporation, dba NORTH COUNTY TIMES,  )   **PLAINTIFF HECTOR SALGADO**
     and DOES 1 through 50, inclusive,     )
20                                         )
                        Defendants.        )
21                                         )   **Date:        Sept. 24, 2010**
                                           )   **Time:        11:00 a.m.**
22   _____ )   **Courtroom:   15**

23

24

25

26

27

28
     _____
                **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
                                        **Case No. 08-CV-1072 BTM NLS**

# TABLE OF CONTENTS

**Page**

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *iii-v*

INTRODUCTION      . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

PROCEDURAL STATUS AND EFFECT ON THE CLASS . . . . . . . . . . . . . . .  2

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

I.      Nature of Claims and Factual Overview. . . . . . . . . . . . . . . . . . . . . . .  4

II.     Analysis of the Relevant Contracts. . . . . . . . . . . . . . . . . . . . . . . . . .  4

III.    Control Over the Time and Manner of Delivery. . . . . . . . . . . . . . . . . .  5

IV.    Use of Company Facilities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

V.      Newspaper Delivery is an Integral Part of the
        Defendant's Business. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

APPLICABLE LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

I.      Standard for a Motion For Summary Adjudication. . . . . . . . . . . . . . . .  7

II.     Requirements for Establishing Employee Status. . . . . . . . . . . . . . . . . .  9

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

I.      There is Substantial Evidence Supporting Plaintiffs' Contention that
        Defendant's Newspaper Carriers are Employees. . . . . . . . . . . . . . . . . .  10

        A.      Defendant asserts substantial control over its newspaper carriers.. .  10

        B.      "Secondary Factors" also support the contention carriers are
                employees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

II.     The 'Outside SalesPerson" Exemption Does Not Apply.. . . . . . . . . . . . .  18

III.    Minimum Wages Were Not Paid To Plaintiff. . . . . . . . . . . . . . . . . . . . .  20

IV.    Statutes of Limitation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

V.      Meal and Rest Breaks. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

        A.      Meal Breaks Mandated When More than Five Hours Worked. . . .  20

        B.      Rest Breaks On Days Other than Sunday. . . . . . . . . . . . . . . . . . . .  20

        C.      Plaintiff's Was Denied Paid Breaks on Sundays. . . . . . . . . . . . . .  21

VI.    Evidence Supports The Section 3751 Claim. . . . . . . . . . . . . . . . . . . . . . .    21

VII.   Plaintiffs' Penalty Claims are Valid. . . . . . . . . . . . . . . . . . . . . . . . . . . .    21

      A.    Defendant can not Establish a "Good Faith" Defense of Plaintiff's
           Penalty Claims Under Section 226. . . . . . . . . . . . . . . . . . . . . . . . .    21

           1.    Defendant did not act in "good faith". . . . . . . . . . . . . . . . .    21

           2.    Plaintiff was injured by the Section 226 violation. . . . . . . .    24

B.    Defendant does not Establish a "Good Faith" Defense to Plaintiffs' Claim
      for Penalties Under Section 203. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    24

C.    Defendant is Liable for Penalties Under Section 226.3. . . . . . . . . . . . . . .    24

D.    Defendant is Liable for Penalties Under Section 1174.5. . . . . . . . . . . . .    25

VIII.  Evidence Supports The Section 450 Claim. . . . . . . . . . . . . . . . . . . . . . . .    25

CONCLUSION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    25

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**Case No. 08-CV-1072 BTM NLS**

1

# TABLE OF AUTHORITIES

2

## CASES                                                                    PAGE

3

*Air Couriers Int'l v. Employment Development Dept.*,
150 Cal.App.4th 923 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,19,20

4

*Anderson v. Liberty Lobby, Inc.*
   477 U.S. 242 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,9

5

6

*Antelope Valley Press v. Poizner*,
   162 Cal.App.4th 839 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,10,24

7

*Baugh v. Rogers*
   24 Cal.2d 200 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

8

9

*Berger Transfer & Herr v. Heiman*
   75 F.3d 1509 (10th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

10

*Borello, supra*
   48 Cal.3d at 349. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,10,18,19

11

12

*Brock v. Superior Care, Inc.*
   840 F.2d 1054 (2d Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

13

*Brose v Union Tribune Publishing Company*,
   183 Cal.App.3d 1079 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,12,13,14,15,17,19

14

15

*Chun-Hoon v. McKee Foods Corp.,*
   2006 WL 3093764 (N.D. Cal. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

16

*Community Thrift & Loan v. Suchy*
   786 F.2d 900 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

17

18

*County of Santa Clara v. Astra USA, Inc.*
   2010 WL 2724512 (N.D.Cal) at pg. 6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

19

*Curcic v. Nelson Display Company Co.,*
   19 Cal.App.2d 46 (1937). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14,16,18,19

20

21

*Donovan v. Sureway Cleaners*
   656 F.2d 1368, 1370 (9th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

22

*Edwards v. Toys "R" Us*
   527 F. Supp.2d. 1197 (C.D.Cal.2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

23

24

*Empire Star Mines Co. V. Employment Comm'n*
   28 Cal.2d 33(1946). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

25

*Estrada v. FedEx Ground Package System*,
   154 Cal.App.4th 1 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,13,14,15,16,18,19,20

26

27

*-iii-*

28

*Freedom Newspapers, Inc. dba The Register Newspaper v. Workers'*
*Compensation Appeals Board,*
    50 Cal.Comp.Cas 328 (Cal.App.4th Dist. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Gonzalez v. Workers' Comp. Appeals Board*
    46 Cal.App.4th 1584 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,12,18,19

*Grant v. Woods,*
    71 Cal.App.3d 647 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,12,13,14,16,18

*Harris v. Vector Marking Corporation*
    656 F.Supp.2d 1128. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*JKH Enterprises, Inc. v. Dept. of Industrial Relations,*
    142 Cal.App.4th 1046 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,20

*K-mart Corp. V. N.L.R.B.*
    626 F.2d 207 (9th Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*May v. Farrell*
    94 Cal.App.703 (1928). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Mendez v. The Radec Corporation*
    260 F.R.D. 38 45 (W.D.N.Y 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*NLRB v. Friendly Cab Co.,*
    512 F.2d 357. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15,16,17

*Pacific Lumbar Co. v. IAC*
    22 Cal.2d 410 (1943). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Ramirez v. Yosemite Water Co.*
    20 Cal.4th 785 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Reynolds v. Bement*
    36 Cal.4th 1075 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Santa Cruz Transportation, Inc. v. UAIB*
    235 Cal.App.3d 1363 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,19

*S.G. Borello & Sons, Inc. v. Dept. of Industrial Relations*
    48 Cal.2d 411 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,9

*Tieberg v. Unemployment Ins.*
    App. Bd (1970) 2 Cal.3d 943. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Toyota Motor Sales USA, Inc. v. Superior Court*
    220 Cal.App.3d 864 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,14,16,17,19

*Vinole v. Countrywide Home Loans, Inc.*
    571 F.3d 935 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Yellow Cab v. WCAB*
226 Cal.App.3d 1288(1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17,18

### STATE STATUTES

Cal. Labor Code  § 5705(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

Cal. Labor Code  § 3751. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23,24

Cal. Labor Code  § 226.7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**Case No. 08-CV-1072 BTM NLS**

**INTRODUCTION**

Plaintiff, Hector Salgado (hereinafter "Plaintiff"), a newspaper delivery carrier for Defendant Lee Publications, DBA The North County Times (hereinafter "NCT" or "Defendant"), filed this law suit as a class action along with six other of the Defendant's newspaper carriers (hereinafter "the Lead Plaintiffs"), seeking protection from the Defendant's systemic violation of California Labor Laws.  In short, Defendant made Plaintiff and all of its newspaper delivery carriers sign a contract identifying them as "independent contractors" in order to avoid the costs of compliance with state labor laws and making the carriers, *inter alia*, work without paid breaks, paying them less than minimum wages, not paying them overtime on the seventh day of work, not covering their workers' compensation  and unemployment insurance, and illegally forcing the carriers to pay expenses necessary to complete their job which should be paid by the employer.

