**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

YVONNE DALTON, *individually and on behalf of all others similarly situated*

Plaintiffs,

vs.

LEE PUBLICATIONS, INC.,

Defendant.

CASE NO. 08cv1072-GPC-NLS

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S RENEWED MOTION TO DECERTIFY**

[DKT. NO. 154]

Before the Court is Defendant Lee Publications, Inc.'s renewed motion to decertify the class. (Dkt. No. 154.) Plaintiffs opposed the motion and Defendants submitted a reply to the opposition papers. (Dkt. Nos. 157, 158, 159 and 161.) A hearing was held on the motion on December 7, 2012. After careful consideration of the parties' arguments and applicable law, the Court hereby **GRANTS** in part and **DENIES** in part Defendant's renewed motion to decertify the class.

**PROCEDURAL BACKGROUND**

On August 27, 2008, Plaintiffs filed their first amended complaint which alleged nine causes of action for failure to pay minimum wage, hourly wages and overtime wages (first cause of action); failure to provide meal periods (second cause of action), failure to provide rest breaks (third cause of action); failure to reimburse

business expenses (fourth cause of action); unlawful withholding of wages due (fifth cause of action); failure to provide itemized wage statements (sixth cause of action); failure to keep accurate payroll records (seventh cause of action); waiting time penalties (eighth cause of action); and unfair business practices (ninth cause of action). (Dkt. No. 9.)

On March 12, 2010, Defendants filed a motion for partial summary judgment as to Plaintiff Hector Salgado. (Dkt. No. 53.) On March 22, 2011, the Court granted partial summary judgment in favor of Defendants and against Plaintiff Salgado on the sixth, seventh and eighth causes of action. (Dkt. No. 99 at 10). In addition, the Court granted partial summary judgment in favor of the Defendants as to meal claims and non-Sunday rest period claims. (Id.)

On October 4, 2012, this Court granted Defendant leave to file a renewed motion to decertify the class based on the premise that Plaintiffs were unable to present common evidence at trial under Rule 23(a)(2).[1] (Dkt. No. 150.) At a hearing on the motion to decertify class held on December 7, 2012, the parties stipulated that only four causes of action remain in this class action case: failure to pay minimum wage, hourly wages and overtime wages (first cause of action); failure to provide rest breaks, or compensation in lieu thereof (third cause of action); failure to reimburse reasonable business expenses (fourth cause of action); and unfair business practices (ninth cause of action). (Dkt. No. 9, Amended Complaint; Dkt. No 164, Transcript of Decert. Hearing at 3). Consequently, the Court limits its review of class certification to these four causes of action.

**FACTUAL BACKGROUND**

Lee Publications, doing business as North County Times ("NCT"), is a newspaper of general circulation in the San Diego area. Plaintiffs are former home-delivery newspaper carriers for NCT. Plaintiffs allege, as a group, newspaper

---

[1] Defendant does not contest the other Rule 23(a) prerequisites in the motion to decertify and the Court does not specifically address them herein.

carriers delivering the NCT have been misclassified as "independent contractors," resulting in various violations of the California Labor Code, and causing them to suffer damages in the form of unpaid regular and overtime wages, unpaid rest breaks and meal periods, improper deductions from their paychecks, and expenses incurred in discharging their duties. Defendant denies these claims, maintain that Plaintiffs are properly classified as independent contractors, and are therefore not entitled to the relief sought.

On July 27, 2010, Judge Moskowitz granted certification, under Rule 23(b)(3), of the following class:

> "All persons presently and formerly engaged as newspaper home delivery carriers by LEE PUBLICATIONS, INC., and for the North County Times newspaper in the State of California during the period from and including April 18, 2004, through and including the date of trial set for this action, and who, as a condition of such engagement, signed a written agreement for the home delivery of newspapers, which categorized them as independent contractors and not employees." [Dkt. No. 76 at 15-16.]

