1

2

3

4

5

6

7

8

9              UNITED STATES DISTRICT COURT

10            SOUTHERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12 YVONNE DALTON, DIAN GARZA, ARMINDA GUZMAN, SHARON HUGHEN, ETELVINA SALGADO, HECTOR MIGUEL SALGADO, REFUGIO SANCHEZ and LUISA RAMIREZ FLORES, individually and on behalf of all others similarly situated, | Case No. 08-CV-1072 GPC NLS |

YVONNE DALTON, DIAN GARZA,
ARMINDA GUZMAN, SHARON
HUGHEN, ETELVINA SALGADO,
HECTOR MIGUEL SALGADO,
REFUGIO SANCHEZ and LUISA
RAMIREZ FLORES, individually and
on behalf of all others similarly situated,     )

                    Plaintiffs,     )

vs.     )

LEE PUBLICATIONS, INC., a
Delaware Corporation, dba NORTH
COUNTY TIMES, and DOES 1 through
50,     )

                    Defendants.     )

Case No. 08-CV-1072 GPC NLS

**CLASS ACTION**

**ORDER:**

**1) GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**(Dkt. No. 207)**

**2) ORDERING MODIFICATIONS TO PROPOSED CLASS NOTICE**

**3) CONTINUING FINAL APPROVAL HEARING**

        Plaintiffs are individuals who contracted with Defendant Lee Publications, Inc. dba

North County Times ("NCT") to deliver newspapers to home subscribers.  In April 2008,

Plaintiffs filed suit in San Diego County Superior Court, Case No. 37-2008-00053545,

alleging generally that NCT engaged in various violations of the California Labor Code,

applicable Wage Orders, and the California Unfair Competition Law, Bus. & Prof. Code

                                        1

§§ 17200 *et seq.*, based on a liability theory of misclassification of newspaper carriers as independent contractors.  Plaintiffs later filed a First Amended Complaint, the operative Complaint in this Lawsuit, alleging nine causes of action for: failure to pay minimum wage, hourly wages, and overtime wages; failure to provide meal periods; failure to provide rest breaks; failure to reimburse business expenses; unlawful withholding of wages due; failure to provide itemized wage statements; failure to keep accurate payroll records; waiting time penalties; and unfair business practices.  In June 2008, the Lawsuit was removed to this Court, under the Class Action Fairness Act of 2005.  On July 27, 2010, the Court certified the Class under Federal Rule of Civil Procedure Rule 23(b)(3).  On May 20, 2013, the Court granted in part and denied in part NCT's renewed motion to decertify.  (Dkt. No. 166.)  The Court affirmed class certification of Plaintiffs' claims for failure to reimburse for reasonable expenses and unfair business practices; however, the Court found that individual issues predominated on questions of liability and damages on the remainder of Plaintiffs' claims and decertified them.

Presently before the Court is Plaintiffs' Motion for Preliminary Approval of Settlement.  (Dkt. No. 207.)  Pursuant to the Parties' Joint Stipulation of Class Action Settlement (Dkt. No. 207-3 ("Settlement Agreement")), NCT does not oppose this Motion.

## DISCUSSION

Prior to granting approval of a class action settlement, a court (1) assesses whether a class exists and (2) determines whether the proposed settlement is "fundamentally fair, adequate, and reasonable."  Stanton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003) (internal quotations omitted).  Here, the Court has already granted class certification pursuant to Fed. R. Civ. P. 23(b)(3) and thus first turns to examining the fairness of the Settlement Agreement followed by the questions of a claims administrator and class notice.

2

# I.    THE SETTLEMENT

Rule 23(e) requires the Court to determine whether a proposed settlement is "fundamentally fair, adequate and reasonable."   Stanton, 327 F.3d at 959 (internal quotations omitted).   In making this determination, a court may consider: (1) the strength of the plaintiff's case; (2) "the risk, expense, complexity, and likely duration of further litigation"; (3) "the risk of maintaining class action status throughout the trial"; (4) "the amount offered in settlement"; (5) the extent of discovery completed, and the stage of the proceedings; (6) "the experience and views of counsel"; (7) "the presence of a governmental participant"; and (8) "the reaction of the class members to the proposed settlement."   Id.   (internal quotations omitted.)   Moreover, "the settlement may not be the product of collusion among the negotiating parties."   In re Mego Fin Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000).