This case follows a long line of decisions holding that in circumstances such as this, where an integral part of a company's business involves deliveries to customers, the delivery carriers are "employees" and not "independent contractors," regardless of how the relationship is labeled in the operative contract.[1] Moreover, courts have consistently held that newspaper delivery carriers subject to the type of contract used by the Defendant in this case are employees of, and not independent contractors for, the newspaper publishing company.[2]

The parties agree that the test under California law regarding whether a person is an "employee" or an "independent contractor," as enumerated by the California Supreme Court, is whether the principal has the right to control the agent. *See S.G. Borello & Sons, Inc. V. Dept. of*

---

[1] *Estrada v. FedEx Ground Package System*, 154 Cal.App.4th 1 (2007); *Air Couriers Int'l v. Employment Development Dept.*, 150 Cal.App.4th 923 (2007); *JKH Enterprises, Inc. v. Dept. of Industrial Relations*, 142 Cal.App.4th 1046 (2006); *Chun-Hoon v. McKee Foods Corp.*, 2006 WL 3093764 (N.D. Cal. 2006); *Toyota Motor Sales USA, Inc. v. Superior Court*, 220 Cal.App.3d 864 (1990) (pizza delivery driver is employee, not independent contractor).

[2] *Antelope Valley Press v. Poizner*, 162 Cal.App.4th 839 (2008); *Grant v. Woods*, 71 Cal.App.3d 647 (1977); *Brose v. Union Tribune Publishing Company*, 183 Cal.App.3d 1079 (1986); *Gonzalez v. Workers' Comp. Appeals Board*, 46 Cal.App.4th 1584 (1996); *see also Freedom Newspapers, Inc. dba The Register Newspaper v. Workers Compensation' Appeals Board*, 50 Cal.Comp. Cas 328 (Cal.App.4th Dist. 1985).

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**Case No. 08-CV-1072 BTM NLS**

-1-

*Industrial Relations*, 48 Ca.3d 341, 355 (1989). What the parties disagree on is whether the facts presented here are sufficient for the Defendant newspaper publisher to overcome the presumption that its delivery carriers are "employees." *Id.* at 350

## PROCEDURAL STATUS AND EFFECT ON THE CLASS

On July 27, 2010, this Court granted Plaintiff's motion to certify a class of persons presently and formerly engaged as newspaper home delivery carriers of the Defendant newspaper publisher.  On August 10, 2010, Defendant petitioned the Ninth Circuit Courts of Appeal for permission to appeal the class certification order. On September 1, 2010, the Court granted the parties joint application to stay class notice and certain class discovery until the Ninth Circuit issues a decision on the petition.

Defendant's motion for summary judgment was filed and initially scheduled to be heard on May 21, 2010.  On May 14, 2010, the Court granted Plaintiffs' motion to continue the hearing pursuant to Fed. Rule. Civ. Proc. 56(f).  In addition to setting a new hearing date, the Court held that it "will not entertain any subsequent motions for summary judgment on the grounds raised in the present motion." (Ct. Document No. 77 at 2:9-10).[3]      Most of the issues raised in this motion, identified below by the section numbers used in Defendant's supporting memorandum, do apply to the class as a whole and are subject to common proof, including:

I.     Do the subject agreements establish "as a matter of law" that the carriers are "independent contractors"?;

II.    Do the subject agreements establish carriers are exempt "outside salespersons";

IV.   What are the applicable statute of limitations?;[4]

V.C.  Do carriers' meal and rest claims fail because they "control their work days?';

[3] This ruling is consistent with exception to the "rule against one-way intervention," i.e., that if the Defendant seeks a substantive ruling on the merits in advance the class being certified, the ruling may be applied to the entire class. *See Mendez v. The Radec Corporation*, 260 F.R.D. 38 45 (W.D.N.Y. 2009)(*citing, inter alia, Wright v. Schock*, 742 F.2d 541 (9th Cir. 1984). Thus, although the motion is solely directed at a single representative Plaintiff, Hector Salgado, many issues impacting the entire class may be decided.

[4] Plaintiffs stipulate to the limitations periods asserted by the Defendant, and further stipulate that they apply to all Class Members.

VI.     Do carriers' Section 3751 claims fail because Defendant did not provide Workers
        Compensation Insurance?;

VII.A and B. Did Defendant act in "good faith" such that certain penalties are not proper?;

VII.C and D. Did the biweekly invoices Defendant gave carriers comply with Sections
        226.3 and 1174.5?; and

VIII.   Did Defendant "compel or coerce" carriers to pay it for services or supplies?

Portions of the instant motion that are particular to Plaintiff Salgado relate to calculation

of his personal damages, namely:

Section III.     Was Plaintiff paid minimum wages?;

Section V. A.  Did Plaintiff ever work more than five hours and thus qualify for a
        meal break?; and

Section V. B.  Did Plaintiff work more than 3.5 hours Monday through Saturday
        and thus qualify for meal breaks?

Plaintiff, Hector Salgado, admits that he did not work more than five hours on any day, and only

worked more than 3.5 hours on Sundays. Thus, Section V.A and V.B. are not disputed. Plaintiff

does contend that he was not paid minimum wages.[5]

## STATEMENT OF FACTS

I.     **Nature of Claims and Factual Overview**

Plaintiff Salgado is a current newspaper home delivery carrier for the Defendant. He,

along with the Lead Plaintiffs, allege that the uniform contract they all signed improperly

classifies them as "independent contractors," when they should have been classified as

employees.  (First Amended Complaint ("FAC"),  ¶¶1, 7).  Plaintiffs further allege that because

they were improperly classified as "independent contractors," the Defendant illegally denied them

benefits and treatment they were entitled to under California law, including, minimum wages,

overtime pay (particularly on their seventh day of work each week), rest breaks, and meal periods.

In addition, Plaintiff and all the other newspaper home delivery carriers allege they were required

to pay for expenses and costs incurred in discharging their duties, including without limitation,

---

[5] Although the ministerial calculations utilized to determine Plaintiff's damages on this issue will
be substantially similar for all carriers, the actual number derived from such calculations pursuant to this
motion will apply solely to Plaintiff, Hector Salgado.

rubber bands and plastic bags to retain and protect the papers they were delivering and gas and automobile expenses incurred while delivering the newspapers.  A majority of the delivery carriers, including Plaintiff, Hector Salgado, were required to pay a "rental fee" if they chose to fold their papers at the Defendant's distribution facilities.  (Fact No. 36)[6].  These wrongful acts all arise from the Defendant's uniform policy of classifying each of the Plaintiffs, including Hector Salgado and all of the home delivery carriers, as "independent contractors."  (FAC, Section IV. Factual Background, ¶¶ 12-19).

## II.   Analysis of the Relevant Contracts

There is no dispute that all of the newspaper home delivery carriers, including Plaintiffs and members of the proposed class, executed uniform contracts classifying them as "independent contractors."  A copy of Plaintiff, Hector Salgado's operative contract, which is the format utilized since approximately March of 2006, is attached as Exhibit A to Declaration of Attorney C. Keith Greer in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment (hereinafter "Greer Decl.").[7]  It is entitled "Independent Contractor-Distribution Agreement, Home Subscriber Delivery," and purportedly sets forth all of the rights and obligations between the parties.  (Exhibit A, pg. 3, ¶ 14). [8]  The current contract, which by its terms is "not assignable" (*see* Exhibit A, pg. 2, ¶ 10) and terminable without cause (Exhibit A, pg. 3,  ¶ 17), obligates the carrier to "deliver newspapers to each home subscriber, in a safe and dry condition in a timely manner."  (Exhibit A, pg. 3, ¶ 11).  The required time for delivery stated in the agreement is 6:00 a.m. each Monday through Friday, and 7:00 a.m. on Saturday and Sunday. (Exhibit A, pg. 2, ¶12). Other matters addressed in the agreements include: (1) the duration of the

---

[6] References to "Fact No. ___" refer to facts identified in Plaintiff's Statement Of Undisputed Facts in Opposition to Defendant's Motion for Summary Judgment.

[7]  All references to "Exhibits ___" refer to exhibits attached to the Greer Declaration.

[8] Although the older contract is structured as a "buy-sell" agreement, the effect of each agreement is the same, i.e., carriers were designated as "independent contractors," had to pay for all supplies and expenses related to  preparing, protecting and delivering the papers, and had to deliver the papers by a set time.  (*See* Exhibit B, Buy-Sell Agreement).