In certifying the class, Judge Moskowitz found "there is 'one significant issue common to the class' sufficient to warrant certification. And that issue is the one central to this case: whether Defendant improperly characterized Plaintiffs as independent contractors instead of employees." [2] (Dkt. No. 76, Order Certifying the Class, quoting Dukes v. Wal-Mart, Inc. 509 F.3d 1168, 1176 (9th Cir. 2007)). Judge Moskowitz found the Plaintiffs had satisfied each of the Rule 23(a) elements, including commonality requirement contained in Rule 23(a)(2). (Id. at 4.) Judge Moskowitz cited the common contracts with the Defendant, the similar duties among the carriers, and similar pay structures to find that "these common facts and issues are sufficient to satisfy the permissive commonality requirement." Id. He further conducted a Rule 23(b)(3) analysis, focusing on whether the factors under

---

[2]The Court supports the employee status analysis conducted by Judge Moskowitz in certifying the class. Although the Court analyzes this question for purposes of commonality under Rule 23(a), Judge Moskowitz provides a sound approach to the employee status/independent contractor question for purposes of Rule 23(b)(3) "predominance"test.

California law used to determine whether a worker is an employee or independent contractor were susceptible to common proof. The Court considered the primary factor as to whether or not the defendant had the "right to control the manner and means of accomplishing the result desire." (Id. at 9, quoting Cristler v. Express Messenger Sys., Inc., 171 Cal.App.4th 72, 77 (2009)). He also reviewed the 12 "secondary factors" in the independent contractor/employee analysis. (Id. at 9-12.) Although certain factors were less susceptible to common proof, he ultimately concluded that "common issues predominate and it would be far more efficient to resolve the question of employment status on a classwide, rather than individual basis." (Id. at 15.)

On April 24, 2012, Judge Bencivengo denied Defendant's motion to decertify the class. (Dkt. No. 126.) In the motion to decertify, Defendant argued that discovery failed to show that the class met Federal Rules of Civil Procedure 23(a), "commonality", and (b), "predominance and superiority." Defendant claimed that discovery in the case, as well as the U.S. Supreme Court's post-class certification decision in Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011), showed predominating individualized issues made a class action unmanageable and inferior. Defendant further argued that discovery had been completed, and still Plaintiffs could not provide a common answer to the threshold question of employee status.

Judge Bencivengo found that the Supreme Court decision in *Wal-Mart* did not warrant decertification of the class in this case. She found that Plaintiffs satisfied the *Wal-Mart* commonality prerequisite because there was a significant common issue central to the case: whether Defendant improperly characterized Plaintiffs as independent contractors instead of employees. Judge Bencivengo further found that Plaintiffs provided sufficient evidence through discovery that there were common answers to this question. She refused to revisit Judge Moskowitz' determination on finding the class satisfied Rule 23(b)(3)'s predominance factor, since the Court in *Wal-Mart* did not analyze the predominance

factor, and the Judge was satisfied with the Plaintiffs' representations in briefing that they had methods to prove common issues on a classwide basis.

**LEGAL STANDARD**

"A district court's order respecting class certification is 'inherently tentative' prior to final judgment on the merits." Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 633 (9th Cir.1982); see also Fed. R. Civ. P. 23(c)(1)(C). Thus, if the Court determines that a class was not properly certified it may modify or decertify that class. See Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982). In reviewing whether certification remains proper, the Court again applies the requirements of Federal Rule of Civil Procedure 23. O'Connor v. Boeing N. Am., Inc., 197 F.R.D. 404, 410 (C.D.Cal.2000). The moving party bears the burden of demonstrating that class certification is no longer proper. Gonzales v. Arrow Fin. Servs. LLC, 489 F.Supp.2d 1140, 1153 (S.D.Cal.2007); Slaven v. BP Am., Inc., 190 F.R.D. 649, 651 (C.D.Cal.2000). However, the decision on whether to decertify lies within the Court's sound discretion. Knight v. Kenai Peninsula Borough Sch. Dist., 131 F.3d 807, 816 (9th Cir.1997).

Rule 23 provides district courts with broad authority at various stages in the litigation to revisit class certification determinations and redefine or decertify classes as appropriate. Armstrong v. Davis, 275 F.3d 849, 871 n.28 (9th Cir. 2001), abrogated on other grounds by Johnson v. California, 543 U.S. 499, 504-05 (2005). In deciding this motion, the Court "is bound to take the substantive allegations of the complaint as true." In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig., 691 F.2d 1335, 1342 (9th Cir.1982) (citing Blackie v. Barrack, 524 F.2d 891, 901 n. 17 (9th Cir.1975)). Nonetheless, the Court may "consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case." Hanon v. Dataproducts Corp., 976 F.2d 497, 509 (9th Cir.1992). However, weighing of competing evidence is inappropriate. Wang v. Chinese Daily News, Inc., 231 F.R.D. 602, 605 (C.D.Cal.2005) (citing

Staton v. Boeing Co., 327 F.3d 938, 954 (9th Cir.2003)) (abrogated on other grounds by Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935 (9th Cir.2009).