Because some of these factors cannot be fully assessed until the Court conducts a final fairness hearing, "a full fairness analysis is unnecessary at this stage."   See Alberto v. GMRI, Inc., 252 F.R.D. 652, 665 (E.D. Cal. 2008) (internal quotations omitted).   At the preliminary approval stage, a court need only review the parties' proposed settlement to determine whether it is within the permissible "range of possible approval" and thus, whether the notice to the class and the scheduling of a formal fairness hearing is appropriate.   Id. at 666.

## A.   THE STRENGTH OF PLAINTIFFS' CASE AND THE RISK, EXPENSE, COMPLEXITY AND LIKELY DURATION OF FURTHER LITIGATION, AND THE RISK OF MAINTAINING CLASS ACTION STATUS THROUGHOUT THE TRIAL

Both sides recognize the risks of continuing to litigate this Action.   Class Counsel understands the uncertainties associated with complex, class-action litigation.   In particular, on the threshold issue of Plaintiffs' status, that is, whether they were properly classified as employees or independent contractors,   Class Counsel acknowledges there is

3

risk that if the case were to be tried, it could become apparent that Plaintiffs' status could not be ascertained by common proof, thus threatening to undo the underlying class certification decision.  Likewise, Class Counsel acknowledges that Plaintiffs face a risk that they could be found to be independent contractors, not employees.  Either of those outcomes could eliminate Plaintiffs' claims.  Moreover, beyond the threshold issues, and as detailed in their Motion, although Plaintiffs maintain that their Labor Code claim for unreimbursed expenses includes a claim for at least partial non-payment of mileage expenses, Class Counsel concedes there was some doubt whether the mileage claim remained in the case.  (Dkt. No. 171.)  Class Counsel also acknowledges that there are additional risks, including that the Court might determine Plaintiffs lacked class-wide proof of actual damages, or evidence that NCT's system of enhanced compensation did not adequately reimburse carriers for their mileage expenses.  For instance, the parties strongly disputed the weight to be given to the mileage estimates in what the parties refer to as the Henschen Spreadsheets.  Defendant further asserts that the Henschen Spreadsheets fail to account for carrier's widespread use of substitutes and helpers.  Moreover, there was a further risk that the Court might determine that the IRS Standard Mileage Rates are not the appropriate rate of reimbursement (Dkt. No. 189), thereby precluding Plaintiffs from relying on those rates as the proper common measure of damages.  Such a ruling, Plaintiffs admit, would likely foreclose class treatment on their mileage claim.  All of these arguments were hanging in the balance of multiple motions *in limine* set for hearing on the date settlement was reached.

Conversely, NCT also understands its own risks of litigation, and that trial of this matter would be costly.  NCT has already expended considerable resources on discovery, motion practice, and trial preparation.  Taken together, the costs, the risks to both sides, and delays of continued litigation weigh in favor of preliminary approval of the proposed settlement.

//

## B.  THE EXTENT OF DISCOVERY AND THE STAGE OF THE PROCEEDINGS

After over four years of extensive written and verbal discovery, discovery closed in this case in 2012.  During the period leading up to Plaintiffs' motion for class certification (2008 through 2010), Class Counsel served multiple sets of written discovery.  Class Counsel took the depositions of nearly a dozen witnesses and defended the depositions of seven Plaintiffs.  Plaintiffs obtained more than 400,000 pages of documents, as well as voluminous electronic data regarding Plaintiffs, retained an expert witness who authored an expert report, and defended the expert's deposition. (See Dkt. No. 207-2, Greer Decl. ¶ 3.)

The parties settled the case on the day of argument before this Court of a dozen fully-briefed significant substantive and procedural motions *in limine* and motions to clarify.  (See Dkt. No. 205.) The settlement came following two separate attempts to resolve this matter in 2009 and 2012 before Magistrate Judge Nita Stormes, and less than 30 days prior to the date the case was scheduled for a jury trial scheduled to last 2-3 weeks.

Accordingly, the extent of discovery and stage of the proceedings weigh in favor of preliminary approval.