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**Case No. 08-CV-1072 BTM NLS**

contract, which is for a period of time and not tied to completion of a specific task  ( Exhibit A, pg.3, ¶16); (2) the amount of money the Defendant is required to pay the carrier for each paper and special insert or product bag delivered by the carrier (Exhibit A, pg. 5); (3) the amount of money the carrier will be fined if the Defendant is required to redeliver a paper, which is the same for all carriers, and is currently set at $5.00 for each redelivery (Exhibit A, pg. 5); (4) the requirement that the carrier pay a rental fee of $6.00 if he or she chooses  to prepare their papers at the Defendant's facility loading dock (Exhibit A, pg 5); and (6) the provision that if the carrier receives more than a certain number of complaints per thousand papers delivered, typically 1.5 complaints, the Defendant can immediately terminate the agreement.  (Exhibit A, pg. 3, ¶12).  As discussed below, the Defendant solicits complaints from subscribers by means of a telephone line available to subscribers.

The agreement requires the carriers to pay for all supplies used in performance of their duties (Exhibit A, pg. 1, ¶ 1), which in addition to car expenses, includes plastic bags in which to wrap the papers, which many carriers buy directly from the Defendant.  (See Exemplar of a monthly statement to carrier, Exhibit E, pgs.18-19).

Based on this uniform contract, the home delivery carriers are responsible for picking up papers at the Defendant's facility, folding and preparing them in a manner that will ensure that they are in good condition when delivered, deliver the papers to the Defendant's subscribers before the designated cut off time, and bear all expenses associated with the delivery process. They are not required to collect from subscribers and do not bear any risk of loss if a subscribers does not make a payment.  (Exhibit A, pg. 2, ¶8).

**III.    Control Over the Time and Manner of Delivery**

Plaintiff respectfully submits that the evidence establishes that the Defendant has substantial control over the time and manner of delivery of the newspapers.  As discussed above, the contract requires the papers to be delivered by a specific time and in a "safe and dry condition."  To facilitate this process, when a carrier first accepts a route, the carrier is given what is referred to as a "right/left" list, which identifies all the subscribers on the route in the order that

the prior carrier traveled, with instructions to "turn right" or "turn left" on the next street.  A manager or assistant manager with the company generally rides the route with the new carrier for at least the first time the new carrier travels the route. The right/left list is not a "mandatory" instruction, but is helpful to the carrier in determining the most efficient delivery route.  (*See* Exhibit "G," J. Pingley Depe.26:23-30:12.)

Once the carrier becomes independent, although there is no company representative looking over his or her shoulder in the car, the Defendant maintains control over the delivery process by controlling complaints from the subscribers.  Each day when the carrier picks up his papers, there is a document on top of the bundle (referred to as a "Bundle Top") which identifies specific locations on some subscribers' property where they want the paper delivered.  The Bundle Top also has special instructions regarding when to stop the delivery for vacations, and may list complaints received from the prior day.  (*See* Exhibit "F", Christopher Janes Depo, with discussed Exhibits.)

The Defendant has a dedicated telephone line for subscribers to call in complaints.  The complaints are input into the company's computer system (now known as the "Falcon" system"), and transmitted to the district managers' offices.  All complaints are kept track of, and if a carrier receives more than 1.5 complaints per 1,000 papers delivered, the agreement can be terminated for cause.  If the subscriber demands that a new paper be delivered, the district management checks to see if the carrier is one whom wants to redeliver his own papers, or whether the carrier has consented to the Defendant doing so.  (*See* Exhibit "L", 11/18/09 Mark Henshen Depo.)

The carriers' preference is kept in the computer system. (Exhibit C, pg. 13-15).  If the carrier redelivers his own paper, he does so for no additional compensation, and thus his net hourly rate decreases.  If he chooses to let the Defendant perform the redelivery, he is charged at the contracted rate of $4.00 per paper for all days except Sunday, when he is charged $5.00 per paper.   In addition, if the Defendant redelivers a Sunday "T.V. Guide", there is a $4.00 charge (even though the carrier was only paid $.04 for the delivery).  (*See* Exhibit "H", Marge Pingley Depo. p. 56-59.)

1    In addition to monitoring complaints and levying penalties, the Defendant's management

2    periodically goes into the  field and spot checks to verify both that papers are being delivered, and

3    that advertising inserts are being included and not discarded by the carriers.  The Defendant also

4    sends surveys in the mail to subscribers, seeking feedback on the carriers' performance.  (*See*

5    Exhibit "F:, Christopher Janes Depo., attached Exhibit 6.)

6    It should also be noted that the Defendant determines what time the carrier can start the

7    delivery process, since the carrier can not start his daily route until the newspapers are delivered to

8    the distribution center.  Although they are generally on time, if they are late, the carriers are forced

9    to sit and wait, without additional compensation, until the papers arrive.

10   In short, the Defendant controls when the carrier can start (even though he may be waiting

11   and ready sooner), controls the time the papers must be delivered by, controls how the papers

12   must be assembled, and controls where the papers must be placed on the subscribers' property.

13   **IV.**   **Use of Company Facilities**

14   Plaintiff, Hector Salgado, picks up his papers at the Defendant's distribution centers (per

15   contract).  He is charged a "distribution center fee" of $6.00 per month for using the Defendant's

16   facility.  (Fact No. 36).

17   **V.**   **Newspaper Delivery is an Integral Part of the Defendant's Business**

18   As alleged in the FAC at ¶16,  the delivery of newspapers to home subscribers by the

19   carriers is clearly an integral part of the Defendant's business.  Defendant has not, and will not,

20   dispute this fact.

21                                                    **APPLICABLE LAW**

22   **I.**   **Standards Applicable to a Motion for Summary Adjudication**

23   Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment shall be rendered

24   "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

25   affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

26   party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(C) (emphasis added). An issue

27   of fact is genuine where there is sufficient evidence for a reasonable jury to find for the

28   
**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**Case No. 08-CV-1072 BTM NLS**

1   nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). On summary

2   judgment, evidence must be viewed in the light most favorable to the nonmoving party and all

3   justifiable inferences are to be drawn in the nonmoving party's favor.  *Id.* at 255.

4   **II.      Requirements for Overcoming Presumption of Employee Status**

5          It must be emphasized that a presumption exists that Plaintiff is an employee and

6   Defendant bears the burden to prove that Plaintiff is in fact and by law an independent contractor.

7   *S.G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 350 (party

8   seeking to avoid liability has the burden of proving that persons whose services he retained are

9   independent contractors rather than employees); see also California Labor Code § 5705(a). Thus,

10   Defendant has to not only meet the typical summary judgment standard, but must also overcome

11   the presumption that Plaintiff is an employee.

12          It is undisputed that the seminal case on the distinction between independent contractors

13   and employees is the California Supreme Court decision in *S. G. Borello & Sons, Inc. v.*

14   *Department of Industrial Relations*, 48 Cal.3d 341 (1989).  Under *Borello*, "[t]he principal test of

15   an employment relationship is whether the person to whom service is rendered has the right to

16   control the manner and means of accomplishing the result desired." *Id.* at 350 (emphasis added);

17   see also *Tieberg v. Unemployment Ins. App. Bd. ,* 2 Cal.3d 943, 949-50 (1970).[9]

18          The factors are founded on "common law tradition." *Id.* at 350. "[T]he individual factors

19   cannot be applied mechanically as separate tests; they are intertwined and their weight depends

20   often on particular combinations." *Id.* at 351. It should also be noted that courts have consistently

21   rejected arguments similar to Defendant's claim that, because the Agreement provides that the

22

23          [9] In addition to this "principal" factor, *Borello* noted "secondary indicia" that should be reviewed
24   when determining employee versus independent contractor status. These include: (a) whether the one
     performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with
     reference to whether, in the locality, the work is usually done under the direction of the principal or by
25   a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the
     principal of the worker supplies the instrumentalities, tools, and the place of work for the person doing
26   the work; (e) the length of time for which the services are to be performed; (f) the method of payment,
     whether by the time or by the job; (g) whether or not the work is a part of the regular business of the
27   principal; and (h) whether or not the parties believe they are creating the relationship of
     employer-employee. (Citation omitted.)  *Id.* at 350.