**DISCUSSION**

The Court's July 27, 2010 order certifying a class focused on the threshold question of whether the class members were employees or independent contractors. The Court reaffirms the finding that the question of employee status may be resolved on a classwide basis. On this central issue, the existence of a uniform contract in addition to other available evidence generates "common answers apt to drive the resolution of the litigation." Wal-Mart, Inc. v. Dukes, 131 S. Ct. 2541, 2550 (2011).

While employee status may be determined on a classwide basis through common proof, the Court concludes that certain causes of action are not amenable to class treatment. Upon review of Plaintiffs' proposed trial plan and applicable law, the Court affirms class certification under Rule 23(c)(4) for the following claims: failure to reimburse for reasonable expenses and unfair business practices. Meanwhile, the Court finds individual issues predominate on questions of liability and damages for the claims of failure to pay overtime wages, failure to pay minimum wage, and failure to provide rest breaks. As such, these claims are decertified.

**1. Employee Status Can Be Resolved on a Classwide Basis**

The threshold issue in this case is whether Defendant improperly classified Plaintiffs as independent contractors. Defendant asserts that commonality is lacking because Plaintiffs lack the capacity to generate common answers. If trial were to proceed, "individualized inquiries would predominate, precluding common answers to the questions that Plaintiffs' claims raise." (Dkt. No. 154 at 1.) Defendant contends there is no ability to generate common answers in one stroke, and that the multiple pronged test to determine whether Plaintiffs were improperly classified as independent contractors yield many different answers. As a result, "a finder of fact

could not analyze these factors and then reach a common answer resolving this issue on a classwide basis." (Id. at 2.)

Plaintiffs respond that the uniform contract and comprehensive records regarding the performance of the carriers work provides sufficient commonality. (Dkt. No. 157 at 9-14.) Plaintiffs dispute the claim that the proposed trial plan demonstrates that individualized issues will predominate and undermine commonality. (Id.) Instead, the evidence to be admitted at trial reflects "how the terms of the contracts translate into the daily practices of the parties adds clarity and definition to the express terms of the contracts by showing how the Defendant asserted its right to control the carriers pursuant to the contracts' terms." (Id. at 3.)

Under California law, "the principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." Tieberg v. Unemployment Ins. App. Bd., 2 Cal. 3d 943, 946 (1970). The secondary indicia are derived from the Restatement Second of Agency. Id. at 949. These additional factors are (a) whether or not the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee. Rest. Agency § 220.

Here, the newspaper carrier contracts and additional information about the carriers' duties provide substantial evidence to determine Defendant's level of control over the carriers. The contract includes terms that dictate how each carrier

should conduct the work, including the time and manner of delivery of the newspapers. The contract also includes (1) the duration of the contract, which is for a period of time; (2) the amount of money the Defendant is required to pay the carrier for each paper; (3) the amount of money the carrier will be fined if the Defendant is required to redeliver a paper;(4) the requirement that the carrier pay a rental fee of $6.00 if he or she chooses to prepare their papers at the Defendant's facility loading dock; and (6) a uniform termination provision. (Dkt. No. 157 at 9; Exhibit A, Contract Agreement.) Under the agreement, the carriers are required to pay for all the supplies used in performance of their duties, including car expenses, plastic bags, and rubber bands. (Id.) Additional evidence indicates Defendant controlled the delivery process by managing complaints from the subscribers. (Dkt. No. 157 at 11-12.) Defendant managed complaints by leaving instructions called "toppers" on the newspaper bundles, which directed the carrier to make changes regarding delivery to a particular location or stop a certain delivery for vacations. (Id.) Further evidence indicating the level of control includes Defendant's practice of monitoring complaints, levying penalties, and conducting "spot checks" to ensure that the papers were delivered on time.(Id.) In addition, Defendant provided the newspapers to the carriers each morning, thereby dictating the time in which Plaintiffs could begin folding and delivering papers.(Id.) This evidence suggests there is significant common proof to show the level of control Defendants had over each carrier and commonality predominates over any questions affecting only individual members. Cf. Estrada v. FedEx Ground Package System, Inc., 154 Cal. App.4th 1, 13-14 (2007)(drivers' claims suitable for class certification based on operating agreement and anecdotal evidence regarding interpretation of agreement). Overall, the Court finds there is significant commonality as to the question of control.