## C.  EXPERIENCE OF CLASS COUNSEL

Class Counsel have experience prosecuting class actions relating to employment claims, and lead Class Counsel, C. Keith Greer, has handled complex litigation for over twenty years.  Counsel on both sides believe this Settlement is fair and reasonable in light of the uncertainties of continued certification and litigation.  (See Dkt. No. 207-2, Greer Decl. ¶ 11.) Accordingly, this factor weighs in favor of preliminary approval.  See In re Ominvision Techs., Inc., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("The recommendations of plaintiffs' counsel should be given a presumption of

reasonableness." (internal quotations omitted); <u>Ellis v. Naval Air Rework Facility</u>, 87 F.R.D. 15, 18 (N.D. Cal 1980).

### D.  THE AMOUNT OFFERED IN SETTLEMENT

A settlement is not judged against only the amount that might have been recovered had the plaintiff prevailed at trial, nor must the settlement provide 100% of the damages sought to be fair and reasonable.  <u>Linney</u>, 151 F.3d at 1242.  There is a "range of reasonableness" in determining whether to approve settlements, "which recognizes the uncertainties of law and fact in any particular cause and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  <u>Frank v. Eastman Kodak Co.</u>, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting <u>Newman v. Stein</u>, 464 F.2d 689, 693 (2d. Cir. 1972)).  The adequacy of the amount recovered must be judged as "a yielding of absolutes. . . . Naturally, the agreement normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation."  <u>Officers for Justice v. Civil Serv. Comm'n</u>, 688 F.2d 615, 624 (9th Cir. 1982) (internal quotations omitted).  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."  <u>Id.</u> at 628.

Here, Plaintiffs assert a claim for unreimbursed business expenses and a derivative unfair competition law claim.  NCT has agreed to establish a Maximum Settlement Fund in the amount of three million, two-hundred thousand dollars ($3,200,000.00).  A Net Settlement Fund will be made available to Class Members, after deductions are made for attorneys' fees (estimated at $800,000.00), attorneys' costs (estimated at $50,000.00), claims administration (estimated between $30,000.00 and $40,000.00), and service awards to the named Plaintiffs (estimated at $36,000.00), if approved by the Court.  According to Class Counsel, the Maximum Settlement Fund of $3.2 million, less the anticipated deductions is estimated to bring the Net Settlement Fund to $2.27 million.

1    Class Members may file claims against the Net Settlement Fund and it is estimated that

2    they will be eligible to receive payouts that amount to approximately 90% of all

3    deductions recorded on NCT's records during the relevant period.

4
         As explained in the Settlement Agreement, the distribution of Net Settlement

5    Funds to those Class Members who submit timely claims will be determined as follows:

6
                  [NCT] will calculate the total number of points to be assigned
7                 to each Class Member, for purposes of ascertaining that Class
                  Member's fractional share of the Net Settlement Fund.  The
8                 points assigned to each Class Member ("Class Member Points")
                  will be the total dollars (rounded to the nearest dollar) of
9                 deductions that [NCT] made from that Class Member's
                  invoices, during the Class Period, for the following expense
10                items: rental charges, DMV charges, insurance charges,
                  liquidated damages, bond charges, plastic bag charges, and re-
11                delivery fees.  The total of all the Class Member Points so
                  calculated will be the "Total Class Member Points."  The
12                "Individual Claim Value" for a Class Member who timely
                  submits a valid claim will be the Net Settlement Fund, divided
13                by Total Class Member Points, times that Class Member's
                  Points.  By this design, if all Class Members submit claims,
14                then the Net Settlement Fund will be exhausted.

15

16

17
     (Dkt. No. 207-3, Greer Decl. Ex. 2, Settlement Agreement § III.K.1.)
18

19        However, the Settlement Agreement also provides that, in the event that the "value

20   of the total amount of claims timely and validly submitted is less than the Net Settlement

21   Fund, then any unclaimed portion shall not be paid by Defendant. There will be no *cy*

22   *pres* or other distribution of any unclaimed portion of the Net Settlement Fund." (Id.) The

23   Court has some concerns about this provision. The Ninth Circuit has held that it is an

24   indication of self-interest on the part of class counsel when "the parties arrange for fees

25   not awarded to revert to defendants rather than be added to the class fund." In re