28   **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
     **Case No. 08-CV-1072 BTM NLS**

1  newspaper carriers are "independent contractors" and the carriers purportedly "agreed" to it, the

2  carriers must be  independent contractors. "The label placed by the parties on their relationship is

3  not dispositive, and subterfuges are not countenanced." *Borello*, *supra*, at 349.

4      The factors listed in *Borello* were recently explained in *Antelope Valley Press v. Poizner*

5  (2008) 162 Cal.App.4th 839, in which the court determined that newspaper delivery carriers were

6  employees, rather than independent contractors. In *Antelope Valley*, the carriers were required to

7  sign independent contractor agreements, were required to pass out the papers based on the

8  defendant's instructions, and were paid based upon the number of newspapers they delivered, or

9  what is typically called "piece-rate pay." *Id*. at 843. While the carriers were provided an

10 opportunity to have an attorney review the independent contractor agreements, the terms were

11 nonnegotiable. *Id*. at 845, 847. Furthermore, many of the carriers had separate jobs apart from

12 being a carrier. *Id*. at 846. The independent contractor agreements were for specific terms, could

13 be terminated upon 30 days notice or for cause, and stated that each carrier "has the right to

14 control the manner and means of delivery." *Id*. at 846, 853. The carriers used their own vehicles

15 and other tools in performing their jobs. Id. at 854. Finally, the agreement called for the carriers to

16 be responsible for procuring new business, like the carriers in the case at a bar. *Id*.

17      Under these facts, the court found that nearly all of the factors indicated that the carriers

18 were employees, not independent contractors. *Id*. at 854-857. Indeed, the Court held that the true

19 notion of an independent contractor is someone who is "hired to achieve a specific result that is

20 attainable within a finite time period, such as plumbing work, tax service, or the creation of a

21 work of art for a building's lobby." *Id*. at 855. The court in *Antelope Valley* also emphasized the

22 extreme disparity in the bargaining position of the parties, as the agreements were nonnegotiable

23 and were drafted by sophisticated lawyers. *Id*. at 847.

24      It is also important to note that under California law, "'the determination of employee or

25 independent-contractor status is one of fact if dependent upon the resolution of disputed evidence

26 or inferences . . .'" *Harris v. Vector Marketing Corporation*, 656 F.Supp.2d 1128, 1135 (N.D.Cal.

27 2009)(*quoting Borello, supra,* 48 Cal.3d at 349). Applying Federal law, the Ninth Circuit has

28

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**Case No. 08-CV-1072 BTM NLS**

-9-

1   instructed that:

2           Neither the presence nor the absence of any individual factor is
        determinative. Whether an employer-employee relationship exists depends 'upon the
3       circumstances of the whole activity,' and ultimately, whether, as a matter of
        economic reality, the individuals 'are dependent upon the business to which they
4       render service.

5   *Id.* at 1135-36 (*quoting Donovan v. Sureway Cleaners,* 656 F.2d 1368, 1370 (9th Cir. 1981). The

6   *Vector* Court further noted that:

7           Under federal law, as under state law, 'the existence and degree of each factor
        regarding the status  of a person as an independent contractor or employee is a
8       question of fact while the legal conclusion to be drawn from those facts-whether
        workers are employees or independent contractors is a question of law.' *Berger*
9       *Transfer & Storage v. Central States Pension Fund,* 85 F.3d 1374, 1378 (8th cir.
        1996); *see also Herr v. Heiman,* 75 F.3d 1509, 1513 (10th Cir. 1996)('Whether an
10      individual is an employee or an independent contractor is generally a question of
        fact for the jury to decide. Under the Fair Labor Standards Act, even though the
11      question of whether a worker is an independent contractor or an employee is a
        question of law, the existence and degree of each factor is a question of fact.');
12      *Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1059 (2d Cir. 1988)('The existence
        and degree of each factor is a question of fact while the legal conclusion to be
13      drawn from those facts-whether workers are employees or independent contractors-
        is a question of law'). *Id.* at 1136.

14

15      The following factors and the reasonable inferences raised therefrom, demonstrate that

16  Plaintiff - along with the other newspaper carriers - was indeed an employee of Defendant and not

17  an independent contractor.

                                **ARGUMENT**

18
    **I.    There is Substantial Evidence Supporting Plaintiffs' Contention that Defendant's**
19       **Newspaper Carriers are Employees**.

20      **A.    Defendant asserts substantial control over its newspaper carriers.**

21       Plaintiff's Separate Statement sets forth extensive evidence establishing that Defendant

22  controlled at least 23 aspects of the carriers' work.[10] The California courts cited below have

23

24

25
_____

26      [10] It is important to note that such control need not be "absolute" because "[i]f an employment
    relationship exists, the fact that a certain amount of freedom is allowed or is inherent in the nature of the
27  work involved does not change the character of the relationship, particularly where the employer has
    general supervision and control." *Grant v. Woods* 71 Cal. App. 3d 647, 653 (1977) (emphasis added).

28

1    determined that each of these factors are indicia of employee status.[11]

2          **Fact No. 1:     Carriers' Delivery Areas are Established by Defendant**

3          Establishment of a carrier's route by the company was pointed to in *Gonzalez v. Workers*

4    *Compensation Appeals board*, 46 Cal.App.4th 1584 (1996) as supporting status as an employee:

5    "[F]ollowing routes established by [the company], [the worker] delivered the papers to the

6    customers at a time set by [the company]." (*Id.* at 1588). Here, Defendant established Plaintiff's

7    routes.

8          **Fact No. 2:     Defendant's Managers Had Responsibility to Show Carriers How to
                              Prepare and Deliver the Newspaper Products**

9          Defendant's training of carriers is a factor showing employee status, as established in

10   *Brose v. Union Tribune Publishing Co.*, 183 Cal.App.3d 1079 (1986), where the court pointed to

11   the fact that "it is the district manager's responsibility to teach a carrier a route." (*Id.* at 1084).

12         **Fact No. 3:     Despite the Contract Terms, Plaintiff's Contract is Terminable at Will**

13         As noted by the California Supreme Court in *Baugh v. Rogers*, 24 Cal.2d 200, 206 (1944):

14   "[p]erhaps no single circumstance is more conclusive to show the relationship of an employee

15   than the right of the employer to end the service whenever he sees fit to do so." [Citations

16   omitted]; *see also Empire Star Mines Co. v. Cal. Employment Comm'n*, 28 Cal.2d 33, 43

17   (1946)("Strong evidence in support of an employment relationship is the right to discharge at will,

18   without cause"). Here, because Defendant is "entitled" and has the absolute discretion to

19   terminate the contract if Plaintiff incurs more than 1.5 customer complaints per thousand, and

20   Plaintiff has incurred in excess of this amount, the relationship is terminable at will. *See* Exhibit

21   A, ¶ 12. A reasonable inference to be drawn from the extremely low number allowable

22   complaints needed to trigger Defendant's right to immediately terminate the relationship is that

23   Defendant's desires to have complete control over its carriers while attempting to appear that it

24   does not have such control.

25         **Fact No. 4:     Carrier's Are  Required to Report at Defendant's Warehouse at a
                              Fixed Time Period Each Morning**

26

27   ───────────────
        [11] The numbers below correspond to the "Undisputed Fact" numbers in Plaintiffs'
     Separate Statement which provides evidence of the same conduct here.

28

1      The courts have found that a company's control of workers' hours is a factor showing

2  employee status. "[U]nder the lease Yellow Cab designates the time period when a daily shift

3  begins and ends."  (*Santa Cruz Transportation, Inc. v. UIAB*, 235 Cal.App.3d 1363, 1372 (1991);

4  *May v. Farrell*,  94 Cal.App.703, 709 (1928)(workers were required to report at a fixed hour each

5  morning and attend a daily sales meeting at the office of the company."); *see also  Estrada v.*

6  *FedEx Ground Package System*, 154 Cal.App.4th 1, 12 (2007)(noting indicia of employment

7  where the drivers "must be at the [Company's] terminal at regular times for sorting and

8  packing...."