The secondary factors are also sufficiently similar such that common answers may be assessed to determine employee status. Here, the parties vigorously

disagree as to whether the secondary factors raise individualized inquiries. Plaintiffs assert that newspaper delivery is not "distinct" like plumbing or contracting, which require unique skills. Defendant counters that the trier of fact must look to a variety of factors including whether a carrier used subcontractors or worked for other companies at the same time to determine whether the occupation is distinct. (Dkt. No. 154 at 6.) Regarding supervision and skill, Plaintiffs cite to cases that have certified classes of delivery workers despite some variation in work among deliverers. See Toyota Motor Sales, U.S.A. Inc. v. Superior Court, 220 Cal. App. 3d 864 (1990). Defendant points to variances in proof on a number of secondary factors, including the level of supervision and interaction, length of time for which the services were performed, and whether the parties believed that they were creating an employer-employee relationship. Defendant asserts that these variances require individualized inquiries that predominate over questions that can be decided with common proof. (Dkt. No. 154 at 15-17.)

The slight differences among the experiences of each carrier are insufficient to defeat certification on the question of employee status. The Court underscores the approach taken by the California Appellate Court in Ayala v. Antelope Valley Newspapers, which held that the independent contractor-employee issue may be determined on a classwide basis. In assessing whether individualized variations precluded commonality on the question of employee status, the Court stated:

> Those variations do not present individual issues that preclude class certification. Instead, because all of the carriers perform the same job under virtually identical contracts, those variations simply constitute common evidence that tends to show Defendant's lack of control over certain aspects of the carriers' work. Similarly, the so-called "secondary factors" that must be considered when determining the primary issue in this case—whether Defendant improperly classified the carriers as independent contractors rather than employees—also may be established for the most part through common proof, since almost all of those factors relate to the type of work involved, which is common to the class. Ayala v. Antelope Valley

> Newspapers, Inc., 210 Cal. App. 4th 77 (2012) review granted and opinion superseded sub nom. Ayala v. Antelope Valley Newspapers, 292 P.3d 181 (Cal. 2013).

Likewise, even assuming that some of the secondary factors in this case result in individualized inquiries, common questions and answers drive the thrust of the employee status analysis.

Thus, the Court finds the multiple-pronged analysis to determine employee status on a classwide basis satisfies Rule 23(a)(2) in which "commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" Wal-Mart at 2551, quoting Falcon, 457 U.S. at 157. Id. As such, commonality depends on "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." Id. The Court finds the carriers have allegedly suffered the same injury of mis-classification as independent contractors. As detailed above, Plaintiffs have sufficiently proven they can demonstrate this issue on a classwide basis. The common evidence available would allow a jury to determine the threshold issue of employment status on a classwide basis. This evidence includes: 1) the four corners of the employment contract; 2) information regarding Defendant's control over the carriers; and 3) substantial, although not precisely uniform, evidence on each of the secondary factors. When reviewed in totality, the Court finds that there is sufficient commonality on this issue to satisfy Rule 23(a)(2) and Rule 23(b)(4).

**2. Individual Causes of Action**

Plaintiffs contest the need for common proof to prove liability on each claim and contend the issue of liability is limited to whether the carriers are employees or independent contractors. Plaintiffs claim that if the jury determines they are employees, the Defendant is therefore liable for damages for each claim as set forth in the California Labor Code. (Dkt. No. 157 at 18.) Plaintiffs assert that they will submit claims for damages individually incurred as part of the second phase of the trial and rely on extensive data maintained by the Defendant to calculate damages during the

post-judgement claims process.

As a legal matter, Plaintiffs are incorrect in claiming that liability ends upon determination of employee status. Under Rule 23(b) a class action may be certified if the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. As articulated by the California Supreme Court in assessing predominance, trial courts must "determine whether the elements necessary to establish liability are susceptible of common proof or, if not, whether there are ways to manage effectively proof of any elements that may require individualized evidence." Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004, 1024 (2012)(internal citation omitted).