26   Bluetooth Headset Products Liab. Litig., 654 F.3d 935, 946-47 (9th Cir. 2011); see also

27   Stokes v. Interline Brands, Inc., No. 12-cv-05527-JD, 2014 WL 3956463 at *5 (N.D. Cal.

28   Aug. 12, 2014). While the presence of a reversion clause is not *per se* unreasonable, *see,*

7

e.g., <u>Navarro v. Servisair</u>, 2010 WL 1729538 *1 (N.D. Cal. April 27, 2010) (granting final approval of a settlement despite retention of a substantial portion of the common fund by the defendant), the Court notes here that the possibility of reversion is an area of particular concern to the Court. As the remaining provisions of the settlement award appear fair, appropriate, and reasonable given the purposes of the California Labor Code and in light of the anticipated risk, expense, and uncertainty of continued litigation, as discussed above, the Court finds the amounts offered in the settlement to be adequate at this stage of the proceedings. The Parties and the Court will be in a position to more accurately calculate the value of the settlement and compare it to the maximum damages recoverable were the Plaintiff class to succeed at trial at the time of the final fairness hearing, after the class participation rate has been ascertained. <u>See Harris v. Vector Marketing Corp.</u>, No. C-08-5198 EMC, 2011 WL 1627973 at *13-14 (N.D. Cal. April 29, 2011) (recognizing that the actual value of the settlement can be more accurately assessed at a final fairness hearing).

## II.     APPOINTING THE CLAIMS ADMINISTRATOR

The Parties propose that the Court appoint Gilardi & Co. as the claims administrator for this Action.  (Settlement Agreement § III.J.)  Gilardi & Co. specializes in providing administrative services for class-action litigation and has experience in administering Labor Code settlements.  Accordingly, the Court **GRANTS** Plaintiffs' motion to appoint Gilardi & Co. as the Claims Administrator.

## III.    CLASS NOTICE

Class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  <u>See Mullane v. Cent. Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950).  Moreover, the class notice must satisfy the content requirements of Rule

23(c)(2)(B), which provides that the notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the proposed notice provides: (1) information on the meaning and nature of the class; (2) the terms and provisions of the proposed settlement; (3) the costs and fees to be paid out of the settlement fund; (4) the procedures and deadlines for submitting claim forms, objections, and/or requests for exclusion; and (5) the date, time and place of the Final Fairness Hearing.  (See Dkt. No. 208 Ex. 1.)

However, the Court has several concerns regarding the proposed notice. First, the proposed notice includes no clear statement of the "definition of the class certified," Fed. R. Civ. P. 23(c)(2)(B)(ii). Second, the proposed notice contains no notification that class members may enter an appearance through an attorney if a class member so desires. Fed. R. Civ. P. 23(c)(2)(B)(iv). Third, by the Court's calculation, the December 19, 2014 date provided as the "[l]ast day for [class members] to submit a Claim Form, objection to the terms of the settlement, including the attorneys' request for attorneys' fees and costs, or opt out of the settlement" does not account for the administrative time needed for NCT to provide the Claims Administrator with addresses or for the Claims Administrator to mail out the notices. (See Dkt. No. 208-1 at 4.) The Court therefore finds the date "December 19, 2014 [60 days after postmark date of Notice]" misleading and likely to lead to confusion. Accordingly, the Court continues the Final Approval Hearing to assure adequate time, as set forth below, and orders Plaintiffs to change the "December 19, 2014" date and the Final Approval Hearing date in the proposed class notice accordingly.

In addition to these substantive concerns, the Court directs Plaintiffs to update the Court's address in the two places listed on the proposed notice to: 221 West Broadway, San Diego, CA 92101. (<u>See</u> Dkt. No. 208-1 at 3.) Plaintiffs' counsel shall modify the proposed notice consistent with the foregoing.

## CONCLUSION & ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. <u>JURISDICTION</u>:  The Court has jurisdiction over the subject matter of the Action and over all settling parties hereto.

2. <u>PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT</u>:  The Court preliminarily finds the Settlement of the Action, on the terms and conditions set forth in the Settlement Agreement, including all exhibits thereto, is in all respects, fundamentally fair, reasonable, adequate, and in the best interests of the Class Members, taking into consideration the benefits to Class Members; the strengths and weaknesses of Plaintiffs' case; the complexity, expense, and probable duration of further litigation; and the risk and delay inherent in possible appeals.  The Court finds that Notice of the settlement should be given to persons in the Class and a full hearing should be held on approval of the settlement.