9          **Fact No. 5:      Carriers are Required to Pick Up Newspapers at Defendant'**
                              **Warehouse**
10
            *Grant v. Woods*, 71 Cal.App. 647, 650 (1977) noted that a factor showing employee status
11
    is "the carriers picked up the papers at [the Company's] garage." *Estrada v. FedEx Ground*
12
    *Package System*, *supra,* also noted indicia of employment where the drivers "must be at the
13
    [Company's] terminal at regular times for sorting and packing...." (*Id.* at 12).
14
           **Fact No. 6:      Carriers Are Required to Maintain Subscriber Lists and Are Required**
15                            **to Return Those Lists to Defendant upon Termination**

16      In *Brose v. Union Tribune*, *supra*, the court noted that the newspaper carrier's agreement

17  had indicia of employee status because it required the carrier "to maintain a list of subscribers

18  which would not be disclosed to others without the Company's consent" as a factor establishing

19  employee status.  (*Id.* at 1083.) *Grant v. Woods*, *supra*, made the same finding: "[The newspaper

20  carriers] were also required to maintain a list of the subscribers on their route . . . and the carriers

21  were required to surrender it and refrain from using it further as such time as they left the job."

22  (*Id.* at 650.)

23          **Fact No. 7:      Customers Were Assigned to Carriers by Defendant**

24      In *Curcic v. Nelson Display Company Co.,*  19 Cal.App.2d 46 (1937) , a window trimmer

25  was found to be an employee, and one of the facts considered by the court was that the workers

26  "received from the company assignments to the particular stores." (*Id.* at. 48.) *Estrada v. FedEx*,

27  *supra*, cited the fact that packages were "assigned to the driver by management" as indicia of

28  ───────────────────────────────────
        **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
        **Case No. 08-CV-1072 BTM NLS**

1   employee status.  (*Id.* at 8.)

2   **Fact No. 8:   Defendant Required Carriers to Deliver Only to Particular Customers at Particular Locations**

3   In *Toyota v. Superior Court*, *supra*, the court found that the company directed its delivery

4   persons regarding "the persons and locations to whom [the product] would be delivered," and this

5   was one of the factors establishing employee status.  (*Id.*at 875.)  In *Grant v. Woods*, *supra*, the

6   court pointed to the company's right to direct the carriers "to start or stop delivering to a particular

7   address" and to the company's requirement that "the papers be delivered only to particular

8   subscribers," as factors showing employee status.  (*Id.* at 650 and 653.)

9   **Fact No. 9:   Defendant Controlled the Number and Type of Products to Be Delivered**

10   In determining that a pizza delivery driver was an employee in *Toyota v. Superior Court*,

11   *supra*, the court looked at the fact that the company "directed and controlled the number, nature

12   and type of pizzas to be delivered." (*Id.* at 875-76) Also, in *Pacific Lumber Co. v. IAC*, 22 Cal.2d

13   410 (1943), the court took note that "the trees which was covered by the contract were designated

14   and marked by the company... and [the worker] had no part in the selection." (*Id.* at 414.)

15   **Fact No. 10:   Carriers Required to Properly Assemble the Newspapers**

16   Company-imposed requirements for assembly of the newspaper have been found to be a

17   factor showing employee status: "[The worker] was required to properly assemble the

18   newspapers..." *(Brose v. Union Tribune Publishing Co.*, 183 Cal.App.3d 1079, 1084 (1986).

19   **Fact No. 11:   Defendant Had Rules About Placement of Newspaper**

20   In *Brose v. Union Tribune Publishing Co.*, *supra*, another factor showing employee status

21   was "the company had a policy concerning the papers' placement... on the porch... the

22   driveway..." (*Id.* at 1084.)

23   **Fact No. 12:   Delivery Area Agreement Obligated Carrier to Deliver Papers in a Manner to Avoid Damage**

24   The Agreement herein requires the carriers "...to deliver newspapers to each home

25   subscriber, in a safe and dry condition in a timely manner. . ."  This language shows control and is

26   similar to the language in the agreement in *Estrada v. FedEx*, *supra*, deemed to be indicative of

27   control over an employee by requiring drivers to "load, handle and transport packages using

28   

---

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**Case No. 08-CV-1072 BTM NLS**

1    methods designed to avoid theft, loss and damage...."  (*Id.* at 6.)

2        **Fact No.13:    Defendant's Managers Monitored the Carriers' Work**

3        Monitoring the workers' performance was cited as a factor for employee status in *NLRB v.*

4    *Friendly Cab Co.*, 512 F.3d 1090, 1095 (9th Cir. 2008): "[The Company] employs a 'road

5    manager' who monitors the drivers' appearance and compliance with [The Company's] policies.'"

6    Likewise, *Estrada v. FedEx*, *supra*, considered the fact that "the drivers and their trucks are

7    subject to inspection every day" as relevant to employee status.  (*Estrada*, 154 Cal.App.4th at 7.)

8        **Fact No. 14:   Defendant Restricted Carriers' Interaction with Customers**

9        In *NLRB v. Friendly Cab Co.*, *supra*, it was noted that "drivers cannot accept calls for

10   service on personal cellular telephones...," and the court found that the Company's documents

11   were aimed at protecting the goodwill existing between the Company and the customers: "In

12   SIDA, our conclusion that the taxi cab drivers were independent contractors was premised largely

13   on the fact that SIDA drivers were able 'to make their own arrangements with clients and to

14   develop their own goodwill." *NLRB*,  512 F.2d at 357-58.

15       **Fact No. 15:   Defendant Made Decision to Reduce or Enlarge the Carriers' Routes**

16       Where the company has the right to split or enlarge the carriers' routes, that constitutes

17   control.  *See Brose v. Union Tribune Publishing Co.*, *supra*, where the court specifically noted

18   that :[the worker] would have to get clearance to enlarge her route." (*Brose*, 183 Cal.App.3d at

19   1084).  In *Estrada* v. *FedEx*, *supra*, 154 Cal.App.4th at 5, the Court similarly found indicia of

20   employment where the company had "the right to reconfigure primary service areas."

21       **Fact No. 16:   Deadline Imposed on Carriers by Defendant to Deliver Newspapers**

22       Delivery deadlines have been found by a number of California courts to be an indicator of

23   employee status.  In *Grant v. Woods*, 71 Cal.App.3d 647 (1977), the court specifically pointed to a

24   delivery deadline clause in the agreement between the company and the newspaper carriers as a

25   factor showing employee status: "They were required to deliver the papers before 6:15 a.m. on

26   weekdays and before 6:30 a.m. on Sunday."  (*Id.* at  650.) *Estrada v. FedEx*, *supra*, also discussed

27   delivery deadlines as proof of employee status: "Drivers... must meet all pick-up and delivery

28

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**Case No. 08-CV-1072 BTM NLS**

-14-

1   times or 'windows' arranged by FedEx's sales representatives and certain customers." (*Estrada*,

2   154 Cal.App.4th at 12.)  Likewise, *Toyota v. Superior Court*, *supra*, noted indicia of employment

3   where the defendant pizza company "directed and controlled" its delivery persons because, among

4   other things, it controlled "the time when such deliveries would take place." (*Id*. at 875.)

5   **Fact No. 17:   Defendant Gave Instructions to Carriers Re: How to Accomplish Their**
    **Work**

6   In *NLRB v. Friendly Cab Co.*, *supra*, the Court discussed a number of company rules

7   resulting in control over the drivers that supported employee status, including "drivers must

8   service all reasonable customer calls from the dispatcher." (*Id*. at 1094.) Instructions to the

9   worker were also a factor considered in *Curcic v. Nelson Display Company Co.,* 19 Cal.App.2d

10  46 (1937), finding employee status where: "[The worker] received from the company...

11  instructions as to the method of making the [window display] installations...." (*Id.* at 48.)

12  **Fact No. 18:   Customer Complaints Came to Defendant and Carrier Was Advised**
    **Later; Complaints Resulted in Fines or Even Termination**

13  In *Grant v. Woods*, *supra,* the Court noted as indicia of employee status: "Subscriber

14  complaints commonly came directly to [the Company] and [the Company] personally responded.

15  Only later did [the Company] notify the carrier.  Excessive complaints warranted a carrier's

16  termination, though in fact, this never occurred." (*Id*. at 650.)  In *Brose v. Union Tribune*, *supra*,

17  the Court also found indicia of employment where customers "usually called the Company if there

18  was a failed delivery." (*Id*. at 1084.)  Similarly, in *Yellow Cab v. WCAB*, 226 Cal.App.3d 1288

19  (1991), the Court noted that employment status was supported by the fact that a worker "could

20  also be terminated based on write-ups or complaints by passengers." (*Id.* at 1298).