Defendant contends that no method of common proof exists to allow classwide resolution on liability or damages for the remaining claims. Defendant points to Plaintiffs' proposed trial plan which relies on a wide range of individualized experiences to support their claims. (Dkt. No. 154 at 3-4.) Defendant contends that the pretrial documents indicate Plaintiffs will rely on experiences of individual class members, rather than classwide evidence. Given that individual evidence at trial is inevitable, Defendant asserts that individual issues, not common ones, will predominate. As required by Rule 23(c)(4), the Court will review the factual elements of the remaining claims and proposed proof to determine eligibility for class treatment.

**A. Overtime Hour Claims**

A cause of action under §1194 for overtime wages has the following elements: (1) plaintiff performed work for defendant; (2) plaintiff worked overtime hours; (3) plaintiff was paid less than the overtime rate for some or all of the overtime hours worked; and (4) the amount of overtime owed. Labor Code §11010(3)(A)(1) (overtime pay required for "[e]mployment beyond eight (8) hours in any work day or more than six (6) days in any workweek").

To prove this claim, Plaintiffs must show they either worked more than eight

hours in one day or worked seven consecutive days. Plaintiffs do not claim any carrier worked more than eight hours per day pursuant to their contract with the Defendant. As to the seventh day overtime, the Plaintiffs rely on the contract which required delivery of newspapers every day of the work week. The contract states, in relevant part:

> Contractor agrees to meet the following minimum performance results standards: A reasonable level of customer satisfaction will mean, as set forth herein and reasonably requested by the subscriber, delivery of a dry readable newspaper, with all attachments or inserts provided by Company, of each subscriber no later than ___ A.M. each Monday thru Friday, and no later than ___ A.M. each Saturday and Sunday. (Dkt. No. 154, Ex. 70, North County Time Independent Contract Agreement, Provision 12, "Standards of Performance.")

According to Plaintiffs' counsel, "We will show that the carrier had a common policy of not paying overtime. We know they didn't pay overtime...They were aware these contracts, [obligated the signatory] to work [sic] seven days a week, and they weren't paying them overtime." (Decert. Hrg. Trans. at 16.)

While acknowledging the Plaintiffs were required to deliver newspapers seven days per week, Defendant points to the fact that many carriers did not work seven consecutive days as a result of the contractual right to hire employees to deliver newspapers. One such provision states:

> Contractor has the right to hire employees of his choosing and to contract with others to fulfill Contractor's obligations under this contract. Contractor shall have the right to engage in any other business, including the delivery of other newspapers. Contractor understands and agrees that it is his/her obligation to effect delivery of the newspaper each day it is published. (Id. at Provision 1, "Independent Contractor Status.")

Together, these contract provisions indicate that while the carrier is obligated to deliver papers in a certain condition seven days a week or each day the newspaper is published, the carrier may also assign that duty to another individual.

It is undisputed that class members used substitutes and/or helpers to perform their obligations under the contract. Indeed, the record confirms that many distributors

utilized substitutes and Plaintiffs themselves confirm that they used substitutes or helpers to perform their work. (Dkt. No. 154, Statement of Facts at 11-12.)[3] Given that an undetermined number of class members have employed substitutes to perform duties, the Court finds that the contract alone fails to show the carrier worked more than six days a week to be entitled to overtime pay. Therefore, Plaintiffs must show additional evidence to prove the element that Plaintiffs worked more than six days a week. Plaintiffs fall short of providing any further evidentiary support for this claim and the proposed trial plan also fails to propose proof of this essential element during the liability phase of the trial.

In assessing wage and hour violations on a classwide basis, the California Appellate Court has observed that liability is beyond a mere calculation issue, and has denied class certification where "each class member would be required to litigate 'substantial and numerous factually unique questions to determine his or her individual right to recover.'" Wilens v. TD Waterhouse Group, Inc., 120 Cal. App. 4th 746, 756 (2003), quoting Acree v. General Motors Acceptance Corporation 92 Cal.App.4th 385, 397 (2001). Here, absent common proof to determine which carriers worked seven consecutive days, there is the likelihood of individually litigating factually unique questions to determine a right to recover for seventh day overtime.

As an additional matter, Defendant's right to offer a defense magnifies the potential for individualized inquiries at the liability phase of the trial. As held by the Supreme Court, the defendant has the "right to raise any individual affirmative defenses it may have," and is "entitle[d] to litigate its statutory defenses to individual claims."