3. <u>CAFA NOTICE</u>:  NCT shall be responsible for serving the Class Action Fairness Act ("CAFA") notice required by 28 U.S.C. § 1715(b) within ten (10) days of entry of this Order.  NCT may delegate this responsibility to the Claims Administrator as part of the Claims Administrator's responsibilities under the Settlement Agreement.  At least fourteen (14) days prior to the Final Fairness Hearing, NCT shall file a declaration confirming compliance with the CAFA notice requirement.

4. <u>CLASS MEMBERS</u>:  Pursuant to Federal Rule of Civil Procedure 23(b)(3), the Action remains certified as a class action on behalf of the following Class Members:

Case No. 08-CV-1072 GPC NLS

> All individuals who signed written agreements with Defendant to provide newspapers to home delivery subscribers of *The North County Times*, owned by Defendant, Lee Publications, Inc. as publisher of *The North County Times*, during the time period April 17, 2004 through November 1, 2012.

(Settlement Agreement, § II.E.)

### 5. CLASS REPRESENTATIVES AND CLASS COUNSEL APPOINTMENT:

For purposes of the Court considering preliminary approval, the Court continues the appointment of Plaintiffs Yvonne Dalton, Dian Garza, Arminda Guzman, Sharon Hughen, Etelvina Salgado, Hector Miguel Salgado, Refugio Sanchez, and Luisa Ramirez Flores as Class Representatives and LAW OFFICES OF GREER & ASSOCIATES (C. Keith Greer, Esq.) and LAW OFFICES OF MARCY KAYE (Marcy E. Kaye, Esq.) as Class Counsel.

### 6. NOTICE AND CLAIMS PROCESS:

a. FORM OF NOTICE: By no later than Monday, October 20, 2014, Plaintiffs shall electronically file a revised Class Notice which addresses the Court's concerns, as set forth *supra*. In addition, Plaintiffs shall lodge a proposed order approving the same (at efile_curiel@casd.uscourts.gov).

In addition, as set forth in Class Counsel's declaration, the revised Class Notice shall be translated into Spanish by a certified Spanish translator. (See Dkt. No. 207-2, Greer Decl. ¶ 12.)

b. CLAIMS PROCESS: The Court approves the method of Notice as set forth in the Settlement Agreement and the proposed class notice. (Greer Declaration at paragraph 12 and Greer Supplemental Declaration at paragraphs 3 and 4 & Dkt Nos. 207-2, 207-3, 208-1 and 208-2.)

In particular, NCT shall, within fourteen (14) days of this Order, provide the Claims Administrator with the names, most recent known mailing addresses, telephone numbers, and social security numbers of all Class Members, to the extent NCT has such information in its records, in a readable Microsoft Office Excel Spreadsheet.  (Settlement Agreement § III.L.1.)

Within ten (10) days of receipt of information by the Claims Administrator from NCT, the Claims Administrator shall: (1) perform a search based on the National Change of Address Database or other similar services available to correct for any known or identifiable address changes; and (2) mail the Notice to the Class Members via first-class regular U.S. Mail.  (Settlement Agreement § III.L.2.) Class Members will have sixty (60) days from the mailing of the Notice to submit claim forms, requests for exclusion, or objections to the settlement.  (Id.)

In addition, as set forth in the Settlement Agreement and Class Counsel's Declaration, Class Counsel will publish the English abbreviated form of the notice in the North County Times, as well as the Spanish abbreviated form of the notice in Enlace (Spanish language newspaper). (Dkt. No. 207-2, Greer Decl. ¶ 12.)

The Court finds that the methods of Notice set forth in the Settlement Agreement satisfy the requirements of Federal Rule of Civil Procedure 23(c)(2)(B), due process, and constitute the best practicable procedure under the circumstances.

7.  SETTLEMENT AND CLAIMS PROCESS:  The Court preliminarily approves the $3,200,000.00 settlement as fair, reasonable and adequate for members of the Class. The Court preliminarily approves the process set forth in the Settlement Agreement for reviewing, approving and paying claims from the Net Settlement Fund.

8.  <u>EXCLUSIONS</u>:  Any Class Member who desires to opt-out of the Class must send, **<u>within sixty (60) days of the postmark of the Notice</u>**, a letter requesting exclusion from the settlement to the Claims Administrator.  The letter must include the Class Member's name, address, phone number and last four digits of his or her social security number, and signature.  It must clearly state that the Class Member wishes to be excluded from the settlement.  Any Class Member who submits a valid and timely request for exclusion shall not be a Settlement Class Member and shall not be bound by the Settlement Agreement.