21  **Fact No. 19:   If Carriers Violated Defendant's Requirements and Instructions, They**
    **Could Be Fined or Terminated**

22  Another factor considered by *Yellow Cab v. WCAB*, *supra*, as establishing employee status

23  was, if the drivers violated the company's rules, "they could be 'written up.'" (*Id.* at 1298.)  In

24  *NLRB v. Friendly Cab Company*, *supra*, the court found indica of employment where the

25  company "assessed a $50 fine to one driver who disagreed with [a manager]," and that "to ensure

26  the drivers' compliance with [the company's] policies," the company had "the authority to not

27  only warn drivers, but to suspend or terminated these agreements." (*NLRB,* 572 F.2d at 1100.)

28
────────────────────────────────
**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**Case No. 08-CV-1072 BTM NLS**

*Friendly Cab* found that the use of fines by the company was a highly "effective tool" for controlling the drivers: "the evidence reveals that if the taxi cab drivers do not perform their duties in an acceptable manner, Friendly punishes them using the most effective tool available: taking money out of the drivers' income." (*Id.* at. 1100.)

**Fact No. 20:   Defendant Could Immediately Terminate Carriers for Disobedience or Misconduct**

Termination for disobedience is another factor showing employee status: "The real test [of employee status] has been said to be whether the employee was subject to the employer's orders and control and was liable to be discharged for disobedience or misconduct..." *Toyota Motor Sales v. Superior Court*, 220 Cal.App.3d 864, 815 (1990).

**Fact No. 21:   Defendant Had the Right to Terminate Carriers Without Cause on 30 Days' Notice**

In *Brose v. Union Tribune Publishing Co.*, *supra*, the court identified the fact that the worker "could be discharged without cause with 30 days' notice" as indicia of employee status. (183 Cal.App.3d 1079, 1086.)  Defendant's contracts with all carriers in this matter contain the same provision.

**Fact No. 22:   Carriers Are Paid by Piece**. Piecework payment has been held evidence of control supporting employee status: "Productivity was adequately ensured by the piecework payment system." (*Yellow Cab*, 226 Cal.App. at 1297.)  The worker "trimmed windows... at $.90 per window" (*Curcic*, 19 Cal.App.2d at 48); "Diligence and quality control are achieved by the payment system, essentially a variation of the piecework formula familiar to agricultural employment." (*Borello,  supra*, 48 Cal.3d at 357.)

**Fact No. 23:   Carriers Were Required to Notify Defendant About Delivery Issues**

The Agreement required carriers to notify Defendant of "any errors in any subscriber information," and to also notify Defendant if a new subscriber is "not a valid new subscriber." This was a factor considered in *Estrada v. FedEx*, where it was found that the drivers were required to "provide details [to FedEx] about any "unsuccessful deliveries." (*Estrada,* 154 Cal.App.4th at 8.)

**B.   "Secondary Factors" also support the contention carriers are employees**.

1    In addition to the above-described  indicia of Defendant's control of the carriers' work,

2    there are additional "secondary indicia" which also demonstrate that the carriers are employees

3    and not independent contractors.  Below is a brief listing of these items along with the legal

4    authorities that hold they are factors relevant to determining employee status of the carriers.

5         **Fact No. 24:   Customers Billed by Defendant, not by the Carriers**. This fact was

6    found to be indicia of an employment relationship in *Gonzalez v. Workers Compensation Appeals*

7    *Board,* 46 Cal.App.4th 1584 (1996) and *Estrada v. FedEx Ground Package System*, 154

8    Cal.App.4th 1, 7 (2007).

9         **Fact No. 25:   Carrier Paid Whether or not Defendant Collected from Customers.**

10   This  fact was found to be indicia of an employment relationship in *Grant v. Woods*, 71

11   Cal.App.3d 647, 653 (1977).

12        **Fact No. 26:   Customer contacted Defendant for service and Defendant arranged for**

13   **performance of service (delivery of newspapers)**.  This was found to be indicia of an

14   employment relationship in  *Gonzalez v. Workers Compensation Appeals board*, 46 Cal.App.4th

15   1584, 1588 (1996); *Santa Cruz Transportation*, 235 Cal.App.3d 1363, 1376 (1991).

16        **Fact No. 27:   Agreement was fill-in-the-blanks and was provided by Defendant**. This

17   was found to be indicia of an employment relationship in  *Gonzalez v. Workers Compensation*

18   *Appeals board*, 46 Cal.App.4th 1584. 1587 (1996). *See also Borello*, *supra,* 48 Cal.3d at 359

19   (nonnegotiable contract fails to demonstrate "independence" for an independent contractor status).

20        **Fact No. 28:   No special skills needed to deliver newspaper.**  This was found to be

21   indicia of an employment relationship in  *Gonzalez v. Workers Compensation Appeals board*, 46

22   Cal.App.4th 1584, 1592 (1996) and *Estrada v. FedEx Ground Package System*, 154 Cal.App.4th

23   1, 12 (2007).

24        **Fact No. 29:   Defendant retained ownership of newspapers until delivered.** This was

25   found to be indicia of an employment relationship in *Gonzalez v. Workers Compensation Appeals*

26   *board*, 46 Cal.App.4th 1584 (1996) (Gonzalez, supra, 1593);

27        **Fact No. 30:   Defendant determined the price to be charged for the newspaper.** This

28   _____

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**Case No. 08-CV-1072 BTM NLS**

fact was found to be indicia of an employment relationship in *Toyota Motor Sales v. Superior Court*, 220 Cal.App.3d 864, 876 (1990); and in *Curcic v. Nelson Display Co.*, 19 Cal.App.2d 46, 48 (1937);

**Fact No. 31:   Delivery of newspapers is and integral part of Defendant's business.** This  fact was found to be indicia of an employment relationship in  *Borello*, *supra*, 48 Cal.3d at 357; and *Estrada v. FedEx Ground Package System*, 154 Cal.App.4th 1, 9 (2007).

**Fact No. 32:   Carriers bought bags, strings and rubber bands from Defendant.** This fact was found to be indicia of an employment relationship in *Brose v. Union Tribune Publishing Company*, 183 Cal.App.3d 1079, 1084 (1986);

**Fact No. 33:   Carriers were paid biweekly, not by the job.**  This  fact was found to be indicia of an employment relationship in *Estrada v. FedEx Ground Package System*, 154 Cal.App.4th 1, 12 (2007) and in *Air Couriers Int'l v. Employment Development Dept.*, 150 Cal.App.4th 923, 929 (2007).

**Fact No. 34:   Defendant provided tools and instrumentalities for the carriers' work.** This  fact was found to be indicia of an employment relationship in *Air Couriers Int'l v. Employment Development Dept.*, 150 Cal.App.4th 923, 929 (2007).

**Fact No. 35:   Carriers, including Plaintiff Hector Salgado, maintained a working relationship with Defendant for long periods of time**.  This  fact was identified as indicia of an employment relationship in *JKH Enterprises v. Department of Industrial Relations*, (2006) 142 Cal.App.4th, 1046, 1065; *Air Couriers Int'l v. Employment Development Dept.*, 150 Cal.App.4th 923, 938 (2007) ; and *Estrada v. FedEx Ground Package System*, 154 Cal.App.4th 1, 7 (2007).

**Fact No. 36:   The customers serviced by carriers were customers of Defendant, not customers of carriers.**  This  fact was found to be indicia of an employment relationship in *Air Couriers Int'l v. Employment Development Dept.*, 150 Cal.App.4th 923, 931(2007) and *Estrada v. FedEx Ground Package System*, 154 Cal.App.4th 1, 12 (2007).