---

[3] See Statement of Facts, Section V. "Outsourcing of the Independent Contractor Work – Substitutes." (NCT and Distributor Declarations: Henschen Declaration ¶ 18 (identifying numerous distributors who use substitutes and helpers); Kintz Decl. ¶ 17 (identifying several distributors that use substitutes); Arroyo Decl. ¶ 21 (identifying several distributors that use substitutes); Thomas Decl. ¶ 10 (has used substitutes about 4 times); Tyler Decl. ¶ 18 (has never used a substitute); Valencia Decl. ¶ 13 (occasionally uses substitutes). See also Named Plaintiffs' Depositions: Gonzalez Dep. 35:15-20 (brother has substituted for her; Garza Dep. 65:20-3 (rarely uses substitute); E. Salgado Dep. 14:9-12 (husband substitutes on one of her routes every day); Dalton Dep. 79:15-20 (daughter substituted for her on Tuesdays); Sanchez Dep. 46:3-6 (has used wife as substitute); Hughen Dep. 84:9, 111:4-7 (mother has substituted for her about 70 times))

Wal-Mart, 131 S. Ct. 2561 (internal citation omitted). Although the Supreme Court was dealing with a class action that proposed "trial by formula," the same substantive obstacle of providing reliable information exists in this case. Plaintiffs cannot prove the number of days worked as a result of the substitute and helper issue. As such, individualized inquiries and determinations must be made to ascertain each carrier's eligibility to the claims. See also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 192 (3d Cir. 2001) (vacating certification in part because "defendants have the right to raise individual defenses against each class member").

The issue of substitutes and helpers also creates individualized issues to determine damages. Plaintiffs intend to rely on the Henschen spreadsheets to prove monies owed for unpaid overtime, rest breaks and minimum wage violations. (Plaintiffs' Proposed Trial Plan, Dkt. No. 138 at 5). There is no dispute that the Henschen spreadsheets do not reflect the use of helpers or substitutes. As such, the Plaintiff's method of proof does not even try to identify the occasions when substitutes were used. Without more, the Plaintiffs' methodology is inaccurate and over inclusive thereby requiring individualized damage inquiries.

Upon review of these issues, the Court finds that Plaintiffs have failed to provide common, reliable proof needed to establish liability for the overtime claims. As such, individualized issues of fact predominate, thereby making class action treatment an inferior method to adjudicate these claims. Accordingly, the Court vacates class certification as to all of Plaintiffs' overtime claims.

**B. Minimum Wage Claim**

A cause of action under Labor Code §1194 seeking the minimum wage requires a plaintiff to prove (1) plaintiff performed work for defendant; (2) plaintiff was paid less than the minimum wage by defendant for some or all hours worked; and (3) the

amount of wages owed.[4]

A §1194 minimum wage claim requires proof of the total amount of earnings and hours worked during a payroll period. As to hours worked, Plaintiffs rely on "Henschen spreadsheets," newspaper delivery data collected by the Defendant, to prove hours and days worked by each carrier. To create the "Henschen spreadsheets," Plaintiffs explain the "carriers provided [Defendant] the mileage of their routes as well as the length of time it took to complete the route. [Defendant] also compiled these detailed statistics by having employees drive the routes to determine mileage as well as record the time it took to complete the routes." (Dkt. No. 157 at 19-20.) Each carrier then received a pay stub detailing their pay, per piece rate and draw of newspapers. (Id. at 20.) With respect to the total amount of earnings, Plaintiffs cite payment statements and expense calculations that rely on profit statements, deductions and mileage data.

Defendant asserts that the spreadsheet data does not reflect actual miles traveled, hours worked, or use of substitutes or helpers. Indeed, the manager who developed these spreadsheets explained that "estimations of newspaper assembly time, distribution time and mileage associated with each route were added...for the purpose of having some information from which to draw in terms of estimating expenses and resources." (Dkt. No. 154, Ex. 50, Decl. of M. Henschen, dated Aug. 31, 2012 ¶8). Mr. Henschen states that this information was never "independently verified" nor did the company "measure, collect, or keep track of actual hours worked or actual mileage driven by [carrier contractors]." (Id. at ¶10.) Defendant further argues that the spreadsheet data does not account for the use of substitutes or helpers, and erroneously leads to the assumption that the class members actually delivered the routes themselves. (Dkt. No. 154 at 19.)