9.  <u>OBJECTIONS</u>:  Any Class Member who intends to object to the fairness of the Settlement must, **<u>within sixty (60) days of the postmark of the Notice</u>**, send a letter to the Court stating that he or she objects to the settlement, including the Class Member's name, address, telephone number, email address, signature, case information (name and number). The letter must include the objector's reasons for objecting to the settlement, and must attach to the written objection any documents supporting the objection.  Any Class Member who does not file a valid and timely objection to the settlement shall be barred from seeking review of the settlement by appeal or otherwise.

10. <u>NOTICE OF INTENTION TO APPEAR</u>: Any Class Member who intends to appear at the Final Fairness hearing on his or her own behalf or through counsel must send a letter to the Court stating intent to appear, including the Class Member's name, address, telephone number, email address, the case title and case number, and signature.

11. <u>FINAL FAIRNESS HEARING</u>: The Court shall conduct a hearing ("Final Fairness Hearing") on **<u>February 20, 2015 at 1:30 p.m.</u>** at 221 West Broadway, Courtroom 2D, San Diego, CA 92101.  The Final Fairness Hearing may be rescheduled or continued by the Court without further notice to the Class Members.  At the hearing, the Court will consider the following issues:

Case No. 08-CV-1072 GPC NLS

a.  whether the proposed settlement is fundamentally fair, reasonable, adequate, and in the best interest of the Class Members and should be finally approved by the Court;

b. to consider the application of Class Counsel for an award of attorneys' fees and costs, as provided for in the Agreement;

c.  to consider the application of the named Plaintiffs for Class representative incentive awards, as provided for in the Agreement;

d.  whether Final Judgment and Order of Dismissal With Prejudice, as provided under the Settlement Agreement, should be entered, dismissing the Action with prejudice and releasing the Released Parties; and

e.  such other issues, as the Court deems appropriate.

12.  Attendance at the Final Fairness Hearing is not necessary.  Class Members need not appear at the hearing or take any other action to indicate their approval of the proposed settlement.  As set forth above, however, Class Members wishing to be heard are required to indicate in their written objection whether they intend to appear at the Final Fairness Hearing.

13.  If the settlement is not finally approved for any reason, then this Order shall be vacated without further order, the Agreement shall have no force and effect, and the Parties' rights and defenses shall be restored, without prejudice, to their respective positions as if the Agreement had never been executed and this Order never entered.

14.  Any applications for an award of attorney's fees, costs, and/or a Class-representative incentive award must be filed with the Court and served **within 30 days from the postmark of the Notice**.  After filing, any such applications shall be posted on the Settlement Website for review by Class Members.

Case No. 08-CV-1072 GPC NLS

15.  For clarity, in accordance with the foregoing, the Court orders the following implementation schedule for further proceedings:

| | |
|---|---|
| Plaintiffs shall file a revised proposed class notice and lodge a proposed order approving the proposed class notice | Monday, October 20, 2014 |
| NCT shall provide the Claims Administrator with the required Microsoft Excel Spreadsheet | 10 days after Court approves revised class notice |
| Claims Administrator shall mail Notices to Class Members | 10 days after receipt by Claims Administrator of list of Class Members from NCT |
| Plaintiff to file motion for attorneys' fees and costs | 30 days after Class Notice is mailed |
| Deadline for Class Members to mail exclusion forms/objections | 60 days after Class Notice is mailed |
| Deadline for Class Members to mail notice of intent to appear at Final Approval Hearing | 60 days after Class Notice is mailed |
| Plaintiffs to file motion for final approval (which shall include a section addressing any objections) | 30 days prior to Final Settlement and Approval Hearing (January 21, 2015) |
| Final Settlement and Approval Hearing | **February 20, 2015 at 1:30 p.m.** |

16.  The preliminary approval hearing currently set for October 17, 2014 at 1:30 p.m. is **VACATED**.

**IT IS SO ORDERED.**

DATED:  October 17, 2014

HON. GONZALO P. CURIEL
U.S. DISTRICT JUDGE

Case No. 08-CV-1072 GPC NLS