**II.     THE "OUTSIDE SALESPERSON" EXEMPTION DOES NOT APPLY**

Defendant argues that Plaintiff, Hector Salgado, is an "outside salesperson" and thus

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**Case No. 08-CV-1072 BTM NLS**

-18-

exempt from California Labor Laws. This argument is specious. First, the contracts in question are clearly "delivery contracts," not "sales contracts" (see Exhibit A, entitled "Distribution Agreement-Home Subscriber Delivery," and Exhibit B, "Home Delivery" agreement), which require the carrier to "deliver newspapers to home subscribers of Company's newspapers . . . ." (Exhibit A, pg. 1, ¶2). The agreements in effect since March 2006 specifically states that "title to the newspapers shall not pass to Contractor but shall remain with Company until delivered." (Exhibit A, pg. 2, ¶8). Thus, Plaintiff is merely delivering the Defendant's already sold newspapers to its subscribers. In addition, Plaintiff testified that he has "never contracted with the North County Times for anything other than to provide for delivery of newspapers." (Salgado Transcript, Exhibit D, 166:25-167:3).  Finally, Defendant has not submitted any evidence to establish Plaintiff did anything other than deliver newspapers to its subscribers.

An "exempt" outside salesperson is a person who "customarily and regularly works more than half the working time away from the employer's place of business **selling tangible or intangible items or obtaining orders or contracts for products, services, or use of facilities.**" (Emphasis added.) *Vinole v Countrywide Home Lones, Inc.*, 571 F.3d 935, 938 (9th Cir. 2009).[12] The California Industrial Welfare Commission ("IWC ")[13] has defined outside salesperson as " "any person, 18 years of age or over, who customarily and **regularly works more than half the working time** away from the employer's place of business **selling** tangible or intangible items **or obtaining orders or contracts** for products, services or use of facilities."  (Emphasis added.)

_____

[12] Although common sense and definitions should suffice to resolve this issue, additional guidance can be provided by the Code of Federal Regulations, which specifically addresses the distinction between "delivery" and "sales." 29 CFR 541.504 states in pertinent part: "(a) Drivers who deliver products and also sell such products may qualify as exempt outside sales employees only if the employee has a primary duty of making sales. . . ." Similarly, "Outside salesperson" is defined in 29 C.F.R. § 541.500(1) as one: "(1) Whose "primary duty is: (i) making sales within the meaning of section 3(k) of the Act, or (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and (2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty."

[13] Under California law, the Industrial Welfare Commission is empowered to formulate regulations, known as wage orders, governing employment in California and that the IWC has promulgated a general minimum wage order that applies to all employers and employees, excluding, inter alia, outside salespersons. *Reynolds v. Bement*, 36 Cal.4th 1075, 1084 (2005).

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**Case No. 08-CV-1072 BTM NLS**

-19-

1    *Ramirez v. Yosemite Water Co.*, 20 Cal.4th 785, 795 (1999) (quoting Wage Order No. 7-80, 2(I).)

2    The California Supreme Court has indicated that the state law definition of outside salesperson

3    differs from the federal law definition in that "the federal exemption focuses on defining the

4    employee's 'primary function,' not on how much work time is spent selling." *Id.* at 797.

5         It is clear that under either Federal or State law carriers, including Plaintiff, are not

6    "outside salespersons" since their sole responsibility under the contracts is to deliver Defendant's

7    newspapers to Defendant's home subscribers. The contracts do not require the carriers to solicit

8    new subscribers, and there is simply no evidence here that the Plaintiff spent his work time doing

9    anything other than delivering papers he received from the Defendant to Defendant's subscribers.

10   Thus, the "outside salesperson" exemption is inapplicable.

11   **III.    MINIMUM WAGES WERE NOT PAID TO PLAINTIFF**

12        Defendant's argue that because Plaintiff, Hector Salgado, testified that he receives

13   approximately $1,600 per 28-day cycle, and he works approximately 96 hours per month, he was

14   paid in excess of minimum wage ($1,600 divided by 96 hours = $16.67 per hour). However,

15   Defendants fail to reveal that in the same deposition, Plaintiff explained that he pays over $100

16   per month ($1,296 in 2008) for plastic bags to bundle the newspapers, and drives more than 60

17   miles per day.  (See Salgado Transcript, Exhibit D, pages 219-225 and attached Exhibit 1027). At

18   the 55 cent per mile IRS  reimbursement rate, Defendant pays its employed "assistant mangers"

19   who delivered papers, Plaintiff would be entitled to $33.00 per day, or $924 per 28-day cycle.

20   Deducting expenses of $100 for bags and $924 in mileage results in a net of **$576.00**.  This

21   divided by 96 hours equals $6.00 per hour, well below the $8.00 California minimum wage.  This

22   doesn't take into consideration the fees and penalties he was charged over the year.  Thus, there is

23   a disputed issue of material fact on this cause of action.[14]

24   **IV.    STATUTES OF LIMITATION**

25   _____

26        [14]    In order to defeat this motion Plaintiff is only obligated to show that there is substantial evidence refuting Defendant's contention that at all times it paid Plaintiff minimum wages. By establishing that this was not always the case, Plaintiff has met his burden and this portion of the motion

27   should thus be denied. The proper time for Plaintiff to establish the full extent of his damages will be by his own motion for summary adjudication or at trial.

28

1    Plaintiff concurs with the Defendant's analysis on the statute of limitations under Sections

2  226, 226.3, 1174.5 and 1197.1.

3  **V.    MEAL AND REST BREAKS**

4      **A.    Meal Breaks Mandated When More than Five Hours Worked.**

5    Plaintiff stipulates that he is not seeking wages or damages for working more than five

6  hours per day and not being afforded a meal break.

7      **B.    Rest Breaks on Days other than Sunday.**

8    Plaintiff stipulates that he is not seeking wages or damages for working more than three

9  and one half hours on days other than Sunday and not being allowed a paid rest break. From

10 Monday through Saturday, inclusive, he worked less than 3.5 hours per day.  (Note: Defendant

11 only moves for partial summary adjudication under this statue in that it does not move for

12 summary adjudication on this grounds for Sundays.)

13     **C.    Plaintiff's Was Denied Paid Breaks on Sundays**.

14   Defendant argues that because Plaintiff "controlled his own work day," he could have

15 taken a break, and thus he waived his right to seek damages. However, because Plaintiff was paid

16 "per newspaper delivered," if he took a break his hourly rate would decline (i.e., the amount paid

17 for the day's delivery of papers would be spread over a larger amount of time, and thus the

18 amount paid per hour would be less if a break was taken).  Thus, it was impossible for him to take

19 a "paid rest break" as required under Labor Code section 226.7 and IWC Order No. 2001.

20 **VI.    EVIDENCE SUPPORTS THE SECTION 3751 CLAIM**

21   As identified on Exhibit E, an exemplar of Plaintiff's monthly pay statement from the

22 Defendant, Plaintiff was charged $4.00 per month for Accident insurance. If he were classified as

23 an "employee," the Defendant would have to pay his Workers Compensation costs without

24 deducting from his pay.  Cal. Labor Code §3751.  Thus, a reasonable inference drawn from the

25 undisputed evidence is that Plaintiff was forced to pay for his own insurance to cover him while

26 working, when he should have been classified as an employee and covered under the State

27

28

1  Workers Compensation Program.[15]

2  **VII.    PLAINTIFFS' PENALTY CLAIMS ARE VALID**

3      **A.    Defendant can not Establish a "Good Faith" Defense to Plaintiff's Penalty Claims Under Section 226**

4

5          **1.    Defendant did not act in "good faith."**

6  "Good faith" is commonly defined as "not only honesty in fact, but the observance of

7  reasonable commercial standards of fair dealing," with the meaning of "fair dealing" depending

8  upon the facts in the particular case. *County of Santa Clara v. Astra USA, Inc.,* 2010 WL

9  2724512 (N.D.Cal) at pg. 6. Misconduct that would destroy a party's good faith status would

10  include efforts to "take grossly unfair advantage" of others. *Community Thrift & Loan v. Suchy,*

11  786 F.2d 900, 902 (9th Cir. 1986). "Surface bargaining," i.e., where a party goes through the

12  motions of negotiating without any intent to reach a mutual agreement, has been found to show a

13  lack of good faith. *K-Mart Corp. v. N.L.R.B.*, 626 F.2d 704, 706 (9th Cir. 1980). Lack of good faith

14  is also established when "an insurer takes advantage of a claimant by issuing a small check to a

15  necessitous claimant with a larger claim," *County of Santa Clara,* supra, at 6.