Ultimately, the minimum wage claim fails for the same reasons as the overtime

---

[4] Under California law, Plaintiffs must show the number of hours or days worked Cal.Code Regs., tit. 8 § 11010 4(B)("Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period").

claim. Plaintiffs cannot provide common, reliable proof that the carrier - not a substitute or helper - performed the work; this an essential element to determine liability. Thus, individualized inquiries as to whether the Plaintiffs actually performed the work would predominate during the liability phase of the trial. For these reasons, the Court finds this claim is not amenable for class action treatment and the Court decertifies the class on the minimum wage claim.

**C. Rest Break Claims**

To prove liability for a denial of rest breaks, a plaintiff must prove (1) defendant employed plaintiff; (2) plaintiff worked for at least 3 ½ hours; and (3) plaintiff was not provided with a rest break of not less than 10 minutes. If an employer fails to provide an employee a rest period, an employee is entitled to one hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided. Labor Code § 226.7; 8 Cal.Code.Regs. § 11010(12)(A-B)("a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours").

Plaintiffs are unable to offer common proof to establish liability of this claim. Again, Plaintiffs rely on the Henschen spreadsheets for common proof to establish liability. A review of the spreadsheets discloses a wide variation in the number of hours worked by the carriers. The spreadsheets indicate a large percentage of carriers do not work 3 ½ hours per day from Monday through Saturday, while another large percentage work slightly more than 3 ½ hours on those days.[5] Given these differences, individual inquiries for a large number of carriers would be required as part of the defense to this claim. In addition, the hourly estimates do not identify the specific day of the week when a carrier worked more than 3 ½ hours. These facts lead to the

---

[5] Plaintiffs' counsel acknowledged this conclusion. "If you go down and look at the routes and tally up the total number [on the Henschen spreadsheet], where it shows the carrier identified the route taking at least three and a half hours to complete...it is a fraction of about a third-ish...most take two and half hours, two, 1.5 [hours to complete the route].) (Dkt. No. 164, Transcript of Renewed Motion to Decertify the Class Hearing, hereinafter "Decert. Hrg. Trans.," at 9, 12.)

conclusion that individualized determinations as to work hours will predominate at trial and there is insufficient common proof to establish liability for rest break claims.

Defendant also argues that Plaintiffs lack common proof to show they were denied rest breaks on days they worked more than 3 ½ hours. Class representatives testified that Defendants did not affirmatively deny them an opportunity to take a break. However, Plaintiffs point to the limited window of time to complete delivery as effectively denying carriers a rest break. Cf., Jaimez v. Daiohs USA, Inc., 181 Cal.App.4th 1286 (2010)(carriers unable to take rest breaks due to delivery schedule requirements to complete deliveries within eight hours); Amalgamated Transit Union Local 1309, AFL-CIO v. Laidlaw Transit Services, Inc., 2009 WL 249888, at p.6 (common issue existed whether defendant scheduled bus routes in a manner that deprived workers of opportunity to take rest breaks). Plaintiffs allege they had a limited time frame to pick up, fold and deliver the newspapers on time. (See Dkt. No. 154, Ex. 55, Deposition of Sharon Hughen at 212. "[W]e're required to be in and out of the warehouse [to pick up newspapers] before 4:00 a.m. [and on a weekday, delivery is expected] by 6:00 a.m."). While the Court finds common proof exists to prove denial of rest breaks, there is no such common proof on the issue of hours worked.

After careful consideration of these factors, the Court finds common issues do not predominate to show liability on the rest break claim. Thus, a class action is not superior to other available methods to fairly and efficiently adjudicate this claim. The Court therefore vacates class certification as to Plaintiffs' rest break claims.

**D. Unreimbursed Expenses Claim**

In order to prove a claim for unreimbursed expenses, the plaintiff must show: (1) plaintiff was employed by defendant; (2) plaintiff made expenditures or incurred losses in direct consequence of the discharge of their duties as a newspaper carrier; (3) the expenditures or losses were not reimbursed to plaintiff by defendant. California Labor Code §2802(a) provides in pertinent part: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct

consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful." Wage Order 1-2001, Section 8, provides that: "No employer shall make any deduction from the wage or require any reimbursement from an employee for any cash shortage, breakage, or loss of equipment, unless it can be shown that the shortage, breakage, or loss is caused by a dishonest or willful act, or by the gross negligence of the employee."