16      The determination of whether a party acted in "good faith" is generally a question of fact.

17  *Edwards v Toys "R" Us*, 527 F.Supp.2d 1197, 1216 fn. 57 (C.D.Cal. 2007). "Absent evidence of

18  specific conduct which constitutes a per se violation of a duty to bargain in good faith, the

19  determination of intent must be founded upon the party's overall conduct and the totality of the

20  circumstances . . . [citations] A determination of good faith or want of good faith normally can

21  rest only on an inference based upon more or less persuasive manifestations of another's state of

22  mind.  The previous relations of the parties, antecedent events explaining behavior at the

23  bargaining table, and the course of negotiation constitute raw facts for reaching such

24  determination."  *Wm Dal Porto & Sons, Inc. v. United Farm Workers of America*, 163

25  Cal.App.3d 541, 550 (1984).

---

26      [15]  Defendant cites *Antelope Valley Press, supra*, 162 Cal.App 4th 839, 842 for the proposition that there is no private right of action for employees to seek reimbursement of money wrongfully taken

27  by an employers in violation of §3751.  Not only does *Antelope Valley Press* not stand for such proposition, the issue isn't even addressed by the court.

28

1       Here, the best evidence establishing Defendant's lack of good faith is the terms of the

2  subject contract, and how the parties "negotiated." As confirmed by Defendant's Circulation

3  Director, Mark Henshen, the Defendant virtually never negotiates the typed "boilerplate"

4  provisions of the contract. (Exhibit I, Henshen Depo. 86:13-87:16 (unable to identify with

5  specificity a single incident of the typed portion being altered)).  The Distribution Agreement

6  confirms that the Defendant was aware that a "state and/or federal agency or court" could

7  determine that its carriers were employees, in that the contract requires the carriers to "indemnify

8  and defend" the Defendant if "any state and/or federal agency or court" determines that the

9  carriers are employees.[16]  Although Defendant transparently assert that "all parts of the contract

10  are negotiable," the Defendant's designated "good faith" witness was not aware of any contract

11  where this clause was removed. (Exhibit I, Henshen Depo. 60:10-61:1). From this provision alone

12  the reasonable inferences can be drawn that Defendant was aware that the parties' relationship

13  could be deemed to be that of "employer-employee," and it used it disparate bargaining position in

14  an effort to "take grossly unfair advantage" of  "necessitous" applicants. *See County of Santa*

15  *Clara, supra,* at 6.

16       Other terms of the contract also establish that Defendant acted in a manner to take "grossly

17  unfair advantage" of the carriers. Paragraph 7 states that "Contractor agrees to indemnify and

18  defend Company and its agents an employees . . . against any such claims or costs, loss or

19  damage, including attorneys' fees and legal expenses in any way connected therewith, ***including***

20  ***any such claims which may arise from Company's own negligence***." (Exhibit A, pg. 2).

21  Defendant interprets the contracts to mean that even if the carriers delivery the papers where they

22  are supposed to, the carrier must redeliver the paper or pay a redelivery fee if someone

23       The contracts also include terms designed to give the appearance of an "independent

24

25       [16] *See* Exhibit A, pg. 2, ¶9: "Contractor shall protect the Company and its agents and employees against any claims, ruling and/or decisions by any state and/or federal agency or court that Company
26  must pay any tax, benefit, and/or penalty of any kind because of a ruling that Contractor or his agents, employees, and/or subcontractors are employees of Company for any reason. Contractor agrees to
27  indemnify and defend the Company . . . against such taxes, benefits, and/or penalties and against costs, loss or damage, including attorney's fees and legal expenses . . ."

28  **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**Case No. 08-CV-1072 BTM NLS**

contractor" relationship, but the language bears no relation to the true underlying facts. By way of example, the following provisions are contained in Exhibit A - Distribution Agreement:

(1) Paragraph one states that the "Contractor is in an independently established business," giving the impression that the carrier established a business first, and then came to the Defendant to solicit business. When in fact the carriers do not generally have any "independent business" and simply contract to delivery Defendant's newspapers (Exhibit I, Henshen Depo. 32:9-36:18); and

(2) Paragraph two states that the carrier agrees to deliver papers "in a negotiated geographic area" when in fact over 80% of the time a specific route is offered to the prospective carrier. (Exhibit I, Henshen Depo. 54:4-14).  A reasonable inference from this provision is that the Defendant was making every effort to give the appearance that these were "negotiated" terms, when in fact they were simply hiring people to deliver specific paper routes.

A review of the contract shows that in virtually every paragraph the Defendant used language that was grossly unfair to the carriers, established the severe disparity in bargaining power and referred to facts or conditions that while giving the appearance of an independent contractor relationship, had no bearing on the true nature of the relationship. This coupled with a finding that the carriers are in fact employees could reasonably establish a lack of good faith. Thus, Defendant's "good faith" defense should be denied.

**2.     Plaintiff was injured by the Section 226 violation**

As stated in *Perez v. Safety-Kleen Systems, Inc.* 2007 WL 1848037, at 9 (N.D.Cal. June 27, 2007), "the difficulty and expense Plaintiffs have encountered in attempting to reconstruct time and pay records, is . . . evidence of the injury suffered as a result of [the] wage statements." Thus, contrary to the Defendant's argument, Plaintiffs have been damaged by the §226 violation

**B.     Defendant does not Establish a "Good Faith" Defense to Plaintiffs' Claim for Penalties Under Section 203**

For the reasons set forth above, the contracts themselves establish an inference of Defendant's lack of good faith, and thus Defendant's affirmative defense must fail. That said, Plaintiff Salgado is not claiming any damages under the waiting-time penalties under §203 .

**C.     Defendant is Liable for Penalties Under Section 226.3**

1       Labor Code section 226(a)  requires employers to provide employees with statements

2   identifying  "total hours worked by the employee," and keep such records on file for three years.

3   Defendant does not submit any evidence showing that it provided such information to its

4   newspaper carriers, including Plaintiff, Hector Salgado, nor that it retained such information.

5   Thus, it is liable for penalties under section 226(e) of $50.00 for the initial pay period in which the

6   violation occurred and $100.00 per employee for each subsequent violation, to a maximum of

7   $4,000.00 per employee.

8       **D.**      **Defendant is Liable for Penalties Under Section 1174.5**

9       Section 1174(d) requires employers to maintain records "showing the hours worked daily

10  by and the wages paid to, and the number of piece-rate units earned."   Defendant does not submit

11  any evidence showing that it kept track of actual hours worked by each carrier. Thus, it is liable

12  for a $500 penalty pursuant to §1174.5. [17]

13  **VIII.   EVIDENCE SUPPORTS THE SECTION 450 CLAIM**

14      As identified on Exhibit E, an exemplar of Plaintiff's pay receipt, he was charged $6.00

15  for a "Distribution Center Charge," i.e., a charge for using Defendant's distribution center to

16  prepare his papers for delivery, and $34.81 for "1 Case of Daily Bags Charge," i.e., plastic bags in

17  which to place the newspapers for delivery. This constitutes a violation of Labor Code section

18  450, which prohibits compelling or coercing employees to purchase anything of value from the

19  employer.

20                      **CONCLUSION**

21      For the reasons set forth above and in the supporting papers filed herewith, Defendant's

22  motion for partial summary judgment should be denied as to all issues that are contested by

23  Plaintiff, and should be granted solely as to the issues to which Plaintiff has stipulated.

24      Respectfully submitted:

25  
26      [17]  Defendant argues that since §1174.5 does not state that the $500 penalty for violating §1174 applies to each employee, an employer is only liable for one penalty, regardless of the number of

27  employees that are injured. This argument is frivolous, since there would be no deterrent effect after the employer violated the statute one time. Moreover, such argument is beyond the scope of this motion since the only issue is whether Defendant must pay Plaintiff Salgado the penalty.

28      **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
                           **Case No. 08-CV-1072 BTM NLS**

1    Dated: September 10, 2010              LAW OFFICES OF GREER & ASSOCIATES.

2                                          By: s/  C. Keith Greer, Esq

3                                              C. Keith Greer, Esq.
                                               Co-Class and Plaintiff's Counsel

4

5                                          LAW OFFICES OF MARCY E. KAYE

6

                                           By:    s/ Marcy E. Kaye, Esq.
7                                                 Marcy E. Kaye, Esq.,
                                                  Co-Class and Plaintiff's Counsel
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**Case No. 08-CV-1072 BTM NLS**