For the reasons set out below, the Court finds that common issues predominate to determine liability, and that class action is a superior method to adjudicate the claim for unreasonable business expenses. See cf. Estrada v. FedEx Ground Package System, Inc., 154 Cal.App.4th at 14 (class seeking reimbursement of expenses for drivers was ascertainable and manageable). Plaintiffs allege the carriers are entitled to recover unreimbursed expenditures and losses in relation to their job performance. Plaintiffs allege each carrier was required to provide his or her own vehicle to deliver newspapers and incurred additional expenses for gasoline, maintenance, and insurance. (Amended Complaint at 14-15.) Plaintiffs further allege Defendant made deductions from the carriers' wages for customer complaints, redelivery fees, costs for plastic bags, insurance, and excess or undelivered newspapers. (Id.) Plaintiffs also allege Defendant required carriers to pay distribution center charges when they utilized the warehouse center to fold and bag the newspapers. (Id.) Defendant argues the data Plaintiff offers as evidence fails to prove actual mileage, and all other evidence is faulty and unreliable. (Dkt. No. 154 at 22.)

The Court finds Plaintiffs' proposed evidence is sufficiently common and reliable to show Defendant's liability for unreimbursed expenses. To prove liability, Plaintiffs will offer evidence that the carriers made necessary expenses or incurred losses as a direct result of performing their duties. As previously discussed, the "Henschen spreadsheets" show mileage for each route. Plaintiffs will show gasoline expenditures by using this mileage multiplied by the Internal Revenue Service standard

mileage allowance (or some other permitted method) times the number of days that newspapers were delivered. Plaintiffs will also offer the NCT Carrier Data spreadsheet (different from the Henschen spreadsheet) which reflects the costs Defendant withheld from the carriers earnings for these expenditures. "A review of this spreadsheet show[s] how uniform the charges to all the carriers are, and that over 80% are charged the $6.00 monthly fee for folding and bagging their papers at the facility. In addition, all charges to the carriers for costs that plaintiffs allege are improper are saved electronically and can be manipulated with the defendants two software systems, Vision and Falcon." (Dkt. No. 158, Ex. 1, Declaration of Keith Greer at ¶ 3.) These carrier statements reveal that the Defendant itemized "miscellaneous charges and credits" for each carrier. This miscellaneous section breaks out distribution center charges, dispatch redelivery charges, as well as charges for plastic bags. (Dkt. No. 158, Ex. D "Carrier Statement".)

The Court is satisfied individualized inquires would not be necessary to determine liability for unreimbursed expenses. Unlike the previous claims, the issue of substitutes and helpers does not impede Plaintiffs' ability to show common proof of liability. Based on common evidence, Plaintiffs can show the essential elements of the claim: that the carrier was an employee, incurred necessary expenses to perform his duties, and Defendant deducted those expenses from the carriers' earnings.

Any issues regarding damages are minimal and insufficient to defeat class certification of this claim. As proposed by Plaintiffs, during the damages phase of the trial, testimony from the Defendant's employees can establish that the data "identifies with specificity every deduction taken from class members' pay checks, and that data is easily tabulated electronically to identify the total amount of deductions from each class members' pay during the class period." (Dkt. No. 138 at 5.) To the extent there are questions regarding the mileage for a particular route, Defendant will have the opportunity to cross examine the witnesses who provided this information and call witnesses who calculated a different mileage. Any additional concerns regarding the

reliability of the data can also be presented by the Defendants, but do not necessitate inquiries as to every expenditure by each individual carrier.

Ultimately, the Court is satisfied that the class action claim for unreasonable business expenses is manageable at the liability and damages phases of the trial and that class treatment is superior to individually adjudicating each reimbursement claim.

**E. Unfair Business Practices**

Business and Professions Code §17200 proscribes unlawful, unfair and fraudulent business practices. §17200 "borrows" violations of other laws and treats them as unlawful practices independently actionable under §17200. Farmers Ins. Exchange v. Sup.Ct., 2 Cal.4th 377, 383 (1992). To the extent that the Court has certified the unreimbursed expenses cause of action under Labor Code statutes, the Court finds that a class action may proceed as to this claim for available remedies under §17200.

**CONCLUSION**

Based on the foregoing, the Court hereby **GRANTS** in part and **DENIES** in part Defendant's renewed motion to decertify the class. Accordingly, the Court affirms class designation for the claim of unreimbursed expenses and unfair labor practices. The Court decertifies the following class claims: failure to pay minimum wage, failure to provide rest breaks, and failure to pay overtime wages.

**IT IS SO ORDERED.**

DATED: May 20, 2013

HON. GONZALO P. CURIEL
United States District Judge